1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PELICAN INTERNATIONAL INC., | Case No. 20-cv-2390-BAS-MSB |
| Plaintiff, | |
| v. | **CLAIM CONSTRUCTION ORDER FOR UNITED STATES PATENT NUMBER 10,829,189** |
| HOBIE CAT COMPANY, *et al.*, | |
| Defendants. | |

Pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), this Court conducted a *Markman* hearing ("Hearing") on November 9, 2021 in the above-captioned patent-infringement case in order to construct ten disputed claim terms and phrases for United States Patent Number 10,829,189 ("'189 Patent"), filed February 27, 2019. (*See Markman* Hr'g Tr. ("Tr."), ECF No. 62.) Prior to the Hearing, the parties submitted their joint claim construction chart (*see* Chart, ECF No. 39-1) and briefing (*see* ECF Nos. 40-41, 43, 47) in accordance with this District's local rules and this Court's scheduling order. For the reasons set forth on the record at the Hearing, and discussed below, the Court enters the following claim constructions.

## I.   BACKGROUND

Plaintiff Pelican International Inc. ("Pelican") brought this patent infringement action against Defendants Hobie Cat Company and Hobie Cat Company II, LLC (collectively, "Hobie Cat"), alleging infringement of the '189 Patent.  As shown in Figure 1 and Figure 11 below, the '189 Patent relates to an interface for mounting a pedal-propulsion system on to a thermoformed kayak for hands-free propulsion of the watercraft. (*See* '189 Patent, Ex. A to Lyons Decl., ECF No. 40-2.)



FIG.1                                                    FIG.11

Pelican claims that the accused device—Hobie's line of "Mirage Passport Kayaks"—infringed, and continues to infringe, upon one or more claims of the '189 Patent.  (First Am. Compl. ¶ 13, ECF No. 16.)  In its Answer, Hobie Cat counter-claimed for declaratory judgments of non-infringement and patent invalidity.  (Answer, ECF No. 17.)

The disputed claim terms and phrases are summarized herein and in the parties' Chart, which the Court hereby incorporates by reference (*see* ECF No. 39–1).

## II.   Principles of Claim Construction

"A determination of infringement involves a two-step analysis.  'First, the claim must be properly construed to determine its scope and meaning.  Second, the claim as

properly construed must be compared to the accused device or process.'" *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1320 (Fed. Cir. 2003) (quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)); *see also Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1354 (Fed. Cir. 2009). The first step of the infringement analysis, often referred to as claim construction, is now before this Court. Claim construction "is exclusively within the province of the court [to decide]," not the jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996); *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326 (2015) (opining judges, not juries, are better suited to interpret the meaning of a disputed claim term).

### A.   Evidence Reviewed During Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In deciphering the meaning of disputed claim terms, courts "generally" must ascribe to those terms "their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. "The inquiry into the meaning that claim terms would have to a person of skill in the art at the time of the invention is an objective one. This being the case, a court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Innova/Pure Water*, 381 F.3d at 1116. "Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (citing *Markman*, 52 F.3d 967, 979–80 (Fed. Cir. 1995), *affirmed* 517 U.S. at 370). "In construing the patent, a court *must* consider intrinsic evidence," *i.e.*, the

- 3 -

specification,[1] the claims of the patent,[2] and the prosecution history, and "*may* consider extrinsic evidence," *e.g.,* dictionary sources, "when appropriate." *Pulse Eng'g, Inc. v. Mascon, Inc.*, No. 08CV0595 JM (AJB), 2009 WL 755321, at *1 (S.D. Cal. Mar. 9, 2009) (citing *Phillips*, 415 F.3d at 1314) (emphasis in original).

Courts first look to the words used in the claims themselves, including their context. *See Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V.*, 365 F.3d 1299, 1303 (Fed. Cir. 2004) (holding that claim construction "begins and ends" with a claim's actual words). Claims are interpreted subject to the standard canons of claim construction. *See*, *e.g.*, *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1300 (Fed. Cir. 2014). For example, "the person of ordinary skill is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1314 (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)); *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."). Furthermore, because a term that appears in multiple claims should generally be construed consistently, "[o]ther claims of the patent in question, both asserted and unasserted . . ., [can] be valuable sources of enlightenment as to the meaning of the [disputed] claim term." *Phillips*, 415 F.3d at 1314 (citing *Vitronics*, 90 F.3d at 1582). On the other hand, courts presume the use of different words or phrases in separate claims "to indicate that the claims have different meanings and scope" under the doctrine of "claim differentiation." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369 (Fed. Cir. 2007).

---

[1] The specification refers to "written description" of the invention which enables one skilled in the art to make and use the invention and discloses the best mode of carrying out the invention. *See* 35 U.S.C. § 112.

[2] The claims reside at the end of the specification. They "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as [his or her] invention." *Id.*

- 4 -

Claims do "not require elaborate interpretation." *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001). In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."[3] *Phillips*, 415 F.3d at 1314 (citing *3M*, 265 F.3d at 1352).

The specification "is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582; *accord Phillips*, 415 F.3d at 1317 ("It is entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims."). Importantly, the specification "may reveal a special definition given to a claim term by the patentee that differs from the [plain and ordinary] meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316.

Another bedrock principal of claim construction is that courts are not to read limitations from the specifications—including the drawings therein, or "Figures"—into the claims. As explained by the Federal Circuit in *Phillips*, there is a "distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." *Id.* at 1323. The Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Id.*

As mentioned above, in consulting intrinsic evidence, courts may look beyond the patent itself and consult the prosecution history, so long as such history is in evidence. *See id.* at 1317. The patent, together with the prosecution history, "usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim

---

[3] As *Phillips* teaches, "general purpose dictionaries" may be instructive in determining whether the ordinary meaning of claim language as understood by a person of skill in the art is readily apparent. *Id.*, at 1314.

to one of ordinary skill in the art at the time of the invention." *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005).

"In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." *Vitronics*, 90 F.3d at 1583. However, although it is "less significant than the intrinsic record in determining the legally operative meaning of claim language[,]" a Court may use extrinsic evidence "to shed useful light on the relevant art[.]" *Phillips*, 415 F.3d at 1317 (instructing extrinsic evidence "can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand the claim terms to mean"). Extrinsic evidence includes outside sources, expert testimony, and learned treatises. *See Pulse*, 2009 WL 755321, at *2; *see 24/7 Customer, Inc. v. LivePerson, Inc.*, 235 F. Supp. 3d 1102, 1107 (N.D. Cal. 2016) ("Within the class of extrinsic evidence, dictionaries, and especially technical dictionaries, 'can assist the court in determining the meaning of particular terminology to those of skill in the art' because they 'endeavor to collect the accepted meanings of terms used in various fields of science and technology.'" (quoting *Phillips*, 415 F.3d at 1318)). While no doubt useful, "it is improper to rely on extrinsic evidence" where the intrinsic evidence alone is sufficient. *Vitronics*, 90 F.3d at 1583. Furthermore, under no circumstances may extrinsic evidence be used to "change the meaning of the claims in derogation of the indisputable public records consisting of the claims, the specification and the prosecution history, thereby undermining the public notice function of patents." *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005).

## B. Means-Plus-Function Limitations

Hobie Cat seeks construction of several claim terms as means-plus-function limitations pursuant to 35 U.S.C. § 112(f) ("Section 112(f)"), as elaborated below. When a claim term or phrase is governed by Section 112(f), it "shall be construed to cover the corresponding structure, material, or acts described in the specifications and equivalents thereof." 35 U.S.C. § 112(f). "In enacting this provision, Congress struck a balance in allowing patentees to express a claim limitation by reciting a function to be performed

rather than by reciting structure for performing that function, while placing specific constraints on how such limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claim function and equivalents thereof." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015).

The first step in determining whether Section 112(f) is applicable to a given limitation is assessing for "the presence or absence of the word 'means'" in the subject claim term or phrase. *Id.* at 1348 (citing *Personalized Media Comms., LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703–04 (Fed. Cir. 1998)). Where the word "means" is present, a rebuttable presumption arises that Section 112(f) applies. Conversely, when the word "means" is absent, a rebuttable presumption arises that Section 112(f) is inapplicable. *Id.* The Federal Circuit has made clear that "[m]erely because an element does not include the word 'means' does not automatically prevent the element from being construed as a means-plus-function element." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996); *see also Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1584 (Fed. Cir. 1996) ("We do not mean to suggest that [Section 112(f)] is triggered only if the claim uses the word 'means.'"). A challenger may overcome that rebuttable presumption and establish Section 112(f)'s applicability in lieu of the word "means" if it demonstrates "the claim term fails to 'recite[] sufficiently definite structure' or else recites function without reciting sufficient structure for performing that function." *Williamson*, 792 F.3d at 1349 (quoting *Watts v. XL Sys. Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).

## C.   Judicial Correction of Errors in a Patent

Pelican seeks judicial correction of several claim terms, as elaborated below. As a general rule, a claim term must be construed "as written, not as the patentees wish they had written it." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (2004); *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951 (Fed. Cir. 1993) ("It would not be appropriate for us now to interpret the claim differently just to cure a drafting error" for doing so would, *inter alia*, "interfere with the function of claims in putting competitors on notice").

However, "[c]ertain obvious errors in the patent can be corrected by the district court." *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). Specifically, a district court may issue a judicial correction "of minor unintentional errors . . . only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Id.* Where the court cannot discern an error "simply by reading the patent" as an ordinary artisan would, the court lacks authority to issue a correction. *See Grp. One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005).

### D. Invalidity for Indefiniteness

As mentioned above, Hobie Cat asserts in its Answer, and argues in its briefing, that several claims in the '189 Patent are indefinite under 35 U.S.C. § 112(b) ("Section 112(b)")[4] and, thus, invalid.[4] "Patent invalidity is an affirmative defense to an action for infringement." *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 963 (Fed. Cir. 2020) (quoting 35 U.S.C.§ 282(b)). "The statutory presumption of patent validity imposes the burden of persuasion on the defendant[.]" *Id.* (citing 35 U.S.C. § 282(a)). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901.

## III.   CONSTRUCTION OF DISPUTED CLAIM TERMS

With the above-referenced principles of claim construction in mind, the Court next turns to the ten disputed claim terms and phrases proffered by the parties.  (*See* Chart.) Several of the disputed terms appear across claims; the court's construction applies to all instances of those terms unless otherwise indicated.  *See Iverness Med. Switz. GmbH v.*

---

[4] Section 112(b) provides that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."

*Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002) (holding claim term appearing in multiple claims generally should be construed consistently).

> **A.    Disputed Claim Terms**

Claims 14 through 20 and claim 25 of the '189 Patent introduce the disputed terms and phrases, as shown below (with disputed terms highlighted in bold and terms for which Pelican seeks correction underlined).  These claims also are representative of many of the elements of the interface device taught by the '189 Patent.

14.    A watercraft comprising:

> rigid body having a deck portion, a hull portion and **a well extending between the deck portion and the hull portion,**
>
> an interface[5] for mounting a propulsion mechanism to the body of the watercraft, the interface including:
>
>> a first portion including a first **plate** positionable adjacent to one of the hull portion and the deck portion of the watercraft, **about the periphery** of the **well**, and at least one **channel extending from the first plate**, **the channel** being positionable in the well, **the channel** being sized and shaped **for receiving therein a portion of the propulsion mechanism and for mounting the propulsion mechanism to the interface**; and
>>
>> at least one **fastening assembly for removably fastening the first portion to the body of the watercraft**.

15.    The watercraft of claim 14, wherein the interface further comprises a second portion including a second **plate** positionable adjacent to the other of the hull portion and the deck portion of the watercraft, **about the periphery** of the **well**, the second **plate** comprising a hole sized and shaped for receiving therethrough a portion of the propulsion mechanism, the hole being positionable **in registry** with **well** and with **the channel** of the first portion, and wherein the at least one **fastening assembly** is further configured **for removably fastening the second portion of the interface to the body of the watercraft**.

---

[5] The parties agree the term "interface" means "intermediate connecting two structures together." (Chart at 1.)

16. The watercraft of claim 15, wherein the at least one **fastening assembly** is configured **for removably fastening the first portion of the second portion of the interface**.

17. The watercraft of claim 16, wherein the at least one **fastening assembly** includes a **first segment** engaging the first portion of the interface and a **second segment** engaging the second portion of the interface, the **first and second segments** of the at least one **fastening assembly** collaborating to force the first and second portions of the interface toward one another to sandwich the body of the watercraft between the first and second **plates**.

18. The watercraft of claim 17, which the **first segment** of the at least one **fastening assembly** comprises a threaded fastener engaging the first plate of the first portion and the **second segment** of the at least one **fastening assembly** comprises a fastening projection provided with a threaded hole, the threaded fastener being engageable in the threaded hole of the fastening projection to force the first and second portions of the interface toward one another.

19. The watercraft of claim 16, wherein the at least one **fastening assembly** is further configured for maintaining **the channel** of the first portion **in registry** with the hole of the second portion when the at least one **fastening assembly** is fastened and **the channel** is spaced apart from the second **plate**.

20. The watercraft of claim 14, further comprising at least one **guiding assembly** for maintaining **the channel** of the first portion **in registry** with the hole of the second portion when the at least one **fastening assembly** is fastened and **the channel** is spaced apart from the second **plate**.

21. The watercraft of claim 20, wherein the at least one **guiding assembly** comprises a plurality of fins extending upwardly from the second **plate** of the second portion, and the periphery of the hole, the fins being configured for positioning **the channel** of the first portion **in registry with** the hole of the second portion as the first and second portions of the interface are forced toward one another.

*       *       *       *

- 10 -

20cv2390

25.     The watercraft of claim 14, further comprising **a lock mechanism for removably securing the propulsion mechanism to the interface, wherein the lock mechanism is mounted in the channel of the second portion of the interface**.

## B.     CONSTRUCTION

### 1.     "well extending between the deck portion and the hull portion"

Pelican proposes that "well extending from the deck to the hull" means "an opening from the deck to the hull." Hobie Cat appears to agree that "well" means "opening," but argues that the remainder of the disputed claim term does not require any further construction. As set forth on the record at the Hearing, *the Court concludes the term "well" means "opening," and that no further construction of the remainder of the disputed claim term is necessary*. (Tr. at 23:20–24.)

### 2.     "plate"

Hobie Cat proposes that the term "plate" be construed as "flat structure." Pelican alleges no construction is necessary and that "plate" should take its plain and ordinary definition. It further contends that Hobie Cat's proposal is overly narrow because it would import from thin air the limitation that a "plate" is a "perfectly flat" structure without any "surface features," and proposes, in the alternative, that this Court construe the term as "generally flat structure" if it finds construction necessary. (*See id.* at 26:18–25.) As set forth on the record at the Hearing, *the Court concludes the term "plate" means "generally flat structure."* (*Id.* at 29:1–5.)

### 3.     "channel extending from the first plate . . ."

Pelican proposes that the disputed claim phrase "channel extending from the first plate . . . for mounting the propulsion mechanism to the interface" be construed as "structure projecting from the first plate into the well to define a passageway, and that receives and mechanically supports the propulsion mechanism." Conversely, Hobie Cat avers that "channel" means "a hollow structure defining passageway through the interface," and argues the remainder of the disputed claim phrase need not be construed.

- 11 -

As set forth on the record at the Hearing, ***the Court concludes the term "channel" means "structure defining passageway," and that no further construction of the remainder of the disputed claim term is necessary***.  (*Id.* at 37:19–21.)

### 4.  "about the periphery"

Hobie Cat proposes that the term "about the periphery" be construed as "completely around the outer recess."  Pelican contends that Hobie Cat's proposal imports the claim limitation that the interface must go "completely" around the outer recess of the well of the watercraft, which Pelican avers is belied by the intrinsic evidence.  It alleges that no construction is necessary and that the term's plain and ordinary meaning should govern, or, alternatively, that "about the periphery" means "along the edge."  As set forth on the record at the Hearing, ***the Court concludes the term "about the periphery" means "around the edge."***  (*Id.* at 43:14–44:1.)

### 5.  "fastening assembly"

Hobie Cat argues that the term "fastening assembly," which is used frequently throughout the claims, is means-plus-function, for it is a nonce word that has no plain or established structural meaning and is limited by a statement of function—"for removably fastening"—in claims 14 through 16.  Accordingly, Hobie Cat avers Section 112(f) should apply despite the absence of the word "means" in the disputed claim language.  Pelican contends that Hobie Cat has failed to overcome the rebuttable presumption that Section 112(f) is inapplicable because "fastening assembly" fits neatly within the types of devices the Federal Circuit, and other courts, have found take their names from the function they perform but nonetheless connote sufficient structure because they are understood by ordinary artisans to refer to a class of structures.

As mentioned above, it is well settled that a claim limitation that uses the word "means" invokes a rebuttable presumption that Section 112(f) applies, and it is equally well understood that the absence of that word triggers a rebuttable presumption Section 112(f) does not apply.  *See Williamson*, 792 F.3d at 1349.  Here, there is no dispute the claim term at issue omits the word "means."  Thus, the Court must assess whether Hobie Cat can

- 12 -

overcome the rebuttable presumption weighing in Pelican's favor.  To do so requires answering whether the term "fastening assembly" "is one that is understood to describe a structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term 'means for.'" *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1360 (Fed. Cir. 2004), *overruled on other grounds*, *Williamson*, 792 F.3d at 1339.

The parties appear to agree the term "assembly," standing alone, does not recite sufficient structure.  *See Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*, No. H-08-3287, 2014 WL 5460588, at *13 (S.D. Tex. Oct. 27, 2014) (holding "assembly," standing alone is a nonce term); *Vistan Corp. v. Fadei USA, Inc.*, No. 10-CV-4862, 2012 WL 1496099, at *15 (N.D. Cal. Apr. 27, 2012) ("[T]he unadorned term 'assembly' has no physical or structural component.").  Indeed, "assembly" is akin to other terms, like "mechanism," "element," and "device," which the Federal Circuit identified in *Williamson* as "generic," or "nonce words that reflect nothing more than verbal constructs . . . tantamount to using the word 'means' because they 'typically do not connote sufficient definite structure.'"  *Id.* at 1350 (quoting *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006)).

However, as the precedents upon which Hobie Cat relies instruct, a challenger cannot overcome the rebuttable presumption Section 112(f) does not apply simply by demonstrating the disputed claim language *includes* a well-established nonce word. Rather, Federal Circuit precedent is clear that where, as here, a nonce phrase immediately is preceded by an adjectival modifier, the Court must determine whether that modifier "imparts sufficiently definite structure from the perspective of one skilled in the art." *Vistan Corp.*, 2012 WL 1496099, at *5 (citing *Greenberg*, 91 F.3d at 1580).  "[I]n circumstances in which '[a] structure-connoting term . . . is coupled with a description of [its] operation, sufficient structural meaning generally will be conveyed to persons of ordinary skill in the art."  *Williamson*, 770 F.3d at 1378 (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004)); *see also MIT*, 462 F.3d at

- 13 -

1354 (holding "[c]laim language that further defines a generic term like 'mechanism' can sometimes add sufficient structure to avoid" Section 112(f)); *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1096–97 (Fed. Cir. 2008) (discussing the significance of "adjectival" modifiers of generic terms and finding significant the absence of such modifier preceding "mechanism").

Pelican likens the term "fastening" to other nouns the Federal Circuit has found work as adjectival modifiers that import structure to nonce words like "assembly."[6]  *See, e.g.*, *Greenberg*, 91 F.3d at 1583 (holding noun "detent" modifying "mechanism" denoted a device with a generally understood meaning in the mechanical arts); *Lighting World*, 382 F.3d at 1359–63 (holding the term "connector" modified "assembly" to denote a device with a generally understood meaning in the mechanical arts); *Personalized Media Comms*, 161 F.3d at 705 (holding the term "digital" modifying "detector" denoted a device with a generally understood meaning in the relevant art); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002) (holding "reciprocating member" is not restricted by Section 112(f)).  In support of that premise, Pelican directs this Court to *Blackbird Tech LLC v. ELB Elecs.*, No. 15-cv-56 (RGA), 2016 WL 7451622, at *4–5 (D. Del. Dec. 28, 2016) ("*Blackbird*"), *vacated on other grounds*, 895 F.3d 1374 (Fed. Cir. 2018), in which the *Blackbird* Court construed "fastening mechanism" as denoting sufficient structure to evade application of Section 112(f).  Specifically, using general dictionary sources to reach its conclusion, the *Blackbird* Court found

> A person of ordinary skill in the art would understand a "fastening mechanism" to be a fastener.  Fasteners are a generally understood class of physical structures.

*     *     *     *

---

[6] "[A]n adjectival . . . modifier is a 'word, phrase, or clause that works like an adjective.'" The Columbia Guide to Standard American English 13 (Columbia Univ. Press. 1993).

"Fastening" and "fastener" . . . are basically interchangeable words.  Both are nouns.[7]  "Fastening," *Webster's Third New International Dictionary, Unabridged* (Online Ed.) (accessed Dec. 9, 2016); "Fastening," *Oxford English Dictionary* (Online Ed.) (accessed Dec. 9, 2016).  Both relate to making something fast or secured.  *Id.*  In fact, one dictionary includes "fastener" as a definition of ["]fastening["].  *Webster's*, *supra.*

*Id.*, at \*5 (alterations added).  This Court finds the *Blackbird* Court's interpretation instructive given the similarity of the term at issue in the '189 Patent ("fastening assembly," in the '189 Patent, and "fastening mechanism," in the *Blackbird* patent).

Conversely, the Court finds the three competing nonbinding precedents proffered by Hobie Cat easily distinguishable.  As an initial matter, in two of the cases identified by Hobie Cat, the disputed language of the patents at issue actually used the word "means" in conjunction with "fastening."  *See Bidco, Inc. v. The Plastic Lumber Co.*, No. C-02-4429 JCS, 2004 WL 5644702, at \*3–5 (N.D. Cal. Nov. 10, 2004) (holding Section 112(f) invoked by "fastening means" limitation); *EMD Millipore Corp. v. Allpure Techs., Inc.*, No. 11-CV-10221-DPW, 2012 WL 4862772, at \*11 (D. Mass. Oct. 11, 2012) (construing "a fastening and centering means for removable locking" to invoke Section 112(f)).  These cases are inapposite, for they involve instances in which the challenger had successfully invoked a rebuttable presumption of Section 112(f)'s applicability.  Here, there is a rebuttable presumption that Section 112(f) is *inapplicable*, given the absence of the word "means" from the disputed language, and thus it is the challenger, Hobie Cat, who bears the burden of overcoming that presumption.  Hobie Cat must show that the term "fastening" does not impart sufficient structure such that an ordinary artisan would be unable to decipher the meaning of the term fastening assembly.  Crucially, Hobie Cat does not draw the Court's attention to intrinsic or extrinsic evidence to carry that burden.

Second, Hobie Cat cites *In re Matter of Certain Portable Gaming Console Sys.*, Inv. No. 337-TA-1111, 2018 WL 6837938 (ITC Dec. 7, 2018), *aff'd*, 2019 WL 9596568 (Oct.

---

[7] Hobie Cat avers that "fastening" is a gerund.  However, as the *Blackbird* Court's reference to general dictionary sources shows, it also takes the form of a noun in common parlance.

19, 2019), *aff'd sub nom*, *Gamevice, Inc. v. Int'l Trade Comm'n*, 877 F. App'x 929 (Mem.) (Fed. Cir. May 12, 2021) (per curiam) ("*Gamevice*"), in which the presiding Administrative Law Judge ("ALJ") concluded the term "fastening mechanism" did not connote structure. The ALJ reached that decision after reading the patent and finding "the specification . . . lacked meaningful discussion of the fastening mechanism that would indicate the term has sufficiently definite meaning as the name for structure."[8]  Conversely, here, the specification of the '189 Patent discloses numerous concrete structural examples that correspond to the term fastening assembly.  In particular, the specification recites, *inter alia*, "threaded fasteners," "rivets," "holes" or "threaded holes," "threaded bores," and "recesses."  ('189 Patent at 2:45–3:14, 4:10–34, 8:52–9:2, 10:6–9, 10:28, 11:40, 11:49–52, 14:40–41, 14:47, 15:13–49, 17:18–39.)

More importantly, the ALJ in *Gamevice* reached his conclusion without consulting technical, or even general, dictionary sources to interpret the disputed term through the lens of an ordinary artisan.  Yet the Federal Circuit has repeatedly condoned the use of dictionaries "to determine if a disputed term has achieved recognition as a noun denoting structure, even [where] the noun is derived from the function performed."  *Lighting World*, 382 F.3d at 1360–61; *see*, *e.g.*, *Greenberg*, 91 F.3d at 1583 ("Dictionary definitions make clear that the noun 'detent' denotes a type of device with a generally understood meaning in the mechanical arts, even though the definitions are expressed in functional terms."); *Linear Tech.*, 379 F.3d at 1320 (consulting technical dictionary to determine whether term "circuit" connotes structure); *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202

---

[8] The Court observes that the inquiry whether a claim term has sufficient structure is not whether the specification provides a corresponding embodiment, but whether the disputed term brings to mind sufficient structure in common parlance or in the parlance of an ordinary artisan.  *See SPH Am., LLC v. AT&T Mobility, LLC*, No. 13-cv-2318-CAB-KSC, 2015 WL 12831674, at *4 (S.D. Cal. June 9, 2015) ("It is not sufficient to conclude . . . that as long as the specification provides a corresponding structure, the claim term has sufficient definite structure to avoid the application of Section 112(f).  Otherwise, one would presumably use any term, no matter how vague or generic, provided it is not 'means for,' to describe a claim limitation and avoid the requirements of Section 112(f).  For the term to have sufficient definite structure, it must be used in 'common parlance or by persons of skill in the pertinent art to designate structure.'" (quoting *MIT*, 462 F.3d at 1356)).

(Fed. Cir. 2002) ("Dictionaries are always available to the court to aid in the task of determining that would have been attributed by those of skill in the relevant art to any disputed terms used by the inventor in the claims.").

As the *Blackbird* Court observed, general dictionary sources confirm "fastening" connotes structure even in common parlance. 2016 WL 7451622, at *4–5 (relying upon *Webster*'s and *Oxford* general source dictionaries to find "fastening" refers to a class of structures, or "fasteners," in common parlance). Moreover, the technical dictionary proffered by Pelican renders with even greater clarity that when the structure-connoting term "fastening" is coupled with "assembly," sufficient structural meaning generally will be conveyed to an ordinary artisan. In particular, "Fastenings," is defined by *The Illustrated Dictionary of Boating Terms* 57 (2000) as a set of structures, namely, "[t]he screws, bolts, etc., holding a boat together." *See Williamson*, 770 F.3d at 1378 ("Technical dictionaries, 'which are evidence of understandings of persons of skill in the technical arts' may inform whether claim terms connote structure." (quoting *Linear Tech.*, 379 F.3d at 1320)).

Hobie Cat's principal argument in favor of Section 112(f)'s application essentially boils down to the following premise: "fastening assembly" is a means-plus-function limitation because it brings to mind a broad class of structures—fasteners—rather than a specific structure—*e.g.*, a threaded hole or threaded fastening projection. Indeed, Hobie Cat draws the Court's attention to five other patents, each of which use the term "fastening assembly" to describe a different structure, namely, "platens," "clips," "anchoring blocks," "shoelaces," "knobs," "tubular members," "bone plates," "brushings," "bores," "strips with hooks." (*See* ECF Nos. 41-5–41-9.) The Federal Circuit uniformly rejected precisely this same argument on several occasions. *See Personalized Media*, 161 F.3d at 705 ("[N]either the fact that a 'detector' is defined in terms of its function, nor the fact that the term 'detector' does not connote a precise physical structure in the minds of those of skill in the art detracts from the definiteness of structure."); *Lighting World*, 382 F.3d at 1354 ("In considering whether a claim term recites sufficient structure to avoid application of

20cv2390

[Section 112(f)], we have not required the claim term to denote a specific structure. Instead, we have held that it is sufficient if the claim is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures . . ." (citing *Greenberg*, 91 F.3d at 1583)). Consequently, the Court finds Hobie Cat's argument unavailing. Thus, on the instant record, the Court concludes Hobie Cat has not demonstrated Section 112(f) should apply to the term "fastening assembly."

Having determined the threshold Section 112(f) analysis, the Court must determine whether and how to construe the term "fastening assembly."[9] Pelican avers that the term does not require construction. Alternatively, Pelican urges the Court to adopt "fastener(s)" as the meaning for "fastening assembly." Hobie Cat proposes that "fastening assembly" means "a group of components used for fastening."

As explicated above, the intrinsic and extrinsic evidence consulted by the Court makes clear that "fastening assembly" refers, both in common parlance and in the eyes of an ordinary artisan, to a broad set of structures, also known as "fasteners." Thus, the Court finds ample support in the record for Pelican's alternate construction. Accordingly, ***the Court construes "fastening assembly" as "fastener" and finds the remainder of the disputed claim term denoted in the Chart does not require any further interpretation***.

### 6. "in registry with"

Pelican proposes the term "in registry with" means "in alignment with." Hobie Cat retorts that the limitation does not require construction. As set forth on the record at the Hearing, ***the Court gives the term "in registry with" its plain and ordinary meaning and finds no specific construction of this term is required***.[10] (Tr. at 48:19–24.)

---

[9] The parties did not provide in their briefings or their arguments at the Hearing any justification for construing any other terms in the phrase identified in the Chart.

[10] As set forth on the record at the Hearing, the parties may rely upon expert testimony "to say what [in registry with] means, technically speaking." (Tr. at 48:19–24.)

### 7. "lock mechanism . . ."

#### a. Pelican's Request for Judicial Correction

Pelican argues that claim 25 contains an "obvious" error that warrants correction by this Court.  Claim 25 reads in pertinent part:

> wherein the **lock mechanism** is mounted in the channel of the <u>second</u> portion of the interface

('189 Patent at 25:25–29.)  Pelican asks the Court to change the underlined "second" to "first."  Pelican alleges that this correction is warranted because claim 25 is dependent upon claim 14, which makes clear that the "channel" is located on the "first portion of the interface," and that nothing in the claims (other than claim 25) or specification provide for a "channel" on the "second portion of the interface."  Hobie Cat opposes Pelican's request, averring that Pelican must pursue correction through the Patent Office because there is a reasonable debate whether the claimed language is correct.[11]  Hobie Cat further argues that, should the Court reject Pelican's request for judicial correction, it must rule claim 25 indefinite in light of the absence of an antecedent basis for the term "the second portion of the interface."

Looking to the claim language, the Court finds Pelican's position well-supported.  *See Pulse*, 2009 WL 755321, at *9 (examining claim language to determine whether errors identified by plaintiff were "obvious").  Claim 25 is dependent upon independent claim 14, which provides in pertinent part, "the interface including:  a *first portion* including a first plate . . . and at least one *channel* extending from the first plate."  ('189 Patent at 19:3–6.)  The language in claim 14 makes clear that the "first portion" of the "interface" includes "a

---

[11] As Hobie Cat explains in its briefing, whether the Court opts to issue a judicial correction may be dispositive of Hobie Cat's asserted noninfringement as it relates to Claims 25 and 26.  According to Hobie Cat, the accused device's "locking mechanism interfaces" in the "first portion" of the "interface," and, thus, is distinguishable from Claim 25.  Although the Court appreciates Hobie Cat's contextualizing the legal implication of this issue, "[i]t is well-settled that claims may not be construed by reference to the accused device."  *Neomagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002).  Rather, the relevant inquiry here is whether the error identified by Pelican is "obvious" based on the claim language and specification and whether the prosecution history of the '189 Patent suggests a different interpretation.  (*See supra*, Sec. II.C); *Novo Indus.*, 350 F.3d at 1357.

channel." The "second portion of the interface" is not introduced until claim 15, upon which claim 25 is not dependent. Neither claim 15 nor any other claim in the '189 Patent recites the "second portion" of the "interface" as having a "channel."

Hobie Cat argues that there are at least three other ways to correct the supposed error in claim 25. Specifically, Hobie Cat argues that in addition to making the correction Pelican seeks and taking no action at all, rewriting claim 25 to change its dependency to claim 15, which introduces the "second portion" of the "interface," would also be a reasonable correction. Because there are multiple corrections available, Hobie Cat contends the error identified by Pelican is not obvious. However, the Court finds this argument strained, for in the two alternative corrections suggested by Hobie Cat, "the channel of the second portion" is left without antecedent basis. *See Sensor Elec. Tech., Inc. v. Bolb, Inc.*, No. 18-CV-5194-LHK, 2019 WL 4645338, at *31 (N.D. Cal. Sept. 24, 2019) ("For a claim term to have antecedent basis support, an indefinite article (for instance, 'a' or 'an') must precede a claim term the first time the claim term is used in the claims. Subsequent references in the claims to the claim term must be preceded by a definite article (for instance, 'the' or 'said')" (citing *Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008)). If the court were to do nothing, claim 25 would remain dependent upon claim 14, and introduce with a definite article an element that has no anchor in claim 14—"the channel of the second portion." If the Court were to adopt Hobie Cat's alternative correction, although "the second portion" would have an antecedent basis, the term "the channel" would not, for claim 15 does not recite "a channel," let alone "a channel of a second portion of the interface." Put simply, Hobie Cat's proposal would introduce new errors and assume mistakes in the claim language that Pelican does not allege.

Only Pelican's proposed correction maintains dependency and provides an antecedent basis, thus, there is no reasonable debate that "second portion" in claim 25 should be "first portion." Accordingly, ***the Court construes the relevant section of Claim***

1   25 to read *"wherein the lock mechanism is mounted to the channel of the first portion*
2   *of the interface."*

3                        **b.      Claim Construction**

4           Hobie Cat urges this Court to construe the term "lock mechanism" in claim 25 as a
5   means-plus-function term.  Pelican opposes.

6           The analysis whether "lock mechanism" is governed by Section 112(f) is identical
7   to the Court's analysis of the claim term "fastening assembly."  As with "fastening
8   assembly," there is no dispute a rebuttable presumption exists that Section 112(f) does not
9   apply.  Furthermore, there is no dispute the term "mechanism," on its own, does not
10  connote specific structure.  *See Williamson*, 792 F.3d at 1350 ("Generic terms such as
11  '*mechanism*,' 'element,' 'device,' and other nonce words that reflect nothing more than
12  verbal constructs may be used in a claim in a manner that is tantamount to using the word
13  'means' because they 'typically do not connote sufficient definite structure' and therefore
14  may invoke [Section 112(f)]."  (quoting *MIT*, 462 F.3d at 1354)) (emphasis added).

15          As with "fastening assembly," Section 112(f)'s applicability hinges upon whether
16  the word "lock" imparts sufficient structure to the word "mechanism," such that an
17  ordinary artisan would understand the phrase in its entirety to connote structure, as opposed
18  to function.  *See Vistan Corp.*, 2012 WL 1496099, at *5.  What makes the analysis of "lock
19  mechanism" easier than the Court's analysis of "fastening assembly" is that the Federal
20  Circuit has explicitly identified "lock" among a class of devices that appear to describe a
21  function, but actually have well-understood meaning in the arts as the name for a structure.
22  *See Greenberg*, 91 F.3d at 1584.  Other courts that have confronted similar terms have
23  found that the word "lock" imparts sufficient structure and concluded Section 112(f) does
24  not apply merely by virtue of the fact the word "lock" takes its name from the function that
25  that structure performs.  *See Integrity Worldwide, LLC v. Rapid-EPS Ltd.*, No. 3:17-CV-
26  0055-K, 2018 WL 3609430, at *5 (S.D. Cal. May 29, 2018) (relying on *Greenberg*, 91
27  F.3d at 1584 to find "locking mechanism" conveys structure).  Consistent with the Federal
28  Circuit's ruling in *Greenberg* that "lock" imparts structure when coupled with

                                         - 21 -

"mechanism," this Court finds that "lock mechanism," as used in the '189 Patent, is not a means-plus-function claim element.   That conclusion is bolstered by the technical dictionary source proffered by Pelican in support of its position. (*See* "Lock Mechanism," *Glosbe Online Dictionary*, Ex. C to Lyons Decl., ECF No. 44-4 (defining "lock mechanism" as "movable between a locked position in which the lock mechanism frictionally engages the lock link and an unlocked position in which the lock link is free to slide relative to the lock mechanism.").)

Having found Section 112(f) inapplicable, the Court now turns to the proposed construction of Pelican and Hobie Cat's alternative construction of the term "lock mechanism."[12]  Pelican proposes the term mean "mechanism for locking and unlocking." Hobie Cat proposes that the term should mean "mechanism."  "The plain and ordinary meaning of a 'lock[] mechanism' is just what it sounds like, *i.e.*, a structure that is used to lock [and unlock] something," in this case, a propulsion mechanism.  *See Integrity Worldwide*, 2018 WL 3609430, at *5.  The Court finds that Pelican's proposal encapsulates that plain and ordinary meaning, whereas Hobie Cat's proposal that the term mean "mechanism" does not connote any specific structure and circuitously creates a Section 112(f) issue where the Court has already found none exists.

Accordingly, ***the Court construes "locking mechanism" as "mechanism for locking and unlocking" and finds the remainder of the disputed claim language does not require further construction.***

### 8.   "first segment," "second segment," "first and second segments"

Claims 17 and 18 refer to the "**first segment**" and "**second segment**" "of the at least one fastening assembly."  Pelican contends these terms are clear and thus require no specific construction by the court.  Conversely, Hobie Cat proposes that "first segment"

---

[12] The parties did not provide in their briefings or their arguments at the Hearing any justification for construing any other terms in the phrase identified in the Chart.

- 22 -

means "a threaded fastener engaging the first plate of the first portion" and "second segment" means "a fastening projection provided on the second portion with a threaded hole into which the threaded fastener is engageable."

As explained on the record at the Hearing, on the face of the '189 Patent, there is no perceptible reason to construe these disputed claim terms. (Tr. at 75:19–29, 80:17–81:3.) It is clear therefrom that "first segment" refers to the "first segment of the at least one fastening assembly" and "second segment" refers to the "second segment of the at least one fastening assembly." In common parlance, these terms refer to the constituent parts of a "fastening assembly." (*See* Merriam-Webster's Advanced Learner's English Dictionary 1471 (2017), Ex. K, Lyons Decl., ECF No. 40-12 (defining "segment" as "one of the parts into which something can be divided").)

Conversely, Hobie Cat's proposed construction seeks to impart limitations from the specification and claim 18 ("threaded fastener" and "threaded hole) into claim 17 and to render superfluous language later appearing in dependent claim 18.[13] In other words, by its proposal Hobie Cat seeks to violate two bedrock principles of claim construction at once. *See Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) (rejecting a claim construction that would render another claim term superfluous); *Phillips*, 415 F.3d at 1316 (rejecting "the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."); *SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys. Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001) (reading a limitation from the specification into a claim is "one of the cardinal sins of patent law"); *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will

---

[13] Hobie Cat's construction goes further than limiting the claims to a single embodiment. Indeed, the specification recites numerous structures that correspond to "fastening assembly," namely, threaded fasteners," "rivets," "holes" or "threaded holes," "threaded bores," and "recesses." ('189 Patent at 2:45–3:14, 4:10–34, 8:52–9:2, 10:6–9, 10:28, 11:40, 11:49–52, 14:40–41, 14:47, 15:13–49, 17:18–39.) But Hobie Cat seeks to limit the composition of the "first" and "second segments" and, thus, "the at least one fastening assembly", to just two of those embodiments.

not limit him to his preferred embodiment or import a limitation from the specification into the claims.").  This Court will not entertain such a proposed construction and finds that Hobie Cat's proposal is unsupported by the intrinsic evidence.

Accordingly, *the court gives the terms "first segment," "second segment," and "first and second segments" their plain and ordinary meanings and finds no specific construction of this term is required*.

### 9. "the hole . . .the second portion . . ."

Claim 20 of the '189 Patent reads:

The watercraft of claim 14, further comprising at least one **guiding assembly** for maintaining the **channel** of the first portion **in registry** with the hole of the second portion when the at least one **fastening assembly** is fastened and the channel is spaced apart from the second plate

('189 Patent at 20:6–9.)  The parties agree that, with the exception of the terms highlighted in bold and addressed elsewhere in this Order, the language in this claim need not be construed.  However, Pelican argues that claim 20 contains an error and, again, seeks judicial correction thereof.  Specifically, Pelican asks that the Court amend claim 20 such that the definite articles underlined above ("the") be changed to indefinite ones ("a").  Conversely, Hobie Cat alleges the asserted error is not an obvious one because there are other reasonable corrections that might apply.  Consequently, Hobie Cat avers claim 20 is indefinite for lacking a proper antecedent basis, and requests that it be invalidated.

### a. Judicial Correction

As mentioned above, courts have discretion to correct patent language only in limited circumstances.  *See Novo Indus*, 350 F.3d at 1357.  The apparent error must be obvious and, thus, not subject to reasonable debate, and the prosecution history must not belie the assertedly appropriate correction. *Id.*  Pelican alleges that an ordinary artisan would understand the patentee's use of a definite article in the above-referenced instances to be a scrivener's error because independent claim 14, upon which claim 20 depends, does not mention the elements "hole," "second portion of the interface" and "second plate."

- 24 -

According to Pelican, claim 20 sought to introduce these elements. However, as Hobie Cat correctly observes, claim 15 introduces precisely those same elements. (*See* '189 Patent at 19:13–23 ("the interface further comprises *a second portion* including *a second plate* . . . *the second plate* comprising *a hole* sized and shaped for receiving therethrough a portion of the propulsion mechanism") (emphasis added).) Thus, contrary to Pelican's assertion otherwise, it is not obvious claim 20 sought to introduce new elements. Indeed, it is equally reasonable to infer the error at issue in claim 20 is the patentee's mistaken reference to claim 14, as opposed to claim 15, as the independent claim upon which claim 20 depends.

Pelican insinuates that the statutory presumption of validity requires the Court to issue its proposed correction. That is not the standard instructed by the Federal Circuit. *See Novo Indus*, 350 F.3d at 1357 (instructing courts may only correct minor errors that are (1) obvious and (2) not contradicted by prosecution history). The presumption of validity is not carte blanche for courts to rewrite claims. *See Chef Am.*, 358 F.3d at 1374 ("This court, however, repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity.")

Because it is unclear whether claim 20's use of a definite article was error, or whether its terms "the hole," "the second portion," and "the second segment" make reference to those same elements disclosed in claim 15, judicial correction is inappropriate here.

### b.    Invalidity

Hobie Cat argues that absent judicial correction, the Court should find claim 20 invalid because the elements "hole," "second portion of the interface" and "second plate" each lack antecedent basis, rendering the claim indefinite. A claim is "indefinite if a [claim] term does not have proper antecedent basis." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). "For a claim term to have antecedent basis support, an indefinite article (for instance, 'a' or 'an') must precede a claim term the first time the claim term is used in the claims. Subsequent references in the claims to the claim term must be preceded by a definite article (for instance, 'the' or 'said')." *Bolb*, 2019

- 25 -

WL 4645338, at *31  (citing *Microprocessor Enhancement*, 520 F.3d at 1375); *see also Automated Techs., Inc. v. Microfil, LLC*, 244 F. App'x 354, 359 (Fed. Cir. 2007) ("[C]laim term employing definite article 'the' . . . requir[es] an antecedent basis.").

"Antecedent basis is necessary so that those with skill in the art can ascertain the scope of a patent and its claimed inventions with 'reasonable certainty.'" *Id.* (quoting *Nautilus*, 572 U.S. at 910).  Where the subject claim is a dependent claim, antecedent basis may be found (1) in the dependent claim itself or (2) the independent claim from which the dependent claim depends.  *See In re Downing*, 754 F. App'x 988, 990–91 (Fed. Cir. 2018) (looking for antecedent basis for a claim term in the same claim in which the claim term appears); *Automated Techs.*, 244 F. App'x at 359  (searching for antecedent basis for a dependent claim term in the independent claim from which the dependent claim depends). The Federal Circuit's opinion in *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008) is instructive.  In *Baldwin*, the Federal Circuit held that "a claim limitation lacks antecedent basis," thus rendering the claim indefinite, "where it would be unclear as to what element the limitation was making reference." *Id.* at 1343.  By way of example, it illustrated that "if two different levers are recited earlier in [a] claim, the recitation of 'said lever' in the same or subsequent claim would be unclear where it is uncertain which of the two levers was intended." *Id.*

However, that a claim lacks an antecedent basis does not automatically trigger a finding of indefiniteness.  *See In re Downing*, 754 F. App'x at 996 ("A claim term that lacks an antecedent basis may, but does not necessarily, render a claim indefinite." (citing Manual of Patent Examining Procedure § 2173.05(e) (9th ed. 08.2017 rev., 2020)).  Rather, "as long as the claim 'apprises one of the ordinary skill in the art of its scope and, therefore, serves the notice function required by [Section 112(b)]," it is not error for a court to reject a request to find the claim term indefinite. *Id.*

There appears to be no dispute that the terms "hole," "second portion of the interface" and "second plate," in claim 20 lack antecedent basis.  Nevertheless, in the context of the specification and claims, it would be clear to an ordinary artisan the "hole,"

- 26 -

"second portion," and "second plate" to which claim 20 refers. Indeed, the specification provides that there is only one "hole of the second portion," (*see, e.g.*, '189 Patent at 9:36–39 ("Defined at the center of the bottom plate 306 is an elongated hole 312 sized and shaped for allowing the passage of a portion of the propulsion mechanism"), 10:49–50 ("the elongated hole 312 of the bottom portion")), one "second portion," or bottom portion, "of the interface" (*see, e.g., id.* at 17:13–15 ("it will also be understood that the interface could be comprised only one of the top and bottom portions (*e.g.,* top portion 304 or bottom portion 302)")), and one "second plate" (*see, e.g., id.* at 9:32–34 ("the bottom portion 302 comprises a plate 306"), 9:36–38 ("Defined at the center of the bottom plate 306 is an elongated hole 312")). The '189 Patent's drawings confirm an ordinary artisan would understand the meaning of the elements lacking antecedent basis in claim 20 and, thus, would understand the scope of claim 20 itself.[14]



FIG.19

---

[14] The Court highlights in yellow the structures in Figures 19 and 20 that correspond to the elements "hole," "second portion," and "second plate."

FIG.20

Hobie Cat has not endeavored to show an ordinary artisan would have a different understanding of the disputed elements.

Accordingly, ***the Court declines at this time to invalidate claim 20 for indefiniteness***.

**J.    "guiding assembly"**

**1.    Lexicography**

Hobie Cat argues that the patentee of the '189 Patent defined the term "guiding assembly" using its own lexicography. Pelican opposes, averring that the assertedly definitional language identified by Hobie Cat does not suggest an intent to expressly define a term, but rather, read in the context of the surrounding language, illustrates an example of an embodiment of a "guiding assembly," without excluding other embodiments.

As mentioned above, to act as a lexicographer, the patentee must "exhibit an express intent to impart a novel meaning to claim terms." *Bell Atl. Network Servs., Inc. v. Covad*

- 28 -

*Comms. Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001); *see also Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295 (Fed. Cir. 2004) (finding that patentee must "clearly state[] any special definitions of the claim terms in the patent specification or file history.") "This clear expression need not be in *haec verba* but may be inferred from clear limiting descriptions of the invention in the specification or prosecution history." *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012). Words such as "meaning" and "defined as" may offer an express definition. *See Edward Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2000). So too may the specification's use of "*i.e.*" "signal an intent to define the word to which it refers."[15] *Id.*; *see also Abbott Labs v. Novapharm Ltd.*, 323 F.3d 1324, 1327, 1330 (Fed. Cir. 2003) (finding patentee acted as own lexicographer when it "explicitly defined" claim term through use of "*i.e.*"); *accord OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-1622-HSG, 2015 WL 3544845, at *11–12 (N.D. Cal. June 5, 2015) (holding use of "*i.e.*" in the specification shows that the applicant was acting as his own lexicographer in defining claim term "redraw"); *Vitamix Corp. v. Blentec, Inc.*, 2016 WL 2944150, at *4 (N.D. Ohio May 20, 2016) ("By using the phrase 'that is' the patentee demonstrated his intent to define the term [to which 'that is' refers].");  *cf. Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1373 (Fed. Cir. 2014) ("Had the phrase been cast as a definition instead of as an example—if the phrase had been preceded by '*i.e.*' instead of '*e.g.*'–then it would help provide the clarity that the specification lacks.").

While it is true, as Hobie Cat observes, Pelican provides no authority for the premise lexicography is precluded where a patentee defines a term in order to illustrate an exemplary embodiment, this Court's own research discloses several such instances in which the Federal Circuit held exactly that. *See Toshiba Corp. v. Imation Corp.*, 681 F.3d

---

[15] As observed by the Ninth Circuit, "[t]he term '*i.e.*' is the abbreviation for the Latin term *id est* meaning 'that is.'  The abbreviation "*i.e.*" introduces another way of putting what has been already said." *United States v. King*, 849 F.2d 1259, 1260 (9th Cir. 1988) (quoting H. Fowler, *A Dictionary of Modern English Usage* 263 (3d ed. 1983)).

1358 (Fed. Cir. 2012) ("*Toshiba*"); *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012).  Most notable among those Federal Circuit precedents is *Toshiba*.

In *Toshiba*, the Federal Circuit found the use of "*i.e.*" in the subject patent did not authorize a finding the patentee had acted as its own lexicographer.  There, the specification provided, in pertinent part:

> As illustrated in Fig. 2 . . . a number of disc-sides identifier and a disc side identifier are recorded in . . . the disc.  It is clear that this information must be provided on each side of the disc—*i.e.*, each recording plane—in order for the disc side identifier to serve its purpose of identifying which side is being recorded/reproduced.

682 F.3d at 1370.  The Federal Circuit concluded it could not infer the patentee acted as its own lexicographer from this language alone.  It found the most natural reading of the patentee's use of the term "*i.e.*," in the context of that specific patent, was as "merely explaining that in the example in figure 2 [of the *Toshiba* patent], a side of the disc constitutes a recording pane," not that "a recording pane is to be equated with a disc side in all instances."  *Id.* at 1370–71.

The patentee's use of the term "*i.e.*" in the specification of the '189 Patent that Hobie Cat avers expressly defines the term "guiding assembly" similarly is surrounded by limiting language that manifests the patentee's attempt to explain an example of a "guiding assembly," not to expressly define it.  (*See* '189 Patent at 12:43–53.)  In pertinent part, the '189 Patent's specification provides:

> <u>While in the above embodiment</u> the guiding assembly (*i.e.* the guiding fins 334a–334d, the fins 354 of the fastening portions 332a–332d and the fins 376 of the female portions 334a–334d of the directing assembly 336) are provided on the bottom plate 302 of the interface 300, and the channel 402 is provided on the top portion 304 of the interface, it will be understood that the location of these components could be inverted, where the channel (e.g. channel 402) would be provided on the bottom portion 302 and the guiding assembly would be provided on the top portion 304 of the interface.

('189 Patent at 12:43–53.)   The underlined language above shows the patentee's use of "*i.e.*" does not imply an intent to define expressly "guiding assembly" in all embodiments, but rather only the "guiding assembly" in the "above embodiment." Accordingly, this language is not sufficiently definite to "signal an intent to define" "guiding assembly." *See Edward Lifesciences*, 582 F.3d at 1334.

Hobie Cat asserts that the patentee acted as its own lexicographer in yet another instance, where the specification provides, in pertinent part:

> [t]he directing assembly 336 and the guiding fins 334a–334d, the fins 354 of the fastening portions 332a–332d and the fins 376 of the female portions 334a–334d *define* a guiding assembly.

('189 Patent at 15:6–9 (emphasis added).)   Pelican responds this language, too, is exemplary, because an indefinite article immediately precedes "guiding assembly," as opposed to a definite article (such as "the" or "said"), thus indicating there may be multiple embodiments of a "guiding assembly," including ones that include different constituent elements.

Pelican's argument invokes the "general plural rule": a "rule" in patent parlance that "'a' or 'an'" means "more than one" unless "the specification, or the prosecution history, necessitates a departure." *Baldwin Graphic Sys.*, 512 F.3d at 1342–43 (citing *Abtox Inc. v. Exitron Corp.*, 122 F.3d 1019 (Fed. Cir. 1997) and *Insituform Techs., Inc. v Cat Contracting, Inc.*, 99 F.3d 1098 (Fed. Cir. 1996)); *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("Unless the claim is specific as to the number of elements, the article 'a' receives a singular interpretation only in rare circumstances when the patentee evinces a clear intent to so limit the article.").   This Court agrees with Pelican that patent parlance dictates that the patentee's use of an indefinite article to immediately precede "guiding assembly" precludes a finding the inventors acted as their own lexicographer. *See Energy Heating, LLC v. Heat On-The-Fly, LLC*, No. 4:13-cv-10, 2014 WL 12798742, at *8 (D. N.D. July 7, 2014) (holding indefinite article preceding disputed term precluded finding of lexicography) (citing *SanDisk Corp. v. Kingston Tech. Co.*, 695

F.3d 1348, 1360 (Fed. Cir. 2012)); *see also Kudlacek v. DBC, Inc.*, 115 F. Supp. 2d 996, 1021–23 (N.D. Iowa 2000) (similar). In so holding, the Court is guided by the bedrock principle of patent law that "[a]lthough the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." *KJC*, 223 F.3d at 1356.

Accordingly, the Court finds that the '189 Patent's patentee did not act as its own lexicographer with respect to the disputed term "guiding assembly."

### 2.   Means-Plus-Function

Hobie Cat argues in the alternative that Section 112(f) applies to the term "guiding assembly." The pertinent language in claim 20 provides:

> The watercraft of claim 14, further comprising of at least one guiding assembly for maintaining **the channel** of the first portion **in registry with** the hole of the second portion where the at least one **fastening assembly** is fastened and **the channel** is spaced apart from the second plate.

Hobie Cat argues that "guiding assembly" is a nonce term, and the remainder of the claim 20 language that immediately follows that phrase is a statement of function. Pelican contends that the word "guiding" imparts sufficient structure to the word "assembly."

There is no dispute here that there is a rebuttable presumption Section 112(f) does not apply given the absence of the word "means" from the claim. *See Personalized Media*, 161 F.3d at 703–04. As with the terms "fastening assembly" and "locking mechanism," this Court is tasked with assessing whether "guiding" designates structure to the ordinary artisan. *See Vistan Corp.*, 2012 WL 1496099, at *5. Pelican argues that Section 112(f) is inapplicable because the specification provides a corresponding structure and lists a number of concrete elements as examples of this structure. (*See* '189 at 12:43–53, 15:6–9.) This argument misapplies the Section 112(f) analysis. As explained above, *supra* note 8, the question whether a given claim term connotes structure to avoid application of Section 112(f) depends not on whether the specification provides corresponding structure

- 32 -

but whether the words employed in the claim are used in 'common parlance or by persons of skill in the pertinent art to designate structure." *See SPH Am., LLC*, 2015 WL 12831674, at *4 (quoting *MIT*, 462 F.3d at 1356)).

In this regard, Pelican fails to provide intrinsic or extrinsic evidence showing that the word "guiding" connotes structure. Indeed, the sources Pelican proffers are not germane. In particular, Pelican provides a general source dictionary definition for the word "guide," which explains, in part, that that word means "a device, such as a ruler, tab, or bar, that serves as an indicator or acts to regulate a motion or operation[.]" ("Guide," *American Heritage Dictionary* (5th ed. 2018), Ex. F to Lyons Decl., ECF No. 40-7.) But claim 20 does not employ the word "guide," it uses "guiding," thus rendering Pelican's extrinsic evidence of little value.[16] Pelican offers no other evidence that the term "guiding assembly" is used in either common parlance or in the parlance of an ordinary artisan to designate structure. Nor is such a premise apparent to the Court.

Thus, Hobie Cat has overcome the presumption that "guiding assembly" is not a means-plus-function limitation. Accordingly, ***the Court concludes "Guiding assembly" is governed by 35 U.S.C. § 112(f). Its function is to maintain the channel of the first portion of the interface in registry with the hole of the second portion of the interface when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate. Its corresponding structure is the directing assembly 336 and the guiding fins 334a–334d, the fins 354 of the fastening portions 332a–332d and the fins 376 of the female portions 334a–334d, as shown in Figures 13 and 15–17, and equivalents thereof.***

---

[16] Pelican also compares the instant patent to the one confronted in *Lippert Components Mfg. Inc. v. Morryde Int'l Inc.*, No. 16-CV-264 JD, 2018 WL 3957203, at *10 (N.D. Ind. Aug. 17, 2017), in which the *Lippert* Court construed the term "roller guide member," however, in that case the challenger did not argue that term invoked Section 112(f). In any event, the term "roller guide member" in the patent at issue in *Lippert* is not analogous to the term "guiding assembly" used in the instant patent.

1

## IV.   CONCLUSION

2          The Court hereby construes the claims as set forth in this Order and in the attached

3   Worksheet.

4          **IT IS SO ORDERED.**

5

6   **DATED: February 1, 2022**

7

**Hon. Cynthia Bashant**
**United States District Judge**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 34 -

**Joint Claim Construction Worksheet**

**U.S. Patent No. 10,829,189**

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **(1) Pelican Proposed Term 1:**<br><br>**"well extending between the deck portion and the hull portion"**<br><br>**Claim 14**<br><br>14. A watercraft comprising:<br><br>rigid body having a deck portion, a hull portion and a **well extending between the deck portion and the hull portion**, | None. | **Proposed Construction:**<br><br>"an opening from the deck to the hull" | **Proposed Construction:**<br><br>"well" means "opening"<br><br>"extending between the deck portion and the hull portion" does not require construction. If the Court finds that construction is required, this limitation means "extending between the deck portion and the hull portion." | **Court's Construction**<br><br>"well" means "opening"<br><br>"extending between the deck portion and the hull portion" does not require construction. |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| an interface for mounting a propulsion mechanism to the body of the watercraft, the interface including:<br><br>a first portion including a first plate positionable adjacent to one of the hull portion and the deck portion of the watercraft, about the periphery of the well, and at least one channel extending from the first plate, the channel being positionable in the well, the channel being sized and shaped for receiving therein a portion of the propulsion mechanism and for mounting the | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| propulsion mechanism to the interface; and<br><br>at least one fastening assembly for removably fastening the first portion to the body of the watercraft. | | | | |
| **(2) Pelican Proposed Term 2:**<br><br>**"channel extending from the first plate…for mounting the propulsion mechanism to the interface"**<br><br>**Claim 14**<br><br>14. A watercraft comprising:<br><br>rigid body having a deck portion, a hull portion and a well extending between | None. | **Proposed Construction:**<br><br>"structure projecting from the first plate into the well to define a passageway, and that receives and mechanically supports the propulsion mechanism" | **Proposed Construction:**<br><br>"channel" means "a hollow structure defining a passageway through the interface"<br><br>"extending from the first plate" does not require construction. If the Court finds that construction is required, this limitation means "extending from the first plate"<br><br>"for mounting the propulsion mechanism to the interface" does not require construction. If the Court finds that | "channel" means "a structure defining a passageway"<br><br>"extending from the first plate . . . for mounting the propulsion mechanism to the interface" does not require construction. |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| the deck portion and the hull portion,<br><br>an interface for mounting a propulsion mechanism to the body of the watercraft, the interface including:<br><br>a first portion including a first plate positionable adjacent to one of the hull portion and the deck portion of the watercraft, about the periphery of the well, and at least one **channel extending from the first plate**, the channel being positionable in the well, the channel being sized and shaped for receiving therein a | | | construction is required, this limitation means "for mounting the propulsion mechanism to the interface." | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| portion of the propulsion mechanism and **for mounting the propulsion mechanism to the interface**; and at least one fastening assembly for removably fastening the first portion to the body of the watercraft. | | | | |
| **(3) Pelican Proposed Term 3:** <br><br> **"in registry with"** <br><br> **Claim 15** <br><br> 15. The watercraft of claim 14, wherein the interface further comprises a second portion including a second plate positionable adjacent to the other of the hull | None. | **Proposed Construction:** <br><br> "in alignment with" | **Proposed Construction:** <br><br> This limitation does not require construction. If the Court finds that construction is required, "in registry with" means "in registry with." | "in registry with" means "in registry with" |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| portion and the deck portion of the watercraft, about the periphery of the well, the second plate comprising a hole sized and shaped for receiving therethrough a portion of the propulsion mechanism, the hole being positionable **in registry with** well and with the channel of the first portion, and wherein the at least one fastening assembly is further configured for removably fastening the second portion of the interface to the body of the watercraft. | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **Claim 19**<br><br>19. The watercraft of claim 16, wherein the at least one fastening assembly is further configured for maintaining the channel of the first portion **in registry with** the hole of the second portion when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate.<br><br>**Claim 20**<br><br>20. The watercraft of claim 14, further comprising at least one guiding assembly for maintaining the channel of the first | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| portion **in registry with** the hole of the second portion when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate.<br><br>**Claim 21**<br><br>21. The watercraft of claim 20, wherein the at least one guiding assembly comprises a plurality of fins extending upwardly from the second plate of the second portion, about the periphery of the hole, the fins being configured for positioning the channel of the first portion **in registry with** the hole of the | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| second portion as the first and second portions of the interface are forced toward one another. | | | | |
| **(4) Pelican Proposed Term 4:**<br><br>**"lock mechanism for removably securing the propulsion mechanism to the interface, wherein the lock mechanism is mounted in the channel of the second portion of the interface"**<br><br>**Claim 25**<br><br>25. The watercraft of claim 14, further comprising a **lock mechanism for removably securing the propulsion** | None. | **Proposed Construction:**<br><br>"mechanism for locking and unlocking the propulsion mechanism to the interface that is mechanically supported by the inner wall of the channel of the first portion" (*see* definition for "channel" above)"<br><br>This term is not governed by Section 112(f) and should not be construed as a Section 112(f) limitation.<br><br>This claim term is not indefinite.<br><br>If governed by Section 112(f), Pelican contends:<br><br>Claimed function: "for removably securing the | **Proposed Construction:**<br><br>The "locking mechanism" limitations found in the asserted claims should be construed as a 112(f) limitation.<br><br>The function recited by claim 25 is "for removably securing the propulsion mechanism to the interface." The claim also specifies that the corresponding structure is "mounted in the channel of the **second** portion of the interface." Pelican seeks to construe this to mean "mounted in the channel of the **first** portion of the interface."<br><br>The structures for performing the claimed | "lock mechanism" is not a means-plus-function limitation and, thus, 35 U.S.C. § 112(f) does not apply.<br><br>"lock mechanism for removably securing" means "mechanism for locking and unlocking"<br><br>"the propulsion mechanism to the interface, wherein the lock mechanism is mounted in the channel of the second portion of the interface" shall be corrected to "the propulsion mechanism to the interface, wherein the lock mechanism is mounted in the first portion of the interface."<br><br>"the propulsion mechanism to the interface, wherein the lock mechanism is mounted in the first portion of the interface" does not require further construction. |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **mechanism to the interface, wherein the lock mechanism is mounted in the channel of the second portion of the interface.** | | propulsion mechanism to the interface." The corresponding structure includes: An elongated member pivotably mounted to the channel, *see e.g.* lock 450 and generally elongated flat member 452, including as described in the specification and depicted in the figures, including Figure 14. | function, to the extent any structure satisfies the requirement that it be clearly linked by the specification to the claimed function are: 1. top funnel slot 446 2. lock receiving recess 448 3. lock 450 consisting of generally elongated flat member 452, convex lower end 454, concave upper end 456, grip elements 458  If the Court concludes this limitation does not invoke Section 112(f), Hobie proposes this limitation means:  "a mechanism mounted in the channel of the second portion of the interface for removably securing the propulsion mechanism to the interface" | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | | If construed such that the lock mechanism (450) is mounted in the first portion rather than the second portion, as claimed, the claim is indefinite and lacks written description.<br><br>**Impact on the merits of the case:** Adoption of Hobie's proposed construction would be dispositive as to alleged infringement of claim 25 by the accused Hobie Passport and Lynx products which provide a lock mounted in the channel of the ***first portion*** of the interface ***not in the second portion*** as claimed. | |
| **(5) Pelican Proposed Term 5:**<br><br>**"the hole of the second portion when the at least one fastening assembly is** | None. | **Proposed Construction:**<br><br>"a hole of a second portion when the at least one fastening assembly is fastened and the channel is spaced-apart from a second plate" | **Proposed Construction:**<br><br>Claim 20 depends from claim 14. Claim 14 does not recite antecedent basis for the claimed hole, second portion or second | Correction is not warranted because the asserted error is not obvious. *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003) |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| fastened and the channel is spaced apart from the second plate" <br><br> **Claim 20** <br><br> 20. The watercraft of claim 14, further comprising at least one guiding assembly for maintaining the channel of the first portion in registry with **the hole of the second portion when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate.** | | | plate of claim 20. As such, this claim is indefinite. <br><br> This limitation does not require construction. If the Court finds that construction is required, "the hole of the second portion when the at least one fastening assembly is fastened and the channel is spaced apart from the second plate" means "the hole of the second portion when the at least one fastening assembly is fastened and the channel is spaced apart from the second plate." Hobie has proposed a construction of the complete "guiding assembly" limitation of claim 20, (see term 10, below) which includes the partial phrase identified by Pelican. | A ruling of invalidity is not warranted because an artisan of ordinary skill in the relevant art would understand what the patentee means by the elements lacking antecedent basis.  *See In re Downing*, 754 F. App'x 988, 990–91 (Fed. Cir. 2018) |
| **(6) Hobie Proposed Term 1:** | None. | **Proposed Construction:** | **Proposed Construction:** | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **"plate"**<br><br>**Claim 14**<br>14. A watercraft comprising:<br>   rigid body having a deck portion, a hull portion and a well extending between the deck portion and the hull portion,<br>   an interface for mounting a propulsion mechanism to the body of the watercraft, the interface including:<br>   a first portion including a first **plate** positionable adjacent to one of the hull portion and the deck portion of the watercraft, about the periphery of the well, and at least one channel | | No construction necessary / plain and ordinary meaning.<br><br>Pelican objects to the construction of this term in isolation because it is largely defined by other qualifying language in the claim itself.<br><br>To the extent the Court construes this claim term, Pelican believes that this term should be construed as follows:<br><br>"generally flat structure" | "plate" means "flat structure"<br><br>**Impact on the merits of the case:** Adoption of Hobie's proposed construction is case dispositive as to the accused Mirage Pro Angler 360 kayak, which does not include a plate, which is a flat structure. | "plate" means "generally flat structure" |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| extending from the first **plate**, the channel being positionable in the well, the channel being sized and shaped for receiving therein a portion of the propulsion mechanism and for mounting the propulsion mechanism to the interface; and   at least one fastening assembly for removably fastening the first portion to the body of the watercraft.<br><br>**Claim 15**<br>15. The watercraft of claim 14, wherein the interface further comprises a second portion including a second **plate** | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| positionable adjacent to the other of the hull portion and the deck portion of the watercraft, about the periphery of the well, the second **plate** comprising a hole sized and shaped for receiving therethrough a portion of the propulsion mechanism, the hole being positionable in registry with well and with the channel of the first portion, and wherein the at least one fastening assembly is further configured for removably fastening the second portion of the interface to the | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| body of the watercraft.<br><br>**Claim 17**<br>17. The watercraft of claim 16, wherein the at least one fastening assembly includes a first segment engaging the first portion of the interface and a second segment engaging the second portion of the interface, the first and second segments of the at least one fastening assembly collaborating to force the first and second portions of the interface toward one another to sandwich the body of the watercraft between the first and second **plates**. | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **Claim 18**<br>18. The watercraft of claim 17, wherein the first segment of the at least one fastening assembly comprises a threaded fastener engaging the first **plate** of the first portion and the second segment of the at least one fastening assembly comprises a fastening projection provided with a threaded hole, the threaded fastener being engageable in the threaded hole of the fastening projection to force the first and second portions of the interface toward one another.<br><br>**Claim 19** | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| 19. The watercraft of claim 16, wherein the at least one fastening assembly is further configured for maintaining the channel of the first portion in registry with the hole of the second portion when the at least one fastening assembly is fastened and the channel is spaced-apart from the second **plate**. <br><br> **Claim 20** <br> 20. The watercraft of claim 14, further comprising at least one guiding assembly for maintaining the channel of the first portion in registry with the hole of the second portion | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate.<br><br>**Claim 21**<br>21. The watercraft of claim 20, wherein the at least one guiding assembly comprises a plurality of fins extending upwardly from the second **plate** of the second portion, about the periphery of the hole, the fins being configured for positioning the channel of the first portion in registry with the hole of the second portion as the first and second portions of the | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| interface are forced toward one another. | | | | |
| **(7) Hobie Proposed Term 2:**<br><br>**"about the periphery"**<br><br>**Claim 14**<br>14. A watercraft comprising:<br>   rigid body having a deck portion, a hull portion and a well extending between the deck portion and the hull portion,<br>   an interface for mounting a propulsion mechanism to the body of the watercraft, the interface including:<br>   a first portion including a first plate positionable | None. | **Proposed Construction:**<br><br>No construction necessary / plain and ordinary meaning.<br><br>To the extent the Court construes this claim term, Pelican believes that this term should be construed as follows:<br><br>"along the edge" | **Proposed Construction:**<br><br>"completely around the outer recess"<br><br>**Impact on the merits of the case:** Adoption of Hobie's proposed construction is case dispositive as to the accused Hobie Mirage Pro Angler 360 kayak, which does not include the claimed "plate" and does not include a "plate" that is positionable completely around the outer recess of the well. | "about the periphery" means "around the edge" |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| adjacent to one of the hull portion and the deck portion of the watercraft, **about the periphery** of the well, and at least one channel extending from the first plate, the channel being positionable in the well, the channel being sized and shaped for receiving therein a portion of the propulsion mechanism and for mounting the propulsion mechanism to the interface; and    at least one fastening assembly for removably fastening the first portion to the body of the watercraft. | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **Claim 15**<br>15. The watercraft of claim 14, wherein the interface further comprises a second portion including a second plate positionable adjacent to the other of the hull portion and the deck portion of the watercraft, **about the periphery** of the well, the second plate comprising a hole sized and shaped for receiving therethrough a portion of the propulsion mechanism, the hole being positionable in registry with well and with the channel of the first portion, and | | | | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| wherein the at least one fastening assembly is further configured for removably fastening the second portion of the interface to the body of the watercraft. | | | | |
| **(8) Hobie Proposed Term 3:**<br><br>**"fastening assembly…"**<br><br>**Claim 14**<br>14. A watercraft comprising:<br>    rigid body having a deck portion, a hull portion and a well extending between the deck portion and the hull portion,<br>    an interface for mounting a | None. | **Proposed Construction:**<br><br>These claim terms do not require construction, and therefore, Pelican objects to these constructions.<br><br>To the extent the Court construes these claim terms, the plain and ordinary meaning should apply.<br><br>To the extent the Court finds that the plain and ordinary meaning does not apply, Pelican believes that these terms should be construed as such: | **Proposed Construction:**<br><br>The "fastening assembly" limitations found in the asserted claims should be construed as a 112(f) limitation.<br><br>The function recited by claim 14 is "removably fastening the first portion to the body of the watercraft."<br><br>The function recited by claim 15 is "removably fastening the second portion of the interface to the body of the watercraft." | "fastening assembly . . ." is not a means-plus-function limitation and, thus 35 U.S.C. § 112(f) does not apply.<br><br>"fastening assembly" means "fastener" |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| propulsion mechanism to the body of the watercraft, the interface including: a first portion including a first plate positionable adjacent to one of the hull portion and the deck portion of the watercraft, about the periphery of the well, and at least one channel extending from the first plate, the channel being positionable in the well, the channel being sized and shaped for receiving therein a portion of the propulsion mechanism and for mounting the propulsion mechanism to the interface; and | | "fastener(s)" Contrary to Hobie's position, these terms are not governed by Section 112(f) and should not be construed as Section 112(f) limitations. However, if governed by Section 112(f), Pelican contends: Claimed function for claim 14: "removably fastening the first portion to the body of the watercraft." Claimed function for claim 15: "removably fastening the second portion of the interface to the body of the watercraft." Claimed function for claim 16: "removably fastening the first portion to the second portion of the interface." The corresponding structures include: | The function recited by claim 16 is "removably fastening the first portion to the second portion of the interface." The structures for performing these claimed functions, to the extent any structure satisfies the requirement that it be clearly linked by the specification to the claimed function are: (**First embodiment**) threaded fastener (e.g., 120), oblong hole (e.g., 414) in recess (e.g., 412) of top portion (304), vertically aligned hole (e.g., 118) in abutment wall (e.g.114) of the body (e.g., 12). (**Second embodiment**) threaded fasteners (e.g., 132), threaded bore (e.g., | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| at least one **fastening assembly for removably fastening the first portion to the body of the watercraft**.<br><br>**Claim 15**<br>15. The watercraft of claim 14, wherein the interface further comprises a second portion including a second plate positionable adjacent to the other of the hull portion and the deck portion of the watercraft, about the periphery of the well, the second plate comprising a hole sized and shaped for receiving therethrough a portion of the | | Fastening segment(s) (or the first and/or second fastening segments), threaded fastener(s), and/or rivet(s), and/or its or their corresponding hole(s), threaded bore(s) and/or recess(es).<br><br>*See, e.g.*, '189 structures:<br><br>Fastening Segments<br><br>"fastening segments" / "first fastening segment" / "second fastening segment":<br><br>"In still another feature, the at least one fastening assembly is configured for removably fastening the first portion to the second portion of the interface. Preferably, the at least one fastening assembly includes a ***first segment*** engaging the first portion of the interface and a ***second segment*** engaging the second portion of the interface. ***The*** | 366) of the lower portion fastening projection (332), upper portion fastening projection (462) having holes (e.g., 418), hole (e.g., 130) through abutment wall (e.g.,128) of the body (e.g., 12). In summary, the threaded fastener passes through (in order): hole 418, fastening projection 462, abutment wall hole 130, threaded bore 366 of fastening projection 332 (as best shown in Figs. 13 and 21).<br><br>The structures for performing the claimed function of claim 14 and dependent claims 23, 24 and 28 can include either the first or second embodiment. The structures for performing the claimed function of remaining asserted claims must include the structures of both the first and second embodiments. | |

25

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| propulsion mechanism, the hole being positionable in registry with well and with the channel of the first portion, and wherein the at least one **fastening assembly is further configured for removably fastening the second portion of the interface to the body of the watercraft**.<br><br>**Claim 16**<br>16. The watercraft of claim 15, wherein the at least one **fastening assembly is configured for removably fastening the first portion to the** | | ***first and second segments of the at least one fastening assembly*** collaborate to force the first and second portions of the interface toward one another to sandwich the body of the watercraft between the first and second plates. " '189 at 2:45-54 (emphasis added); 4:10-19.<br><br><u>Fastening Projections</u><br><br>"fastening projections" (332a-d): '189 at 10:6-7; 10:9; 14:40-41; 14:47; 15:26; and 17:34-35.<br>"fastening projections" (462a-d): '189 at 17:34-35.<br><br><u>Threaded Fasteners</u><br><br>"threaded fasteners":<br>"In a further feature, the first segment of the at least one fastening assembly comprises a ***threaded fastener*** engaging a first plate of the first portion and the second segment of the at least one fastening | If the Court concludes this limitation does not invoke Section 112(f), Hobie proposes:<br><br>"fastening assembly" means "a group of components used for fastening"<br><br>"for removably fastening the first portion to the body of the watercraft" of claim 14 recites a limiting functionality requiring the claimed fastening assembly to permit the first portion of the interface to be fastened to the body of the watercraft and also to be unfastened and removed from the body of the watercraft.<br><br>"for removably fastening the second portion of the interface to the body of the watercraft" of claim 15 recites a limiting functionality requiring the | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **second portion of the interface**. | | assembly comprises a fastening projection provided with a threaded hole, the ***threaded fastener*** being engageable in the threaded hole of the fastening projection to force the first and second portions of the interface toward one another." Id. at 2:55-62 (emphasis added); 4:20-27.<br><br>"threaded fasteners" (120a-d): '189 at FIG. 31; 8:54; 11:40; 15:30; and 17:23.<br><br>"threaded fasteners" (132a-d): '189 at FIG. 31; 8:67; 10:28; 11:49; 11:52; and 15:18.<br><br>Rivets<br><br>"other types of fasteners (e.g. rivets)" '189 at 15:45-46.<br><br>Holes<br><br>"hole"/"threaded hole": '189 at 2:55-62. | claimed fastening assembly to permit both the first and second portions of the interface to be fastened to the body of the watercraft and also to be unfastened and removed from the body of the watercraft.<br><br>"for removably fastening the first portion to the second portion of the interface" of claim 16 recites a limiting functionality requiring the claimed fastening assembly to permit both the first and second portions of the interface to be fastened, unfastened and removed from the body of the watercraft and the first portion of the interface to be fastened, unfastened and removed from the second portion of the interface.<br><br>**Impact on the merits of the case:** Adoption of Hobie's proposed 112(f) | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
|  |  | "holes" (118a-d): '189 at FIG. 31; 8:53-54; 15:32-33; and 17:26.<br>"holes" (130a-d): '189 at 8:65-66; 14:50; and 15:20.<br>"holes" (414a-d): '189 at 11:38-39; 15:31; and 17:24.<br><br>Threaded Bores<br><br>"threaded bores" (366a-d): '189 at 10:27; 14:49; and 15:21.<br><br>Recesses<br><br>"recesses" (146a-d): 9:17-18; 15:17; and 15:19-20.<br><br>"recesses" (412a-d): 11:37; 11:39; 15:31; 15:34; 17:25; and 17:27-28.<br><br>"recesses" (416a-d): 11:44; 11:46; and 11:51.<br><br>Additionally, Pelican contends that Hobie's statement about "remaining asserted claims" has not put | construction is case dispositive as to infringement by the accused Hobie Passport and Lynx kayaks, which do not include the structures that correspond to the claimed functions or their equivalents. Adoption of Hobie's alternative proposed construction is also case dispositive as to infringement by the accused Passport and Lynx kayaks if the Court makes clear in its claim construction order that the alleged interface must be ***fastened to the body*** of the watercraft as claimed and described. Construction of these limitations, to the extent that it does not result in non-infringement, will establish the invalidity of the asserted claims in view of the prior art and may also impact available damages remedies. |  |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | Pelican on sufficient notice of what claims its "fastening assembly" limitation constructions apply to. | | |
| **(9) Hobie Proposed Term 4:** **"first segment," "second segment," "first and second segments"** **Claim 17** 17. The watercraft of claim 16, wherein the at least one fastening assembly includes a **first segment** engaging the first portion of the interface and a **second segment** engaging the second portion of the interface, the **first and second segments** of the at least one fastening | None. | **Proposed Construction:** These claim terms do not require construction, and therefore, Pelican objects to the construction of them. Pelican further objects to Hobie's improper grouping of these claim terms which previously, were construed by Hobie separately as individual terms. To the extent the Court construes these terms, Pelican believes that these terms should be construed as such: First segment: "first part of a fastening assembly" Second segment: "second part of a fastening assembly" | **Proposed Construction:** "first segment" means "a threaded fastener engaging the first plate of the first portion." "second segment" means "a fastening projection provided on the second portion with a threaded hole into which the threaded fastener is engageable." **Impact on the merits of the case:** Adoption of Hobie's proposed construction is dispositive as to alleged infringement of claims 17 and 18 by the accused Mirage Passport and Lynx products. These products do not include a threaded fastener engaging the first plate of the first | "first segment," "second segment," "first and second segments" are construed as having their plain and ordinary meaning and, thus, do not require further construction. |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| assembly collaborating to force the first and second portions of the interface toward one another to sandwich the body of the watercraft between the first and second plates.<br><br>**Claim 18**<br>18. The watercraft of claim 17, wherein the **first segment** of the at least one fastening assembly comprises a threaded fastener engaging the first plate of the first portion and the **second segment** of the at least one fastening assembly comprises a fastening projection provided with a threaded hole, the | | | (top) portion. These products also do not include a fastening projection in the second (bottom) portion or a fastening projection provided with a threaded hole. | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| threaded fastener being engageable in the threaded hole of the fastening projection to force the first and second portions of the interface toward one another. | | | | |
| **(10) Hobie Proposed Term 5:**<br><br>**"guiding assembly…"**<br><br>**Claim 20**<br>20. The watercraft of claim 14, further comprising at least one **guiding assembly for maintaining the channel of the first portion in registry with the hole of the second portion when the at least one fastening assembly is** | None. | **Proposed Construction:**<br><br>This claim term does not require construction, and therefore, Pelican objects to its construction.<br><br>To the extent the Court construes this claim terms, the plain and ordinary meaning should apply.<br><br>To the extent the Court finds that the plain and ordinary meaning of this term does not apply, Pelican believes that the term of claim 20 should be construed as: | **Proposed Construction:**<br><br>The applicants acted as lexicographers in defining the claimed "guiding assembly." *See* 12:42-45: ("While in the above embodiment **the guiding assembly (i.e.** the guiding fins 334a-334d, the fins 354 of the fastening portions 332a-332d and the fins 376 of the female portions 334a-334d of the directing assembly 336)"); 15:6-12 ("As such, the directing assembly 336 and the guiding fins 334a-334d, the fins 354 of the fastening portions 332a- | The patentee did not act as a lexicographer. *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358 (Fed. Cir. 2012)<br><br>Section 112(f) governs the term "guiding assembly"<br><br>Its function is to maintain the channel of the first portion of the interface in registry with the hole of the second portion of the interface when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate.<br><br>Its corresponding structure is the direct assembly 336 and the |

| | | | | |
|---|---|---|---|---|
| | | | | guiding fins 3324a–334d, the fins354 of the fastening portions 332a–332d and the fins 376 of the female portions 334a–334d, as shown in Figures 13 and 15–17, and equivalents thereof. |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **fastened and the channel is spaced-apart from the second plate**. | | "at least one guiding assembly for maintaining the channel of the first portion in registry with a hole of a second portion when the at least one fastening assembly is fastened and the channel is spaced-apart from a second plate." <br><br> Contrary to Hobie's assertion, this term is not governed by Section 112(f) and should not be construed as a Section 112(f) limitation. <br><br> If governed by Section 112(f), Pelican contends: <br><br> Claimed function: "maintaining the channel of the first portion in registry with the hole of the second portion when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate." <br><br> Described examples of these corresponding structures include: | 332d and the fins 376 of the female portions 334a-334d *define a guiding assembly* and assist in properly aligning the top and bottom portions 302, 304 of the 10 interface 300 during their assembly with the body 12 of the kayak 10.") <br><br> The claimed guiding assembly 336 includes male portion (390) and female portion (334). *See* 14:64-15:6 ("To properly position the lower end 403 of the channel 402 in alignment with the elongated hole 312 of the lower portion 302, a *male portions 390a-390d of the guide assembly 336* gradually engages *female portions 334a-334d* of the directing assembly 336, while the bottom end 403 of the channel 402 gradually engages the inclined edges 358, 380, | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | "one or more fins and/or directing assemblies such as with male and female portions."<br><br>"Fins" to be construed as "flattened projections." *See* Pelican's 4.1 Preliminary Proposed Construction.<br><br>*See also:*<br><br>"In one feature, the interface further comprises at least one ***guiding assembly*** for maintain the channel of the first portion in registry with the hole of the second portion when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate. Preferably, the at least one ***guiding assembly comprises a plurality of fins*** extending upwardly from the second plate of the second portion, about the periphery of the hole, the fins being | 394, and then the vertical edges 356, 378, 392 of the guiding fins 334a-334d, the fins 354 of the fastening portions 332a-332d, the fins 376 of the female portions 334a-334d.")<br><br>As such, each claimed "guiding assembly" should be construed to include:<br>1.  Guiding assembly (also referred to as "directing assembly") (*e.g.*, 336);<br>2.  Guiding assembly female portion (*e.g.*, 334) having a cylindrical hole (*e.g.*, 384);<br>3.  Guide assembly male portion (*e.g.*, 390);<br>4.  Guiding assembly fin (*e.g.*, 376);<br>5.  Guiding fin (*e.g.*, 338 also referred to as 334);<br>6.  Fastening portion fin (*e.g.*, 354).<br><br>Pelican appears to contend the named inventors did | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | configured or positioning the channel do the first portion in registry with the hole of the second portion as the first and second portions of the interface are force toward one another." '189 at 3:3-14 (emphasis added).<br><br>"Together, ***the guiding fins 334a-334d***, the fins 354 of the fastening portions 332a, 332d and the fins 376 of the female portions 334a 334d of the directing assembly 336 collaborate to guide the positioning of the top portion 304 of the interface 300 relative to the bottom portion 302 during 5 the assembly of the interface 300." Id. at 11:1-6 (emphasis added).<br><br>"While in the above embodiment ***the guiding assembly (i.e. the guiding fins 334a-334d, the fins 354 of the fastening portions 332a-332d and the fins 376 of the female portions 334a-*** | not act as their own lexicographers. As such, and if the Court agrees with Pelican's position, "guiding assembly for maintaining the channel of the first portion in registry with the hole of the second portion when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate" should be construed as a 112(f) limitation.<br><br>Claimed function: "maintaining the channel of the first portion in registry with the hole of the second portion when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate."<br><br>The structures for performing these claimed functions, to the extent any structure satisfies the | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | ***334d of the directing assembly 336)*** are provided on the bottom plate 302 of the interface 300." Id. at 12:42-46 (emphasis added). | requirement that it be clearly linked by the specification to the claimed function are:<br>1.  Guiding assembly (also referred to as "directing assembly") (*e.g.*, 336);<br>2.  Guiding assembly female portion (*e.g.*, 334) having a cylindrical hole (*e.g.*, 384);<br>3.  Guide assembly male portion (*e.g.*, 390);<br>4.  Guiding assembly fin (*e.g.*, 376);<br>5.  Guiding fin (*e.g.*, 338 also referred to as 334);<br>6.  Fastening portion fin (*e.g.*, 354).<br><br>**Impact on the merits of the case:** Adoption by the Court of either construction proposed by Hobie would be dispositive as to alleged infringement of claims 20, 21 and 22 by accused Hobie Passport and Lynx products as neither includes | |

| PATENT CLAIM | AGREED PROPOSED CONSTRUCTION | PELICAN PROPOSED CONSTRUCTION[1] | HOBIE PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | | the claimed "guiding assembly." | |