

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PELICAN INTERNATIONAL, INC., | Case No.: 3:20-cv-02390-RSH-MSB |
| Plaintiff, | |
| v. | **ORDER:** |
| HOBIE CAT COMPANY; and HOBIE CAT COMPANY II, LLC, | **(1) GRANTING & DENYING IN PART PLAINTIFF'S *DAUBERT* MOTION; AND** |
| Defendants. | [ECF No. 96] |
| | **(2) GRANTING & DENYING IN PART DEFENDANT'S *DAUBERT* MOTIONS.** |
| | [ECF Nos. 92, 95] |

On April 13, 2022, Defendants Hobie Cat Company and Hobie Cat Company II, LLC (collectively "Hobie"), filed motions pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to exclude testimony from two of Plaintiff Pelican International, Inc.'s ("Pelican") experts: (1) technical expert Dr. Maki, ECF No. 95; and (2) damages expert Ms. Dean, ECF No. 92. On April 13, 2022, Pelican also filed a *Daubert* motion to exclude testimony from Hobie's technical expert Dr. Sanders. ECF No. 96. On May 17, 2022, the Parties responded to the respective *Daubert* motions. ECF Nos. 111, 113. The

1

Parties filed their respective replies soon thereafter. ECF Nos. 121, 128, 136. The Court held a hearing on the matter on February 9, 2023.

For the reasons below, the Court grants and denies in part Pelican's motion as to Dr. Sanders, grants and denies in part Hobie's motion as to Dr. Maki, and grants and denies in Part Hobie's motion as to Ms. Dean.

## I.    BACKGROUND

Pelican and Hobie are competing designers and manufacturers of watercraft products, such as kayaks. First Am. Compl. (Mar. 3, 2021), ECF No. 16 ¶ 8; Answer & Countercl. (Mar. 17, 2021), ECF No. 17 ¶ 9. Pelican is the owner by assignment of U.S. Patent No. 10,829,189 ("the '189 Patent"). U.S. Patent No. 10,829,189, at [73] (issued Nov. 10, 2020). In this case, Pelican accuses Hobie of infringing at least Independent Claim 14 of the '189 Patent by making, using, importing, selling, and/or offering for sale kayaks, including Hobie's Passport, Lynx, and Pro Angler 360 kayaks. *See* ECF No. 16 ¶ 13; ECF No. 62 at 18.

The '189 Patent is entitled "Interface for Mounting a Propulsion Mechanism to a Watercraft," and was issued on November 10, 2020. '189 Patent at [45], [54]. The invention described in the '189 Patent relates to an interface for mounting a propulsion mechanism to a watercraft with a rigid body, and to a watercraft comprising a rigid body and such an interface. *Id.* at col. 1 ll. 7-9, col. 2 ll. 14-18, col. 3 ll. 45-51.

Figure 31 of the '189 Patent (set forth below) depicts an exploded view of an exemplary kayak in accordance with the invention claimed in the '189 Patent.



FIG.31

1    Independent Claim 14 of the '189 Patent, the only independent claim asserted in this

2    action,[1] recites:

3        14. A watercraft comprising:

4            rigid body having a deck portion, a hull portion and a well extending

5            between the deck portion and the hull portion,

6            an interface for mounting a propulsion mechanism to the body of the

7            watercraft, the interface including:

8                a first portion including a first plate positionable adjacent to one of

9                the hull portion and the deck portion of the watercraft, about the

10               periphery of the well, and at least one channel extending from the

11               first plate, the channel being positionable in the well, the channel

12               being sized and shaped for receiving therein a portion of the

13               propulsion mechanism and for mounting the propulsion mechanism

14               to the interface; and

15               at least one fastening assembly for removably fastening the first

16               portion to the body of the watercraft.

17   '189 Patent col. 18 ll. 64-67, col. 19 ll. 1-12.

18       On December 8, 2020, Pelican filed a complaint for patent infringement against

19   Hobie, alleging infringement of the '189 Patent. *See* Compl. (Dec. 8, 2020), ECF No. 1.

20   On March 3, 2021, Pelican filed a First Amended Complaint. ECF No. 16. On March 17,

21   2022, Hobie filed an answer to the First Amended Complaint along with two

22   counterclaims. ECF No. 17.

23       On March 26, 2021, the Court issued a scheduling order. ECF No. 20. On June 17,

24   2021, the Court issued an amended scheduling order. ECF No. 36. On November 17, 2021,

25   the Court issued a second amended scheduling order. ECF No. 61. On February 1, 2022,

26

27   ─────────────

28   [1]    *See* ECF No. 146 at 7 (listing the asserted claims).

4

the Court issued a claim construction order, construing disputed claim terms from the '189 Patent. ECF No. 77.

By the present *Daubert* motions: (1) Pelican moves to exclude certain opinions and testimony from Hobie's technical expert Dr. Sanders, ECF No. 96-1 at 1, 3-14; (2) Hobie moves to exclude certain opinions and testimony from Pelican's technical expert Dr. Maki, ECF No. 145 at 1-17; and (3) Hobie moves to preclude certain opinions and testimony from Pelican's damages expert Ms. Dean, ECF No. 144 at 1-22.

## II.   LEGAL STANDARD

The law of the regional circuit governs a district court's decision to admit expert testimony under *Daubert* in a patent case. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015). When considering expert testimony offered pursuant to Federal Rule of Evidence 702, the trial court acts as a "gatekeeper" by "making a preliminary determination of whether the expert's testimony is reliable." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *Daubert*, 509 U.S. at 597. Under Federal Rule of Evidence 702, expert testimony is admissible if:

> (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

*Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1023 (9th Cir. 2022) (citing Fed. R. Evid. 702). "Under these rules, a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Summit 6*, 802 F.3d at 1295; *see Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014)

("[T]he trial court must assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand.").

"Ultimately, 'the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.'" *Elosu*, 26 F.4th at 1024 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995)). "In evaluating proffered expert testimony, the trial court is 'a gatekeeper, not a fact finder.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)). "[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6*, 802 F.3d at 1296; *see Elosu*, 26 F.4th at 1024 ("Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury." (quoting *City of Pomona*, 750 F.3d at 1044)). "[S]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Elosu*, 26 F.4th at 1024 (quoting *Primiano*, 598 F.3d at 564); *accord Summit 6*, 802 F.3d at 1296. "[W]here the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder." *Summit 6*, 802 F.3d at 1296; *see Pyramid*, 752 F.3d at 814 ("[W]hen an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony." (quoting *Primiano*, 598 F.3d at 564-65)); *Elosu*, 26 F.4th at 1024 ("If the proposed testimony meets the thresholds of relevance and reliability, its proponent is 'entitled to have the jury decide upon [its] credibility, rather than the judge.'" (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 656 (9th Cir. 2006))).

Whether to admit or exclude expert testimony lies within the trial court's discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997); *see United States v. Verduzco*, 373 F.3d 1022, 1032 n.6 (9th Cir. 2004) ("We . . . have stressed that the 'trial court has broad

discretion to admit or exclude expert testimony'." (citation omitted)). Further, "[a] trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

## III. PELICAN'S MOTION TO EXCLUDE CERTAIN OPINIONS BY DR. SANDERS

### A. Dr. Sanders's Opinions as to the "Guiding Assembly" Limitation

Pelican argues that the Court should exclude Dr. Sanders's invalidity and non-infringement opinions regarding the "guiding assembly" claim limitation in asserted Claims 20-22 of the '189 Patent because Dr. Sanders's opinions fail to properly apply the Court's means-plus-function construction for that claim limitation. ECF No. 96-1 at 3-9. Pelican also contends that Dr. Sanders never performs the legally required analysis to demonstrate equivalency as to a means-plus-function claim element (i.e., the function-way-results test). *Id.* at 4-6. In response, Hobie argues that Dr. Sanders properly applies the Court's claim construction in her invalidity and infringement analyses. ECF No. 148 at 22-29. Hobie asserts that the sufficiency of Dr. Sanders's analyses and her credibility are matters for the jury. *Id.* at 24-25, 28.

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *accord Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015). "Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009); *see Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1371 n.2 (Fed. Cir. 2007) (explaining that a "district court's claim construction" is "law of the case for purposes of the trial"). "No party may contradict the court's construction to a jury." *Exergen*, 575 F.3d at 1321.

As such, "[a]n expert is bound by the claim construction set forth by the Court." *Ultravision Techs., LLC v. GoVision LLC*, No. 2:18-cv-100, 2021 WL 2144788, at *2 (E.D.

Tex. May 26, 2021). "[A]ny expert testimony must adhere to the court's claim constructions and must not apply alternative claim constructions." *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, No. 16-cv-118-H-KSC, 2017 WL 1215838, at *16 (S.D. Cal. Apr. 3, 2017) (quoting *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. 11-cv-5973, 2013 WL 4537838, at *4 (N.D. Cal. Aug. 22, 2013)); *see Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) ("[I]t is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.'"). And any expert testimony that contradicts or ignores a district court's claim constructions is inadmissible and should be excluded under the *Daubert* standard. *TQ Delta, LLC v. ADTRAN, Inc.*, No. CV 14-cv-954, 2019 WL 5626638, at *1 (D. Del. Oct. 31, 2019); *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, No. 17-cv-5096, 2020 WL 5512507, at *6 (D. Minn. Sept. 14, 2020); *see Ultravision*, 2021 WL 2144788, at *2 ("Incorrect claim construction statements go to the relevance of the expert's opinion, and thus form a basis to exclude an expert's opinion."); *see, e.g.*, *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming the exclusion of expert testimony that was based on an "impermissible claim construction").

In its claim construction order, the Court held that the claim term "guiding assembly" is a means-plus-function claim limitation under 35 U.S.C. § 112(f). ECF No. 77 at 33. The Court held that the claimed function is "to maintain the channel of the first portion of the interface in registry with the hole of the second portion of the interface when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate." *Id.* And the corresponding structure is "the directing assembly 336 and the guiding fins 334a-334d, the fins 354 of the fastening portions 332a-332d and the fins 376 of the female portions 334a-334d, as shown in Figures 13 and 15-17, and equivalents thereof." *Id.*

"[L]iteral infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1128 (Fed. Cir. 2021) (quoting

1    *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006));

2    *accord MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1170 (Fed. Cir. 2015). "Once

3    the relevant structure in the accused device has been identified, a party may prove it is

4    equivalent to the disclosed structure by showing that the two perform the identical function

5    in substantially the same way, with substantially the same result." *Traxcell*, 15 F.4th at

6    1128 (quoting *Applied Med.*, 448 F.3d at 1333); *see Odetics, Inc. v. Storage Tech. Corp.*,

7    185 F.3d 1259, 1267 (Fed. Cir. 1999) ("Structural equivalence under § 112, ¶ 6 is met only

8    if the differences are insubstantial; that is, if the assertedly equivalent structure performs

9    the claimed function in substantially the same way to achieve substantially the same result

10    as the corresponding structure described in the specification." (citation omitted)).

11    Anticipation of a means-plus-function claim limitation requires the same showing. *See,*

12    *e.g.*, *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1372 (Fed. Cir. 2002);

13    *Nextec Applications v. Brookwood Co.*, 703 F. Supp. 2d 390, 426 (S.D.N.Y. 2010);

14    *Freeman v. Gerber Prod. Co.*, 450 F. Supp. 2d 1248, 1255 (D. Kan. 2006) ("Anticipation

15    of a means-plus-function claim element is governed by the same standard that applies in

16    determining whether such an element is literally infringed."); *see also CommScope Techs.*

17    *LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1294 (Fed. Cir. 2021) ("As the Supreme Court

18    has stated, '[t]hat which infringes, if later, would anticipate, if earlier.'").

19        Turning first to Dr. Sanders's non-infringement opinions, in her rebuttal expert

20    report, Dr. Sanders opines that Dr. Maki has failed to demonstrate that the accused products

21    satisfy the "guiding assembly" limitation. Sanders Rebuttal Expert Report, ECF No. 158-

22    2 ¶ 98-104. In this section of her rebuttal report, Dr. Sanders acknowledges the Court's

23    claim construction for the claim term "guiding assembly." *Id.* ¶ 99. But in performing her

24    critique of Dr. Maki's infringement analysis, Dr. Sanders fails to adhere to that claim

25    construction. Notably, Dr. Sanders states: "The function of the claimed structures is to align

26    pieces that may not be manufactured with tight tolerances." *Id.* ¶ 103. Dr. Sanders then

27    goes on to perform the function-way-result test utilizing that stated function. *Id.* But Dr.

28    Sanders's stated function is incorrect under the Court's claim construction order. Under the

Court's claim construction for the term "guiding assembly," the claimed function is "to maintain the channel of the first portion of the interface in registry with the hole of the second portion of the interface when the at least one fastening assembly is fastened and the channel is spaced-apart from the second plate." ECF No. 77 at 33. The stated function in the Court's claim construction order says nothing about tight or loose tolerances. To properly analyze infringement of a means-plus-function claim, an expert must consider whether the relevant structure in the accused device performs "the identical function" as the disclosed structure. *Traxcell*, 15 F.4th at 1128 (quoting *Applied Med.*, 448 F.3d at 1333). By failing to utilize the precise function set forth in the Court's claim construction order, Dr. Sanders's non-infringement opinions as to the "guiding assembly" limitation fail to properly adhere to the Court's claim construction for that term. Accordingly, the Court strikes and excludes Dr. Sanders's non-infringement opinions regarding the "guiding assembly" limitation. *See Liquid Dynamics*, 449 F.3d at 1224 n.2; *TQ Delta*, 2019 WL 5626638, at *1.

Turning to Dr. Sanders's invalidity opinions, Dr. Sanders opines in her expert report that certain prior art references anticipate and/or render obvious the asserted claims of the '189 Patent. *See* Sanders Opening Expert Report, ECF No. 158-1, Ex. 2 ¶¶ 110-31. As part of her anticipation/obviousness analyses, Dr. Sanders opines that certain prior art references satisfy the "guiding assembly" limitation. *See* Ex. 3, ECF No. 101-3 at 27-34; Ex. 4, ECF No. 101-4 at 31-37; Ex. 5, ECF No. 101-5 at 27-33; Ex. 6, ECF No. 101-6 at 33-40. In her invalidity analysis, Dr. Sanders acknowledges the Court's construction for the claim term "guiding assembly." *See, e.g.*, Ex. 2, ECF No. 158-1 ¶ 108; Ex. 3, ECF No. 101-3 at 28. But, like her non-infringement analysis, Dr. Sanders fails to properly adhere to the stated function in the Court's claim construction order for the term "guiding assembly" when performing her actual invalidity analysis of the prior art references. For example, with respect to the Szilagyi reference, Dr. Sanders states: "The Court's construction identifies a number of structures discussed in the specification which are molded into the plastic parts of the portions of the interface to make sure the parts fit

together in registry with each other and the well." Ex. 3, ECF No. 101-3 at 31; *accord* Ex. 4, ECF No. 101-4 at 34; Ex. 5, ECF No. 101-5 at 30; Ex. 6, ECF No. 101-6 at 37. The stated function set forth in the Court's claim construction order for the term "guiding assembly" says nothing about the "well." Rather, the order states that the claimed function of the "guiding assembling" is "to maintain the channel of the first portion of the interface in registry with the hole of the second portion of the interface." ECF No. 77 at 33. Dr. Sanders's invalidity analysis as to the Szilagyi reference makes no mention of "the channel" or "the hole." As such, Dr. Sanders's invalidity opinions regarding the "guiding assembly" limitation fail to properly adhere to the Court's claim construction order. Therefore, the Court strikes and excludes Dr. Sanders's invalidity opinions on that basis. *See Liquid Dynamics*, 449 F.3d at 1224 n.2; *TQ Delta*, 2019 WL 5626638, at *1; *see also Transclean*, 290 F.3d at 1372 ("To anticipate a claim reciting a means-plus-function limitation, the anticipatory reference must disclose the recited function identically.").

More importantly, Dr. Sanders fails to perform the function-way-results test in any way when rendering her invalidity opinions as to the "guiding assembly" limitation. Indeed, Dr. Sanders's invalidity analysis does not even acknowledge the function-way-results test and never examines the "way" the relevant structure in the prior art reference at issue purportedly performs the claimed function or the "results" achieved. *See, e.g.*, Ex. 3, ECF No. 101-3 at 29-34; Ex. 6, ECF No. 101-6 at 36-40. To prove that a prior art reference satisfies a means-plus-function limitation, the accused infringer must "establish that 'the assertedly equivalent structure [in the prior art reference] performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification.'" *Nextec*, 703 F. Supp. 2d at 426 (quoting *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004)); *see Traxcell*, 15 F.4th at 1128. Because Dr. Sanders failed to apply the proper legal test in rendering her invalidity opinions as to the "guiding assembly" limitation, "those opinions are irrelevant, unreliable, and would mislead the jury." *AAMP of Fla., Inc v. Auto. Data Sols., Inc.*, No. 8:13-cv-2019, 2015 WL 12843845, at *9 (M.D.

Fla. Oct. 8, 2015). As such, the Court also strikes and excludes Dr. Sanders's invalidity opinions regarding the "guiding assembly" limitation on this basis as well. *See YETI Coolers, LLC v. RTIC Coolers, LLC*, No. 15-cv-597, 2017 WL 429210, at *2 (W.D. Tex. Jan. 28, 2017) ("Courts will exclude expert testimony when it relies on an incorrect legal standard."); *see, e.g., AAMP of Fla.*, 2015 WL 12843845, at *9 (excluding expert opinions that were "based on incorrect legal standard"); *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 737, 745 (N.D. Ill. 2009) ("Having applied the incorrect legal standard in formulating damages under the CFAA, Davis will not be permitted to testify on that topic."); *see also Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories."). In sum, the Court excludes Dr. Sanders's invalidity and non-infringement opinions regarding the "guiding assembly" claim limitation.[2]

## B.    Dr. Sanders's Anticipation Opinions

Pelican argues that Dr. Sanders should be precluded from offering certain anticipation opinions. ECF No. 96-1 at 9-10. Pelican contends that Dr. Sanders's expert report is improperly drafted to obfuscate whether she is specifically offering an opinion that a prior art reference anticipates any of the asserted claims of the '189 Patent. *Id.* at 9-13. In response, Hobie argues that the Court should deny Pelican's motion because Dr. Sanders's report is clear as to when she is offering an anticipation opinion and when she is offering an obviousness opinion. ECF No. 148 at 30.

---

[2]    In its opposition brief, Hobie asserts that if the Court excludes Dr. Sanders's invalidity opinions regarding the "guiding assembly" limitation, then the Court should hold Pelican and its technical expert Dr. Maki to the same standard under *Daubert*. ECF No. 148. However, in its motion, Hobie does not seek to exclude Dr. Maki's infringement opinions regarding the "guiding assembly" claim limitation. *See generally* ECF No. 145. In addition, in his expert report, Dr. Maki applies the function for the claim term "guiding assembly" from the Court's claim construction order and utilizes the function-way-results test in opining that the accused kayaks satisfy the "guiding assembly" limitation. *See, e.g.,* Maki Opening Expert Report, Ex. 30, Appx. D-1, ECF No. 158-15 at 53-63.

"[T]he tests for anticipation and obviousness are different." *CRFD Rsch., Inc. v. Matal*, 876 F.3d 1330, 1345 (Fed. Cir. 2017) (quoting *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008)). To prove that a claim is invalid as anticipated under 35 U.S.C. § 102, the accused infringer must show that "a single prior art reference disclose[s] each and every limitation of the claimed invention, either explicitly or inherently." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1306 (Fed. Cir. 2019); *see K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1377 (Fed. Cir. 2012).[3] "A patent is invalid as obvious 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *TQ Delta, LLC v. CISCO Sys.*, Inc., 942 F.3d 1352, 1357 (Fed. Cir. 2019) (quoting 35 U.S.C. § 103(a) (2012)). Unlike anticipation, obviousness under 35 U.S.C. § 103 "can be proven by combining existing prior art references." *Cohesive*, 543 F.3d at 1364; *see Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed. Cir. 1991) ("When more than one reference is required to establish unpatentability of the claimed invention anticipation under § 102 can not be found, and validity is determined in terms of § 103.").

---

[3]      "To establish that a prior art reference inherently—rather than expressly—discloses a claim limitation, 'the limitation at issue necessarily must be present, or [is] the natural result of the combination of elements explicitly disclosed by the prior art.'" *Endo Pharms. Sols., Inc. v. Custopharm Inc.*, 894 F.3d 1374, 1381 (Fed. Cir. 2018) (quoting *PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1196 (Fed. Cir. 2014)); *see Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1364 (Fed. Cir. 2019) ("An element may be inherently disclosed only if it 'is 'necessarily present,' not merely probably or possibly present, in the prior art.'").

In her expert report, Dr. Sanders performs an invalidity analysis where she identifies four prior art references: (1) "the Czarnowski Group"; (2) "Hobie Dinghy"; (3) "Raptor G2"; and (4) "the Groeschel Group." Ex. 2, ECF No. 158-1 ¶¶ 110-31.[4] For each of these prior art references, Dr. Sanders opines that the reference "anticipates and/or renders obvious" the asserted claims. *See id.* ¶¶ 117, 123, 127, 131. Dr. Sanders supports these opinions with detailed element-by-element claim charts analyzing how each prior art reference anticipates and/or renders obvious the asserted claims. *See* Ex. 3, ECF No. 101-3; Ex. 4, ECF No. 101-4; Ex. 5, ECF No. 101-5; Ex. 6, ECF No. 101-6.

Pelican challenges these opinions and asserts: "Dr. Sanders uses the intentionally ambiguous phrase 'anticipated and/or obvious.'" ECF No. 96-1 at 10. But it is entirely permissible for an expert in a patent case to opine that a certain prior art reference anticipates an asserted claim, and also opine, in the alternative, that to the extent the reference at issue does not anticipate the claim, that reference by itself or when combined

---

[4]    In its briefing, Pelican appears to assert that the Czarnowski Group reference and the Groeschel Group reference cannot properly be considered single prior art references for purposes of an anticipation analysis. *See, e.g.*, ECF No. 96-1 at 10 ("For example, Appendix A (for Czarnowski) references content from multiple references, suggesting that Dr. Sanders is only asserting invalidity based on obviousness over a combination of multiple references."); *id.* at 1 ("[Dr. Sanders] fails to perform a proper anticipation analysis by showing that all elements are in a single prior art reference."). In response, Hobie explains that the Czarnowski Group reference and the Groeschel Group reference both may properly be consider a single prior art reference under the doctrine of "incorporation by reference." ECF No. 148 at 32-33 (citing *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000); then citing *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001)). Under that doctrine, "[m]aterial not explicitly contained in the single, prior art document may still be considered for purposes of anticipation if that material is incorporated by reference into the document." *Advanced Display*, 212 F.3d at 1282; *see Apple Inc. v. Int'l Trade Comm'n*, 725 F.3d 1356, 1362 (Fed. Cir. 2013). In its briefing, although Pelican challenges Hobie and Dr. Sanders's use of multiple references to demonstrate anticipation, Pelican never specifically addresses or challenges Hobie's reliance on the doctrine of incorporation by reference. *See generally* ECF No. 96-1 at 9-13; ECF No. 151 at 15.

with other references renders the claim at issue obvious.[5] *See CRFD*, 876 F.3d at 1345 ("Even if a reference's teachings are insufficient to find anticipation, that same reference's teachings may be used to find obviousness."); *see, e.g.*, *Sprint Commc'ns Co. L.P. v. Cequel Commc'ns, LLC*, No. 18-cv-1752, 2022 WL 421391, at *1 (D. Del. Jan. 26, 2022) (denying motion to strike where expert "provide[d] element-by-element claim charts

---

[5]        Although the Court agrees with Hobie that an invalidity expert may opine as to anticipation and obviousness in the alternative, the Court finds it necessary to address an assertion made by Hobie in its opposition brief related to this issue. Hobie contends that it is proper for Dr. Sanders to offer alternative opinions as to anticipation and obviousness because the "parties continue to disagree as to the scope of the asserted claims." ECF No. 148 at 30-31 ("[T]he parties have very different ways of reading the plain and ordinary meaning of certain claim limitations.").

         "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman*, 517 U.S. at 372. In this case, the Court issued a claim construction order on February 1, 2022. ECF No. 77. Then, the Court addressed and resolved additional claim construction disputes in its summary judgment order. ECF No. 183. "Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial." *Exergen*, 575 F.3d at 1321; *see Andersen*, 474 F.3d at 1371 n.2. "No party may contradict the court's construction to a jury." *Exergen*, 575 F.3d at 1321. Further, as Hobie itself acknowledges, a party waives any argument with respect to the proper construction of a claim term when it fails to raise that issue during the claim construction phase of the case. *See* ECF No. 143 at 6; *CliniComp Int'l, Inc., v. Cerner Corp.*, No. 17-cv-02479-GPC-DEB, 2022 WL 16985003, at *9 (S.D. Cal. Nov. 15, 2022) ("[G]enerally, a party waives any argument with respect to the construction of a claim term when they fail to raise that issue during the claim construction phase of the case."); *Finalrod IP, LLC v. John Crane, Inc.*, No. 7:15-cv-97, 2019 WL 4061703, at *2 (W.D. Tex. May 30, 2019) ("The Federal Circuit holds that an accused infringer waives any argument with respect to the construction of a claim term when they fail to raise that issue during the claim construction phase of a patent infringement action."); *see, e.g.*, *Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007). Accordingly, at this stage in the litigation, there should not be — and there cannot be — any disputes between the Parties regarding the proper scope of the asserted claims because any new claim construction arguments have been waived. *See id.*; *see also Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 641 (Fed. Cir. 2011) (holding that district court did not abuse its discretion in holding that party "could not add new claim construction theories on the eve of trial").

1  analyzing how prior art 'anticipates and/or renders obvious' each asserted claim"); *see also*

2  *MedImmune, LLC v. PDL BioPharma, Inc.*, No. 08-cv-5590, 2011 WL 61191, at *5 (N.D.

3  Cal. Jan. 7, 2011) (explaining that the disclosure requirements for invalidity contentions

4  "can be satisfied even where anticipation and obviousness are described using an 'and/or'

5  clause"). As such, the Court rejects Pelican's challenges to the anticipation opinions in Dr.

6  Sanders's opening expert report.[6]

7        **C.    Dr. Sanders's Opinions as to the Pro Angler 360 Kayak**

8        Pelican moves to exclude certain non-infringement opinions by Dr. Sanders

9  regarding the accused Pro Angler 360 kayak. ECF No. 96-1 at 13-14. Pelican argues that

10  these opinions improperly contradict the Court's claim construction order. *Id.*; ECF No.

11  151 at 15. In response, Hobie argues that the opinions at issue properly adhere to the

12  Court's claim construction order. ECF No. 148 at 34-35.

13        Independent Claim 14 of the '189 Patent recites a watercraft including, among other

14  things: "a first portion including a first plate positionable adjacent to one of the hull portion

15  and the deck portion of the watercraft, about the periphery of the well." '189 Patent col. 19

16  ll. 3-5. In the claim construction order, the Court construed the claim term "about the

17  periphery" as "around the edge." ECF No. 77 at 12. In adopting this construction, the Court

18  rejected Hobie's proposal to construe the term as "completely around the outer recess." *Id.*;

19  *see* ECF No. 62 at 43.

20

21

22  [6]    Nevertheless, to the extent there is any confusion regarding Dr. Sanders's

23  anticipation opinions, that confusion is easily remedied by having Hobie clarify which

24  specific references Dr. Sanders is contending anticipate which specific asserted claims.

25  Hence, the Court orders Hobie to file, within fourteen (14) days from the date of this order,

26  a notice identifying the specific prior art references that Dr. Sanders opines anticipate one

27  or more of the asserted claims, and the specific asserted claims Dr. Sanders opines are

28  anticipated by those references. The Court cautions Hobie that the Notice should only

    identify the purportedly anticipatory prior art reference and the asserted claims Dr. Sanders

    contends are anticipated by that reference. For example, state: "XX reference anticipates

    asserted claim(s) XX." The Notice should not include any new opinions, analysis, or

    explanations. The Court will strike any such new opinions, analysis, or explanations.

Pelican argues that Dr. Sanders fails to adhere to the Court's claim construction for the term "about the periphery" in her rebuttal expert report. ECF No. 96-1 at 13-14; ECF No. 151 at 15. In analyzing the Pro Angler 360 kayak, Dr. Sanders acknowledges in her expert report the Court's construction for the claim term "about the periphery" as "around the edge." Ex. 7, ECF No. 158-2 ¶ 144. Dr. Sanders then opines: "the alleged plate does not go 'around the edge' of the well because it only is roughly 3/4ths of a circle. Though the Court's construction did not require that the plate go completely around the edge, the alleged plate is far from going around almost the entire edge of the alleged well." *Id.*

Hobie argues that these opinions are consistent with the Court's construction for the claim term "about the periphery." ECF No. 148 at 35. The Court agrees with Hobie. "An expert can offer an opinion on how a court's claim construction should be applied to the facts of a case." *Ravo v. Covidien LP*, 55 F. Supp. 3d 766, 769 (W.D. Pa. 2014); *accord Acantha LLC v. DePuy Synthes Sales Inc.*, 406 F. Supp. 3d 742, 752 (E.D. Wis. 2019). This is what Dr. Sanders does in the opinions at issue. Pelican may disagree with Dr. Sanders's application of the Court's construction for the term "about the periphery" to the facts of the case. But that is not a proper basis for exclusion of her testimony. *See TQ Delta*, 2019 WL 5626638, at *1 ("Expert testimony regarding whether an accused device falls within the scope of a court's claim construction is appropriate and raises a factual issue for the jury to resolve."); *see also Elosu*, 26 F.4th at 1024 ("Ultimately, 'the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.'"); *Summit 6*, 802 F.3d at 1296 ("[T]he question of whether . . . the opinion is correct is generally a question for the fact finder, not the court.").

Pelican also argues that Dr. Sanders's opinions regarding the Pro Angler 360 kayak apply an incorrect definition of the claim term "adjacent." ECF No. 96-1 at 14; ECF No. 151 at 15. In her expert report, Dr. Sanders critiques Dr. Maki's infringement analysis as to the Pro Angler 360 kayak on the grounds that "he does not and cannot show how the structure he identifies as the plate is adjacent to either the hull or the deck of the Pro-Angler 360." Ex. 7, ECF No. 158-2 ¶ 141; *see id.* ¶¶ 142-43. At her deposition, Dr. Sanders

17

testified that the word "adjacent" means that the relevant component must be "in contact with the deck or the hull." Sanders Depo., Ex. 8, ECF No. 158-3 at 205. Pelican argues that Dr. Sanders should be prohibited from asserting this narrow definition of the term "adjacent." ECF No. 96-1 at 14.

At claim construction, the Court did not construe the claim term "adjacent." *See generally* ECF No. 77. Thus, the opinions at issue cannot contradict the Court's claim construction order, because there is no claim construction to contradict. Further, "[a]t trial, parties may 'introduc[e] evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art,' so long as the evidence does not amount to 'argu[ing] claim construction to the jury.'" *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-630, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014); *accord Nichia Corp. v. Feit Elec. Co., Inc.*, No. 20-cv-359, 2022 WL 17222250, at *11 (C.D. Cal. Oct. 12, 2022); *Carucel*, 2017 WL 1215838, at *16; *see Cordis*, 561 F.3d at 1337 ("it is improper to argue claim construction to the jury"). As such, Dr. Sanders can testify regarding the plain and ordinary meaning of the term "adjacent."

Moreover, Pelican has not shown that Dr. Sanders's opinions are inconsistent with the plain and ordinary meaning of the word "adjacent." *See Adjacent*, *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/adjacent (last visited Feb. 6, 2023) (defining "adjacent" as "very near, next to, or *touching*" (emphasis added)); *Adjacent*, *Oxford English Dictionary*, https://www.oed.com/view/Entry/2414?redirectedFrom=adjacent#eid (last visited Feb. 6, 2023) (defining "adjacent" as "[n]ext to or very near something else; neighbouring; bordering, *contiguous*; *adjoining*" (emphasis added)); *Adjacent*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/adjacent (last visited Feb. 6, 2023) (defining "adjacent" as "having a common endpoint or border").[7] And Pelican has waived any argument that the plain and

---

[7]   In addition, Pelican's own technical expert, Dr. Maki, appears to contend that the claim term "adjacent" means "in contact with." ECF No. 145-2 ¶¶ 128-29 (opining that the

ordinary meaning of the term "adjacent" does not require contact. *See CliniComp*, 2022 WL 16985003, at *9 ("[G]enerally, a party waives any argument with respect to the construction of a claim term when they fail to raise that issue during the claim construction phase of the case."); *Finalrod IP*, 2019 WL 4061703, at *2; *see, e.g.*, *Cent. Admixture Pharmacy*, 482 F.3d at 1356. In sum, the Court declines to exclude the opinions at issue regarding the accused Pro Angler 360 kayak.

## IV.    HOBIE'S MOTION TO EXCLUDE CERTAIN OPINIONS BY DR. MAKI

### A.    Dr. Maki's Opinions Regarding Willfulness

Hobie argues that certain opinions from Dr. Maki regarding willfulness should be excluded because he improperly puts forth lay interpretations of the motivations and intentions of Hobie individuals based on his lay review of evidence in the record. ECF No. 145 at 3-8; ECF No. 150 at 11-12. Hobie also contends that Dr. Maki improperly includes a pages-long narrative in his expert report detailing various non-technical facts as either he or Pelican understands them. ECF No. 145 at 3, 5. In response, Pelican argues that Dr. Maki's opinions regarding willfulness are properly confined to technical issues regarding copying — for example, how Hobie gained access to Pelican's patent-practicing products, studied them, and developed substantially similar designs. ECF No. 149 at 21-25.

Willfulness requires a finding of "deliberate or intentional infringement." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021); *see Eko Brands, LLC v. Adrian Rivera Maynez Enter., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) ("Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement."); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016) ("The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."). The Federal Circuit has explained that subjective willfulness can be shown by "proof that

---

"identified top layer" does not satisfy the claim limitation because it "is raised above and separated from the deck by what appears to be a few inches").

the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known to the accused infringer." *WesternGeco LLC v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 2129 (2018); *accord Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017). Evidence of copying is relevant to the determination of willful infringement. *See, e.g.*, *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1353 (Fed. Cir. 2018) (finding evidence of intentional copying sufficient to support the jury's finding of willful infringement); *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1028 (N.D. Cal. 2017) (same). Willful infringement is a question of fact. *Polara*, 894 F.3d at 1353; *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

"Generally, willful infringement is a question for the jury, and several courts have found expert testimony on the ultimate issue of willfulness inappropriate." *Bombardier Recreational Prod. Inc. v. Arctic Cat Inc.*, No. 12-cv-2706, 2017 WL 758335, at *4 (D. Minn. Feb. 24, 2017); *see United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012) ("Expert testimony should be excluded 'if it concerns a subject improper for expert testimony, for example, one that invades the province of the jury.'" (quoting *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985))). Further, "[t]echnical experts generally may not testify about 'motives, intent, or state of mind,' as determinations on those issues are reserved for the jury." *Pavo Sols. LLC v. Kingston Tech. Co.*, No. 8:14-cv-1352, 2019 WL 8138163, at *13 (C.D. Cal. Nov. 20, 2019), *aff'd*, 35 F.4th 1367 (Fed. Cir. 2022); *see Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019) ("Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." (quoting *Siring v. Or. State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013))); *see also Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) ("[E]xpert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule

702."); *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993) ("[W]e have stated that expert testimony to bolster or impugn the credibility of a witness is properly excluded."). Nevertheless, "courts have allowed technical experts to testify regarding willful infringement, where their opinions drew, 'at least in part, on [] technical conclusions.'" *Pavo*, 2019 WL 8138163, at *13 (alteration in original) (quoting *Imperium IP Holdings (Cayman) Ltd. v. Samsung Elec. Co.*, No. 4:14-cv-371, 2016 WL 3746523, at *2 (E.D. Tex. Jan. 28, 2016)); *see, e.g.*, *Sound View Innovations, LLC v. Hulu, LLC*, No. CV1704146, 2019 WL 4640393, at *6 (C.D. Cal. Aug. 5, 2019); *Bombardier*, 2017 WL 758335, at *4-5. "The important distinction is that, while patent experts may not testify that they have divined a party's intent 'because they are not mind-readers,' they 'may identify certain facts . . . from the record to support an inference' of a particular intent." *Pavo*, 2019 WL 8138163, at *13 (quoting *The Medicines Co. v. Mylan Inc.*, No. 11-cv-1285, 2014 WL 1758135, at *5 (N.D. Ill. May 2, 2014)).

In his expert report, Dr. Maki offers several opinions on issues related to willful infringement. *See* Maki Opening Expert Report, Ex. 1, ECF No. 145-1 ¶¶ 69-130. However, in rendering these opinions Dr. Maki does not offer an opinion on the ultimate issue of willfulness. *See id.*

As part of his willfulness opinions, Dr. Maki offers opinions on Hobie's alleged copying of Pelican's patent-practicing products and ultimately opines that "Hobie copied Pelican's patented design." *Id.* ¶ 72; *see id.* at ¶¶ 72-104. Hobie challenges most of Dr. Maki's opinions regarding copying, but Dr. Maki's copying opinions "would help the jury understand the technical evidence and provide relevant context . . . for the jury to determine if copying occurred." *Bombardier*, 2017 WL 758335, at *4. As such, Dr. Maki's copying opinions "are appropriate to the extent that they address the technical information available to Defendant and why a person with such information would or should have known of the facts that a jury is to consider in assessing whether the alleged infringer knew or should have known of the potential infringement." *Sound View*, 2019 WL 4640393, at *6 (citing *Bombardier*, 2017 WL 758335, at *4).

Nevertheless, Dr. Maki at times offers opinions in his expert report regarding the subjective intent, motive, or state of mind of Hobie and its employees. For example, his expert report states: "In my opinion, based on the documentary and testimonial evidence that I have reviewed, the release of the Catch 130HD created internal alarm at Hobie because Hobie did not yet have an affordable pedal drive kayak on the market." Ex. 1, ECF No. 145-1 ¶ 82. Dr. Maki also opines: "Mr. Czarnowski clearly appreciated the Catch 130HD as a threat and sought to motivate his team to use the Sparrow project to neutralize this threat." *Id.* ¶ 86. It is improper for Dr. Maki to offer these opinions concerning subjective intent, motive, or state of mind. *See Pavo*, 2019 WL 8138163, at *13; *Zimmer*, 365 F. Supp. 3d at 497; *Siring*, 927 F. Supp. 2d at 1077.

Further, Dr. Maki engages in unnecessarily long summaries of the facts in evidence when rendering his opinions on copying. *See, e.g.*, Ex. 1, ECF No. 145-1 ¶¶ 73-81 (providing six-page summary of the evidence related to the state of Hobie's Sparrow Project prior to the release of the Catch 130HD). For much of these summaries, Dr. Maki simply parrots the evidence in the record and does not actually offer any technical opinions. *See, e.g.*, *id.* ¶ 75 (restating deposition testimony from several Hobie witnesses and providing no opinions). Courts have explained that "[s]uch 'unhelpful restatement[s] of the facts as [the expert] sees them' are inadmissible." *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 521 (D. Del. 2017) (quoting *RSI Corp. v. Int'l Bus. Mach. Corp.*, No. 08-cv-3414, 2013 WL 1087468, at *4 (N.D. Cal. Mar. 13, 2013)); *see Mass Engineered Design, Inc. v. Planar Sys., Inc.*, No. 3:16-cv-1510, 2017 WL 2642277, at *14 (D. Or. June 19, 2017) (excluding portions of expert report on willfulness that "read[] more like a legal memorandum to the Court"). Hence, it is improper for Dr. Maki to engage in these long non-technical restatements of the facts.

In sum, the Court grants in part and denies in Hobie's *Daubert* motion as to Dr. Maki's willfulness opinions. Dr. Maki may offer his copying opinions to the jury, particularly those that interpret technical data and provide context for the jury's decision regarding willfulness. But Dr. Maki may neither offer opinions as to intent, motive, or state of mind, nor engage in long non-technical restatements of the facts.

As part of its motion, Hobie highlighted specific opinions in Dr. Maki's opening expert report that Hobie asserts should be excluded. *See* ECF No. 145 at 4 (explaining that the challenged testimony is "highlighted in yellow"); *see generally* Ex. 1, ECF No. 145-1 (containing yellow highlighting). The Court declines to engage in a line-by-line analysis of Dr. Maki's report to explain which opinions are improper. Rather, to the extent Dr. Maki's testimony at trial fails to comply with the Court's holdings above, Hobie may raise a contemporaneous objection to any such testimony. *See, e.g.*, *Dentsply Sirona Inc. v. Edge Endo*, LLC, No. 1:17-cv-1041, 2020 WL 6392764, at *6 (D.N.M. Nov. 2, 2020) (finding that issues related to expert's testimony regarding willfulness could appropriately be addressed through objections at trial).

## B.    Dr. Maki's Testimony Related to Issues of Law

Hobie moves to preclude Dr. Maki from testifying as to certain legal issues. ECF No. 145 at 8-10. Hobie argues that these opinions are improper because Dr. Maki may not offer opinions as to issues of law. *See id.* Pelican responds that Dr. Maki is not interpreting legal standards. ECF No. 149 at 25-26. Pelican contends that when Dr. Maki refers to a legal standard, he is simply stating the rules that were explained to him and that inform his legal opinions. *Id.*

"It is well-established that an expert witness may not explain the law to the jury or tell the jury how to apply the law to the facts of the case." *Focal Point Films, LLC v. Sandhu*, No. 19-cv-2898, 2020 WL 5760355, at *6 (N.D. Cal. Sept. 28, 2020) (citing *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008)); *see United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017) (explaining certain expert testimony is permissible as long as it "do[es] not represent an attempt to instruct the jury

on the law, or how to apply the law to the facts of the case"); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1365 n.8 (Fed. Cir. 2008) ("[T]estimony that is designed to instruct the jury on the applicable law is not admissible because, by purporting to do what lies with the exclusive province of the court, it cannot be helpful to the jury." (quoting *Bausch & Lomb, Inc. v. Alcon Lab'ys, Inc.*, 79 F. Supp. 2d 252, 255 (W.D.N.Y. 2000))). "Under Federal Rule of Evidence 702, matters of law are inappropriate subjects for expert testimony." *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 337 (9th Cir. 2017) (quoting *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1052 (9th Cir. 2012)); *see Diaz*, 876 F.3d at 1197 ("an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law" (quoting *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004))).

Thus, "expert testimony must be circumscribed carefully to ensure that 'the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law.'" *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 557 (S.D.N.Y. 2004) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)); *see, e.g.*, *Hangarter*, 373 F.3d at 1017 (finding expert testimony permissible because it "did not improperly usurp the court's role by instructing the jury as to the applicable law"). Nevertheless, experts are permitted "to use legal terminology" from the applicable law in expressing their opinions. *Nationwide Transp.*, 523 F.3d at 1059.

Therefore, the Court will not permit Dr. Maki to explain the law to the jury. But whether Dr. Maki's actual testimony at trial crosses the line between "using legal terminology" and "explaining the law" is better addressed through a contemporaneous objection at trial rather than through the preclusion of any specific testimony. Accordingly, the Court declines to preclude any specific testimony by Dr. Maki on this basis.

### C.    Dr. Maki's Opinions Regarding Secondary Considerations

Hobie moves to exclude certain opinions by Dr. Maki regarding secondary considerations of nonobviousness. ECF No. 145 at 10-17. Hobie argues that Dr. Maki should be precluded from offering these opinions because he has failed to demonstrate a nexus between the secondary consideration at issue and the claim invention. *See id.* Pelican responds that there is no basis for excluding Dr. Maki's opinion because he details how each secondary consideration at issue directly relates to (and bears a logical relationship to) the claims and the advantages of the patented invention. ECF No. 149 at 27-30. Pelican argues that Hobie's motion relies on points of disagreement with Dr. Maki's analysis and opinions, which are not a proper basis for exclusion under *Daubert*. *Id.* at 26-27.

In setting out the framework for the obviousness inquiry under § 103 in *Graham v. John Deere Co.*, "[t]he Supreme Court explained that various factors 'may also serve to 'guard against slipping into use of hindsight,' and to resist the temptation to read into the prior art the teachings of the invention in issue.'" *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1052 (Fed. Cir. 2016) (quoting *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 36 (1966)). These factors include: "commercial success enjoyed by devices practicing the patented invention, industry praise for the patented invention, copying by others, and the existence of a long-felt but unsatisfied need for the invention." *Id.* "These factors are commonly known as secondary considerations or objective indicia of non-obviousness." *Id.*

"In order to accord substantial weight to secondary considerations in an obviousness analysis, 'the evidence of secondary considerations must have a 'nexus' to the claims, i.e., there must be 'a legally and factually sufficient connection' between the evidence and the patented invention.'" *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) (quoting *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019)); *accord Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 8 F.4th 1349, 1360 (Fed. Cir. 2021). "To determine whether the patentee has met that burden, [the court] consider[s] the

3:20-cv-02390-RSH-MSB

correspondence between the objective evidence and the claim scope." *Fox Factory*, 944
F.3d at 1373 (quoting *Henny Penny*, 938 F.3d at 1332).

"[A] patentee is entitled to a rebuttable presumption of nexus between the asserted
evidence of secondary considerations and a patent claim if the patentee shows that the
asserted evidence is tied to a specific product and that the product '*is* the invention
disclosed and claimed.'" *Id.* (quoting *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
851 F.2d 1387, 1392 (Fed. Cir. 1988)). "That is, presuming nexus is appropriate 'when the
patentee shows that the asserted objective evidence is tied to a specific product and that
product embodies the claimed features, and is coextensive with them.'" *Id.* (quoting *Polaris
Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018)). "Conversely, '[w]hen
the thing that is commercially successful is not coextensive with the patented invention—
for example, if the patented invention is only a component of a commercially successful
machine or process,' the patentee is not entitled to a presumption of nexus." *Id.* (quoting
*Demaco*, 851 F.2d at 1392).

In his rebuttal expert report, Dr. Maki provides opinions and analysis as to certain
secondary considerations, specifically: (1) long felt need for the solution provided by the
claimed invention; (2) failure of others to find the solution provided by the claimed
invention; (3) industry praise by others in the field; (4) commercial success due to the
merits of the claimed invention; and (5) copying by others. *See* Maki Rebuttal Expert
Report, Ex. 3, ECF No. 145-2 ¶¶ 356-94. Hobie argues that with respect to "long felt need,"
"failure of others," and "copying," Dr. Maki failed to provide any nexus between those
secondary considerations and the merits of the claimed invention. *See* ECF No. 145 at 10-
17. Hobie's contention is not supported by a review of Dr. Maki's rebuttal report.

With respect to his "long felt need" opinions, Dr. Maki states: "Based on my review
of the evidence and from speaking with Ms. Dean, I understand that there was a long-felt
need in the industry for a pedal drive kayak that was both lightweight and affordable and
that this need was not met until Pelican introduced the patent-practicing Catch 130HD,

which is both lightweight and affordable." Ex. 3, ECF No. 145-2 ¶ 359.[8] With respect to his "failure of others" opinions, Dr. Maki states: "it is my understanding that no other company [was] able to successfully market a fin-driven, thermoformed kayak before Pelican" (i.e., before Pelican introduced the patent-practicing Catch 130HD). *Id.* ¶ 367. With respect to his "copying" opinions, Dr. Maki states: "This copying relates directly to the claimed invention because the claims recite a watercraft having both a well and interface, and Hobie copied key aspects of the well and interface from Pelican's commercial products that practiced the patent." *Id.* ¶ 390. Thus, Dr. Maki has provided a sufficient nexus for each of the secondary considerations at issue, contrary to Hobie's assertions. *See, e.g.*, *Polaris*, 882 F.3d at 1073 (presuming nexus where the products at issue were the patentee's "eight RZR vehicles" and the claims at issue "broadly cover the *entire* vehicle, rather than 'only a component of a commercially successful machine'"). Accordingly, Dr. Maki's secondary consideration opinions are permissible and should not be excluded. *See, e.g.*, *Ultravision*, 2021 WL 2144788, at *3-4 (denying *Daubert* motion as to expert's opinions on secondary considerations where the expert "provide[d] a sufficient nexus for each of the secondary considerations"); *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, No. 17-cv-269, 2019 WL 4198194, at *7 (D. Del. Sept. 4, 2019) (denying *Daubert* motion where, although the expert "d[id] not explicitly identify the nexus, his opinions clearly tie[d] the evidence of secondary considerations to the claimed invention").

   All of Hobie's other challenges to Dr. Maki's secondary consideration opinions go to the weight of his opinions, not their admissibility. *See Summit 6*, 802 F.3d at 1299 ("To

---

[8]    In his opening expert report, Dr. Maki opines that the Pelican Catch kayak practices Claims 14-28 of the '189 Patent. *See* Ex. 1, Appx. C-1, ECF No. 145-1 ¶¶ 45-46. The Court notes that the claims at issue in this case are Claims 14-26 and 28 of the '189 Patent. *See* ECF No. 146 at 7 (listing the asserted claims). Those claims encompass a "watercraft" comprising a "rigid body" and "an interface." *See* '189 Patent col. 18 ll. 64 to col. 20 ll. 40, col. 20 ll. 43-44.

the extent [the expert]'s credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility."). For example, with respect to long felt need, Hobie criticizes Dr. Maki's analysis for failing to address the Hobie Compass kayak. But an argument that an expert should have addressed different evidence "at best, goes to the weight or credibility of [the expert's] analysis, not its admissibility." *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-220, 2020 WL 2543814, at *7 (C.D. Cal. Jan. 10, 2020) ("Snap's argument that Mr. Bratic should have relied on different evidence in the record to formulate his LTV numbers, at best, goes to the weight or credibility of Mr. Bratic's LTV analysis, not its admissibility."); *see Skinner v. Tuscan, Inc.*, No. 18-cv-319, 2020 WL 5946897, at *7 (D. Ariz. Oct. 7, 2020) ("Ultimately, a party's disagreement with the sources upon which the expert bases his or her conclusions goes to weight of the evidence and not admissibility."); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) ("[Q]uestions regarding which facts are most relevant . . . are properly left to the jury."). Also, with respect to long felt need, Hobie challenges Dr. Maki's opinions because he purportedly "confirmed in deposition [that] the '189 patent doesn't have anything to do with thermoforming." ECF No. 145 at 13 (citing Maki Depo., Ex. 2, ECF No. 136-3 at 192). But even assuming that is true, at best, that is a challenge to the credibility of Dr. Maki's opinions, which goes "to the weight of the evidence, not to its admissibility." *Summit 6*, 802 F.3d at 1299; *see Elosu*, 26 F.4th at 1024 ("A district court should not make credibility determinations that are reserved for the jury." (quoting *City of Pomona*, 750 F.3d at 1044)). As such, Hobie's challenge is matter for cross examination, not exclusion. *See Elosu*, 26 F.4th at 1024 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." (quoting *Primiano*, 598 F.3d at 564)); *Summit 6*, 802 F.3d at 1296.

Hobie further asserts that Dr. Maki only offers opinions concerning allegations of copying that related to unclaimed features of the Catch 130 HD prototype. ECF No. 145 at 16. Dr. Maki opines that "copying relates directly to the claimed intervention because the claims recite a watercraft having both a well and interface, and Hobie copied key aspects

of the well and interface from Pelican's commercial products that practiced the patent."
ECF No. 145-2 ¶ 390. Hobie may dispute the factual assumptions underlying that opinion,
but challenges to the factual basis of an expert's opinions "go to the weight of the evidence,
not to its admissibility." *Summit 6*, 802 F.3d at 1299; *see Carucel Invs.*, 2017 WL 1215838,
at *7 ("[T]he factual basis of an expert's opinion goes to its credibility, not admissibility.").
Also, with respect to copying, Hobie argues that the changes at issue "simply showed that
Hobie copied itself." ECF No. 145 at 17 (citing Ex. 6, ECF No. 158-2 ¶¶ 152-64). And
Hobie notes: "Dr. Maki does not appear to dispute that Hobie had already designed an
alleged interface that reflected [the actual purported merits of the claimed invention]—
namely a two-part screwed-together interface for a propulsion system—prior to Pelican's
display of the Catch 130HD prototype." *Id.* at 17 (citing Ex. 1, ECF No. 145-1 ¶ 76); ECF
No. 150 at 13. Again, at best, those challenges go to the weight of Dr. Maki's opinions —
not their admissibility — and are matters for cross examination, not exclusion. *See Elosu*,
26 F.4th at 1024; *Summit 6*, 802 F.3d at 1296. In sum, the Court rejects Hobie's *Daubert*
challenges to Dr. Maki's opinions regarding secondary considerations.

## V.    HOBIE'S MOTION TO EXCLUDE CERTAIN OPINIONS BY MS. DEAN

### A.    Ms. Dean's Lost Profits Analysis

In her damages expert report, Ms. Dean performs a lost profits analysis and renders
an opinion as to Pelican's lost profits in this case. Dean Opening Expert Report, Ex. 1, ECF
No. 144-1 ¶¶ 43, 46-145. Hobie raises various challenges to Ms. Dean's lost profits
analysis. ECF No. 144 at 14-22. The Court addresses each challenge below.

"The Patent Act provides: 'the court shall award [the patent owner] damages
adequate to compensate for the infringement, but in no event less than a reasonable royalty
for the use of the invention by the infringer.'" *GlaxoSmithKline LLC v. Teva Pharms. USA,
Inc.*, 7 F.4th 1320, 1340 (Fed. Cir. 2021) (quoting 35 U.S.C. § 284). "To recover lost
profits, the patentee bears the burden of proof to show a 'reasonable probability that, 'but
for' infringement, it would have made the sales that were made by the infringer.'" *Presidio
Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017); *see*

*GlaxoSmithKline*, 7 F.4th at 1340. "The goal of lost profit damages is to place the patentee in the same position it would have occupied had there been no infringement." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017). "Thus, the fact finder's job is to determine what would the patent holder have made (what would his profits have been) if the infringer had not infringed." *Id.*

"One 'useful, but non-exclusive' method" to establish a patentee's entitlement to lost profits damages is the four-factor *Panduit* test first articulated by the Sixth Circuit. *Mentor Graphics*, 851 F.3d at 1284 (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc)); *see Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013) ("A showing under the four-factor *Panduit* test establishes the required causation."). "Under the *Panduit* test, a patentee is entitled to lost profit damages if it can establish four things: (1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made." *Mentor Graphics*, 851 F.3d at 1285 (citing *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978)); *accord Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1180 (Fed. Cir. 2022). "Causation of lost profits 'is a classical jury question.'" *Versata*, 717 F.3d at 1264.

It is possible that a patentee may "prove entitlement to lost profits for some of its sales, but not others." *Mentor Graphics*, 851 F.3d at 1286. "For sales in which the patentee cannot prove the elements necessary to establish entitlement to lost profits, [35 U.S.C. § 284] guarantees the patentee a reasonable royalty for those sales." *Id.* "In those circumstances, the patentee obtains its lost profits on the sales where it can prove all the *Panduit* factors and a reasonable royalty on the other infringing sales." *Id.*

3:20-cv-02390-RSH-MSB

### 1.    *Acceptable Non-Infringing Alternatives*

Hobie argues that Ms. Dean's lost profits analysis should be excluded because she failed to analyze the non-infringing alternatives available to Hobie. ECF No. 144 at 14-18. In response, Pelican argues that Ms. Dean considered all of the non-infringing alternatives identified during discovery as part of her analysis. ECF No. 149 at 4.

Under the second factor of the four-factor *Panduit* test, the patentee must establish the "absence of acceptable non-infringing alternatives." *Mentor Graphics*, 851 F.3d at 1285 (citing *Panduit*, 575 F.2d at 1156); *see Presidio*, 875 F.3d at 1380. "Under this factor, if there is a noninfringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale." *Mentor Graphics*, 851 F.3d at 1286. The Federal Circuit has noted that this factor "often proves the most difficult obstacle for patent holders" seeking lost profits. *Id.*

"To prove the absence of acceptable, non-infringing alternatives, the patentee may prove either that the potential alternative was not acceptable to potential customers or was not available" during the period of infringement. *Presidio*, 875 F.3d at 1380; *see Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) (explaining that the "critical time period" for determining availability of a non-infringing alternative "is the period of infringement"). To be considered "available," an acceptable non-infringing alternative must have either been "on the market" (*i.e.*, on sale) or "readily available" at the time of infringement. *See Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1288 (Fed. Cir. 2011) (explaining that the alternative must either be "on sale at the time of infringement" or can "be commercialized 'readily'" (quoting *Grain Processing*, 185 F.3d at 1349)); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003) (explaining that the alternative must either be "actually 'on sale'" or "readily 'available'").

When an alleged non-infringing alternative is not on the market during the period of infringement, the accused infringer "has the burden of showing that the alleged alternative was available during that period." *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382

(Fed. Cir. 2002) (citing *Grain Processing*, 185 F.3d at 1353); *see SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1382 (Fed. Cir. 2013) ("Where, as here, an alleged substitute was not on the market during the damages period, the accused infringer has the burden to overcome the inference that the substitute was not 'available.'"). An accused infringer can satisfy this burden "with specific facts showing it had 'the necessary equipment, know-how, and experience' during the period of infringement to implement the non-infringing process." *Fiskars*, 279 F.3d at 1382 (quoting *Grain Processing*, 185 F.3d at 1354); *see SynQor*, 709 F.3d at 1382 ("Factors to consider include the ease with which a substitute was eventually made available, the state of the technology, and the availability of input products and equipment.").

The Federal Circuit has warned that "the trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement." *Grain Processing*, 185 F.3d at 1353. "After all, the infringer chose to produce the infringing, rather than noninfringing, product." *Id.*

Hobie argues that Ms. Dean's lost profits analysis should be excluded because she failed to analyze the non-infringing alternatives available to Hobie. Specifically, Hobie asserts that Ms. Dean failed to properly consider: "(1) Hobie's permanent interface, (2) eight designs that Hobie considered before adopting the permanent interface, and (3) the Click And Go assembly used on Hobie's non-accused kayaks." ECF No. 144 at 14-15. Hobie's contention is not supported by a review of the record.

In her expert report, as part of her lost profits analysis, Ms. Dean opines that there is an absence of acceptable non-infringing alternatives. *See* Ex. 1, ECF No. 144-1 ¶¶ 53-106. As part of this analysis, Ms. Dean expressly addresses Hobie's claimed options to design around the '189 Patent. *See id.* ¶¶ 89-91. Ms. Dean first addresses the redesigned Passport and Lynx kayaks with glued interfaces. With respect to these kayaks, Ms. Dean explains: "I understand it is Pelican's position that Hobie's redesigned drive support also infringes the '189 Patent. As a result, I have not considered the Hobie Passport and Lynx kayaks

with a glued in interface as an acceptable, non-infringing alternative in this matter." *Id.*
¶ 89 (footnote omitted).

Ms. Dean then addresses the design arounds identified in Hobie's response to
Pelican's contention interrogatories. In her report, Ms. Dean states:

> In response to interrogatories Hobie has also identified (1) "the click and go
> well used with many of Hobie's kayak models" and (2) "the eight designs that
> Hobie evaluated before adopting the permanent" interface design for the
> Passport and Lynx kayaks as acceptable, non-infringing alternatives. I
> understand that the "click and go well" designs were available to Hobie at the
> time it was designing the interface for the Accused Products, and that in no
> case did Hobie choose to use the "click and go well" designs in the Accused
> Products. Mr. Czarnowski testified that Hobie never intended to use the click-
> and-go system with the Sparrow/Passport kayak. Also, while other designs
> may have been considered for Hobie to possibly design around the '189
> patent, once the '189 patent was issued and Pelican formally notified Hobie
> of its infringement in November 2020, I understand that no other design
> alternatives have been implemented to date, despite Pelican formally
> notifying Hobie that its glue-on interface design change did not avoid
> infringement of the '189 patent.

*Id.* ¶ 90 (footnotes omitted). As shown above, contrary to Hobie's assertions, Ms. Dean
identified and considered the design arounds at issue and gave a reasoned explanation for
why she did not consider them to be acceptable non-infringing alternatives in performing
her lost profits analysis.

Hobie raises several challenges to these opinions. All of them fail. First, with respect
to the redesigned Passport and Lynx kayaks with glued interfaces, Hobies criticizes Ms.
Dean for failing to consider the possibility that the glued interface was available to Hobie
before it was commercialized. ECF No. 144 at 15 (citing *Grain Processing*, 185 F.3d at
1353-54). However, it is Pelican's position that the redesigned Passport and Lynx kayaks

with glued interfaces infringe the asserted claims of the '189 Patent, and Pelican has backed up that assertion with the opinions of its technical expert Dr. Maki. *See* Maki Opening Expert Report, Ex. 7, App'x D-2, ECF No. 134-7 at 16-30; Maki Opening Expert Report, Ex. 33, App'x D-4, ECF No. 158-18 at 21-36. Ms. Dean can properly rely on those infringement opinions from Dr. Maki in reaching her conclusion that the redesigned Passport and Lynx kayaks are not non-infringing alternatives because those products do infringe the '189 Patent. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc) ("Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field when evaluating design around options or valuing the importance of the specific, infringing features in a complex device."). Hobie may disagree with Dr. Maki's opinions that the redesigned Passport and Lynx kayaks infringe the '189 Patent. But that is not proper basis for exclusion of Ms. Dean's opinions. *See Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *see also Elosu*, 26 F.4th at 1024 ("the test under *Daubert* is not the correctness of the expert's conclusions"); *Summit 6*, 802 F.3d at 1299 ("To the extent [the expert]'s credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility."). Moreover, Hobie has not presented the Court with any authority holding that a patentee's damages expert must still consider a certain product as an acceptable non-infringing alternative, even though the patentee asserts that the product at issue infringes its patent. As such, the Court rejects Hobie's challenges to Ms. Dean's opinions regarding the redesigned Passport and Lynx kayaks.

Second, Hobie challenges Ms. Dean's opinions regarding the eight other designs and the click and go assembly. ECF No. 144 at 18. Hobie does not contend that any of these design arounds were on the market (i.e., on sale) at the time that Ms. Dean prepared and served her expert report. Because these alternatives were not on the market, Hobie — not

Pelican — bears the burden of showing that they are readily available. *See SynQor*, 709 F.3d at 1382; *Fiskars*, 279 F.3d at 1382; *Grain Processing*, 185 F.3d at 1353. In light of this, Pelican's expert Ms. Dean can appropriately opine as she did that none of the designs at issue were acceptable non-infringing alternatives because Hobie had not implemented any of the designs and did not intend to implement any of the designs [*see* Ex. 1, ECF No. 144-1 ¶ 90], and then leave it to Hobie to prove ready availability. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) (explaining that "[a]s a matter of simple procedure," a party has "no obligation to rebut" with expert testimony until the other party has "met its burden with reliable and sufficient evidence"). As such, the Court rejects Hobie's challenges to Ms. Dean's opinions regarding the eight other designs and the click and go assembly.

Third, Hobie criticizes Ms. Dean for failing to consider certain "other old technology" available to Hobie. ECF No. 144 at 17-18. The Court rejects this vague challenge. Ms. Dean addressed each of the asserted Hobie design arounds identified in Hobie's response to Pelican's interrogatory regarding acceptable non-infringing alternatives. *Compare* Ex. 1, ECF No. 144-1 ¶¶ 89-90, *with* Ex. 4, ECF 168-5 at 7. If Hobie contends that certain "other old technology" can be considered readily available, acceptable non-infringing alternatives and wanted Ms. Dean to address that "other old technology" in her report, then Hobie should have put that contention in its response to the relevant interrogatory. In addition, again, if an alternative is not on the market, then Hobie bears the burden of showing that it is readily available. *See SynQor*, 709 F.3d at 1382; *Fiskars*, 279 F.3d at 1382; *Grain Processing*, 185 F.3d at 1353. And Ms. Dean is free to leave it to Hobie to try to meet that burden. *See ResQNet*, 594 F.3d at 872. As such, the Court rejects this challenge to Ms. Dean's opinions.

Finally, Hobie criticizes Ms. Dean's analysis for failing to consider the design arounds that Hobie identified in the rebuttal expert report of Hobie's technical expert Dr. Sanders. ECF No. 144 at 18. Two of these design arounds — the rotomolded Passport and the Lynx with a one-piece well — were improperly and untimely disclosed by Pelican in

1    Dr. Sanders's rebuttal expert report, and, in light of that, the Court has precluded Hobie

2    from relying on them as evidence of acceptable non-infringing alternatives. ECF No. 181.

3    As such, there was no need for Ms. Dean to address those two design arounds in her expert

4    report. As to the third design around — the Click and Go like assembly for the Pro Angler

5    360 — that design around relates to the accused Pro Angler 360 kayak. In her expert report,

6    Ms. Dean does not "compute[] lost profits damages for Hobie's sales of the Pro Angler 360

7    kayaks." Ex. 1, ECF No. 144-1 ¶ 88. As such, there is no need for Ms. Dean to address the

8    Pro Angler 360 design around as part of her lost profits analysis. In sum, the Court declines

9    to exclude Ms. Dean's opinions regarding acceptable non-infringing alternatives.

10                    *2.    Ms. Dean's Competition Opinions*

11            Hobie argues that Ms. Dean's lost profits analysis should be excluded because Ms.

12    Dean failed to properly define the market or show that the patented products and the

13    accused products occupy the same market. ECF No. 144 at 19-21. In response, Pelican

14    argues that Ms. Dean properly reconstructed the market for the categories of kayaks in

15    dispute. ECF No. 149 at 8-11.

16            To show the "but for" causation required for entitlement to lost profits damages, "the

17    patentee must reconstruct the market to determine what profits the patentee would have

18    made had the market developed absent the infringing product." *Ericsson, Inc. v. Harris*

19    *Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003) (citing *Grain Processing*, 185 F.3d at 1350);

20    *see Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336,

21    1355 (Fed. Cir. 2001) ("To show 'but for' causation and entitlement to lost profits, a

22    patentee must reconstruct the market to show, hypothetically, 'likely outcomes with

23    infringement factored out of the economic picture.'" (quoting *Grain Processing*, 185 F.3d

24    at 1350)). "Such market reconstruction, though hypothetical, requires 'sound economic

25    proof of the nature of the market.'" *Crystal Semiconductor*, 246 F.3d at 1355 (quoting

26    *Grain Processing*, 185 F.3d at 1350); *accord Ericsson*, 352 F.3d at 1377. But "absolute

27    certainty is not required." *Fiskars*, 279 F.3d at 1383. The Federal Circuit has "affirmed lost

28    profits awards based on 'a wide variety of reconstruction theories in which the patentee has

presented reliable economic evidence of 'but for' causation.'" *Ericsson*, 352 F.3d at 1377 (quoting *Crystal Semiconductor*, 246 F.3d at 1355).

"[T]o determine a patentee's market share, the record must accurately identify the market. This requires an analysis which excludes alternatives to the patented product with disparately different prices or significantly different characteristics." *Crystal Semiconductor*, 246 F.3d at 1356. "[T]he patent owner and the infringer [must] sell products sufficiently similar to compete against each other in the same market segment." *Id.* (quoting *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993)); *see, e.g.*, *Mitutoyo Corp. v. Cent. Purchasing, LLC*, 499 F.3d 1284, 1291 (Fed. Cir. 2007) (affirming district court's denial of lost profits because patentee "failed to meet its burden of establishing any market overlap"). "In other words, for lost profits based on the infringer's sales, a patentee must show that the infringing units do 'not have a disparately higher price than or possess characteristics significantly different from the patented product.'" *Crystal Semiconductor*, 246 F.3d at 1356 (quoting *BIC*, 1 F.3d at 1219).

In her expert report, as part of her lost profits analysis, Ms. Dean explains that for the purposes of her analysis, she assumes that the '189 Patent is practiced by Pelican in its Catch 110HD, Catch 130HD, and Getaway kayaks. Ex. 1, ECF No. 144-1 ¶ 49.[9] Ms. Dean then opines that the Hobie Passport kayaks "compete directly" with the Pelican Catch 110HD and 130HD kayaks, and Ms. Dean provides a factual basis for that opinion. *Id.* ¶ 56; *see id.* ¶¶ 41, 66-76. Similarly, Ms. Dean opines that the Pelican Getaway kayak

---

[9]    Ms. Dean explains that Pelican's technical expert Dr. Maki addresses Pelican's practice of the '189 Patent. ECF No. 144-1, Ex. 1 ¶ 49; *see Apple*, 757 F.3d at 1321 (explaining that "[c]onsistent with Rule 703," patent damages experts can rely on the opinions of technical experts). In his opening expert report, Dr. Maki opines that the Pelican Catch kayak (including the Catch 110 HyDryve and the Catch 130 HyDryve) and the Pelican Getaway kayak practice claims 14-28 of the '189 Patent. *See* Ex. 1, App'x C-1, ECF No. 145-1 ¶¶ 45-48.

"competes directly" with the Hobie Lynx kayak, and Ms. Dean provides a factual basis for that opinion. *Id.* ¶ 86; *see id.* ¶¶ 41, 77-85.

Hobie challenges Ms. Dean's opinions, arguing that she failed to properly define the market. ECF No. 144 at 19. Hobie notes that Ms. Dean merely opines that the patented Pelican products and the relevant accused Hobie products "compete." *Id.* (citing Ex. 1, ECF No. 144-1 ¶¶ 66-86). Hobie asserts that "[c]ompetition, however, is not a market definition" and "the differences between these inquiries is subtle yet important." *Id.* at 20. But Hobie does not provide any authority to support its contention that Ms. Dean's competition opinions are insufficient to support her lost profits analysis. *See id.* at 19-20.

In *WesternGeco L.L.C. v. ION Geophysical Corporation*, the Federal Circuit rejected an accused infringer's argument that the patentee was not entitled to lost profits as a matter of law where "there was sufficient evidence in the record for the jury to conclude that the products did compete." 913 F.3d 1067, 1073 (Fed. Cir. 2019) ("[T]here was sufficient evidence in the record for the jury to conclude that the products did compete— i.e., that consumers in the surveying market (oil companies) considered WesternGeco's Q-Marine device and ION's DigiFin device to be substitutes for their surveying needs (i.e., that the products competed in the same market)."). As such, Ms. Dean's opinions that the patent practicing Pelican products compete with the accused Hobie kayaks are sufficient to support her lost profits analysis as to those kayaks.

In arguing that Ms. Dean's opinions are insufficient, Hobie notes the price disparity between the accused Hobie Lynx kayak and the Pelican Getaway kayak, and the price disparity between the Pelican Getaway kayak and the Hobie Compass kayak (which Pelican does not assert competes with the Getaway). *See* ECF No. 144 at 20-21 ("The accused Hobie Lynx kayaks sold for more than twice as much as the Pelican Getaway during the accounting period, and also had many different features."); ECF No. 150 at 9. But again, the Federal Circuit's decision in *WesternGeco* is instructive on this point. In that case, the Federal Circuit rejected the accused infringer's contention that the patentee was not entitled to lost profits even though the two products at issue were very different (devices

versus surveys). *See* 913 F.3d at 1072 ("ION sells only devices and WesternGeco sells only surveys."). The differences between the products did not matter as long as "the products did compete," i.e., that consumers in the relevant market considered the patentee's patented product and the accused product "to be substitutes" for their needs. *Id.* at 1073; *see, e.g.*, *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1380-81 (Fed. Cir. 2015) (affirming lost profits award where the parties were "direct competitors" even though there was "100% price disparity" between the products at issue). As such, Ms. Dean's opinion that the Pelican Getaway kayak directly competes with the Hobie Lynx kayak is sufficient to support her lost profits analysis as to those kayaks. At best, the price disparity between the Getaway and the Lynx and the evidence regarding the Hobie Compass go to the weight of Ms. Dean's opinions, not their admissibility.[10] *See Summit 6*, 802 F.3d at 1299 ("To the extent Mr. Benoit's credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility."). In sum, the Court rejects this *Daubert* challenge to Ms. Dean's lost profits analysis. *See, e.g.*, *Everlight Elecs. Co. v. Nichia Corp.*, No. 12-CV-11758, 2014 WL 4707053, at *5 (E.D. Mich. Sept. 22, 2014) (rejecting *Daubert* challenge to expert's lost profits opinions where "[t]he record shows that [the parties] directly compete for sales").

---

[10]     Hobie's reliance on *BIC* and *Mitutoyo* in not persuasive. *See* ECF No. 144 at 19-20. In *BIC*, the Federal Circuit explained that to satisfy *Panduit* factors one and two, the patent owner's product and the infringer's product must "compete in the same market for the same customers." 1 F.3d at 1219; *see Akamai*, 805 F.3d at 1380 ("[T]his court's decision in *BIC* did not rest solely on the price disparity of the two companies."). Here, Ms. Dean opines that the products at issue "compete directly" for the same customers. Ex. 1, ECF No. 144-1 ¶¶ 41, 56, 86.

     In *Mitutoyo*, the Federal Circuit affirmed a district court's determination that the patentee was not entitled to lost profits damages where the patentee "did not put any direct evidence into the record to suggest overlap among the consumers buying the companies' respective goods." 499 F.3d at 1291. In contrast, here, Pelican has put forth Ms. Dean's opinions that the products at issue "compete directly" for the same customers, and Ms. Dean explains her factual basis for those opinions. *See* Ex. 1, ECF No. 144-1 ¶¶ 41, 56-86.

### 3. *Ms. Dean's* Mor-Flo *Market Share Approach*

Hobie challenges Ms. Dean's application of the market share approach set forth in the Federal Circuit's decision in *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989), and Hobie argues that the Court should preclude Ms. Dean from testifying that Pelican is entitled to any more than 45.8% of Hobie's infringing Passport sales as part of her market share analysis. ECF No. 144 at 22. Hobie argues that this would be the correct percentage under a proper application of the market share approach set forth in *Mor-Flo*. ECF No. 144 at 22. In response, Pelican argues that Ms. Dean correctly applied the market share approach articulated in *Mor-Flo* and other Federal Circuit cases. ECF No. 149 at 11.

"In a complex market with numerous competitors, a patentee may be awarded lost profit damages calculated using its market share among its competitors." *Mentor Graphics*, 851 F.3d at 1286 n.5 (citing *Mor-Flo*, 883 F.2d at 1577-78); *see Akamai*, 805 F.3d at 1380 ("This court has repeatedly approved similar adjusted market share analyses for estimating lost profits."). In *Mor-Flo*, the Federal Circuit explained the market share approach that should occur when there are "multiple competitors" in the market. *See* 883 F.2d at 1578. If the other competitors are likely infringers of one of the patentee's patents, "[the patentee] would [be] entitled to their shares of the market on top of its own, and a correspondingly greater share of [the accused infringer]'s sales." *Id.* If all or some of the other competitors have acceptable non-infringing alternatives, the patentee "would [be] entitled to its current share or to a lesser increase in share" of the accused infringer's sales. *Id.*

In her expert report, Ms. Dean utilizes the *Mor-Flo* approach and apportions 92% of the accused Passport kayak's sales to Pelican. ECF No. 144-1 ¶ 138. Ms. Dean explains: "In my analysis (pre-adjustment), Hobie has 50.1% share, Pelican has 45.8% share and I allow for the minor non-specified brands to share 4.1% based on the NPD 'all other brands' data described above. Once Hobie's share is removed, the remaining shares are approximately 92% Pelican and 8% 'all other brands.'" *Id.*

1    Hobie argues that the above opinion misapplies *Mor-Flo*. ECF No. 144 at 21. But

2    the problem with Hobie's challenge to Ms. Dean's market share opinions is that in arguing

3    that Ms. Dean's testimony should be limited to opining that Pelican is entitled to no more

4    than 45.8% of Hobie's infringing Passport sales, Hobie is assuming that under a correct

5    market share approach as explained in *Mor-Flo*, when there are some third-party acceptable

6    non-infringing alternatives on the market, the patentee is only entitled to its existing market

7    share portion of the accused infringer's sales (which would be 45.8% here). *See* ECF No.

8    144 at 11, 21 ("Under this theory, the patentee is entitled to recover the percentage of the

9    infringer's sales that correspond to the patentee's share of the market."); ECF No. 150 at

10   10. But Hobie's interpretation of *Mor-Flo* is incorrect and that is not what *Mor-Flo* actually

11   says. In *Mor-Flo*, the Federal Circuit explained that in that situation, the patentee is

12   "entitled to its current share *or to a lesser increase in share*" of the accused infringer's

13   sales. 883 F.2d at 1578 (emphasis added). The Federal Circuit explained that this "lesser

14   increase in share" is lesser in comparison to the "greater share" of the accused infringer's

15   sales that the patentee would be entitled to if there are no acceptable non-infringing

16   alternatives on the market. *See id.* But other than that, the Federal Circuit did not place any

17   precise boundaries on what exactly that "lesser increase in share" may be. *See id.*[11]

18   In light of this, Ms. Dean's opinions comply with the market share approach set forth

19   in *Mor-Flo*. And Hobie's challenges to the specific percentages of market share set forth

---

[11]    The Court acknowledges that in *Mor-Flo*, the patentee's market share was 40%, and the district court awarded lost profits as to only 40% of the sales and then awarded a reasonable royalty as to the remaining 60% of the sales. *See* 883 F.2d at 1576, 1579. Thus, in *Mor-Flo*, the patentee only received its current market share of the accused infringer's sales as a lost profits award. But in *Mor-Flo*, that is all the patentee asked for at trial. *See id.* at 1579 ("State produced evidence of lost sales, and took the position that it should recover lost profits for its market share of Mor–Flo's infringing sales and a reasonable royalty for the remainder."). There is nothing in the *Mor-Flo* opinion stating that the patentee needed to be limited to only its current market share. To the contrary, the Federal Circuit explained that the patentee could "have been entitled to its current share *or to a lesser increase in share*." *Id.* (emphasis added).

in Ms. Dean's report merely constitute disagreements with Ms. Dean's conclusion. Disagreements with an expert's conclusions "[are] not a proper basis for the exclusion of expert testimony." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-CV-2061-H-BGS, 2016 WL 7319524, at *2 (S.D. Cal. Jan. 12, 2016); *see Elosu*, 26 F.4th at 1024 ("Ultimately, 'the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.'"); *Summit 6*, 802 F.3d at 1296 ("[T]he question of whether . . . the opinion is correct is generally a question for the fact finder, not the court."). As such, the Court rejects Hobie's *Daubert* challenge to Ms. Dean's market share opinions.

### B.    Ms. Dean's Reasonable Royalty Analysis

In her damages expert report, Ms. Dean performs a reasonable royalty analysis and renders an opinion as to the appropriate reasonable royalty in this case. *See* Ex. 1, ECF No. 144-1 ¶¶ 43, 146-237. Hobie raises various challenges to Ms. Dean's reasonable royalty analysis in its motion. *See* ECF No. 144 at 2-10. The Court addresses each of these challenges below.

"Upon a finding of infringement, the patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1329-30 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284). "The most common method for determining a reasonable royalty is the hypothetical negotiation approach, which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'" *VirnetX*, 767 F.3d at 1326 (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)); *see Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022). "A reasonable royalty may be a lump-sum payment not calculated on a per unit basis, but it may also be, and often is, a running payment that varies with the number of infringing units. In that event, it generally has two prongs: a royalty base and a royalty rate." *VirnetX*, 767 F.3d at 1326; *see DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1020 (S.D. Cal. 2011) ("A

hypothetical negotiation can result in either a lump-sum license or a running royalty license.").

"In determining the reasonable royalty that would been agreed to at the hypothetical negotiation, parties in patent cases frequently utilize the fifteen factors enunciated in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." *DataQuill*, 887 F. Supp. 2d at 1020. The Federal Circuit has "has sanctioned the use of the *Georgia–Pacific* factors to frame the reasonable royalty inquiry. Those factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 n.2 (Fed. Cir. 2012) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011)).

Nevertheless, the Federal Circuit has held "that a superficial recitation of the *Georgia–Pacific* factors, followed by conclusory remarks, cannot support the jury's verdict." *Exmark Mfg. Co. v. Briggs & Stratton Power Prod. Grp.*, 879 F.3d 1332, 1350 (Fed. Cir. 2018) (quoting *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012)). "When performing a *Georgia–Pacific* analysis, damages experts must not only analyze the applicable factors, but also carefully tie those factors to the proposed royalty rate." *Id.* "[W]hile mathematical precision is not required, some explanation of both why and generally to what extent the particular factor[s] impact[] the royalty calculation is needed." *Id.* (quoting *Whitserve*, 694 F.3d at 31).

Further, "[t]o be admissible, expert testimony opining on a reasonable royalty must sufficiently tie the expert testimony on damages to the facts of the case." *Id.* at 1349 (cleaned up)(quoting *Uniloc*, 632 F.3d at 1315); *see also Apple*, 25 F.4th at 971 (""[A] reasonable or scientifically valid methodology is nonetheless unreliable where the data used is not sufficiently tied to the facts of the case.'" (quoting *Summit 6*, 802 F.3d at 1296); *LaserDynamics*, 694 F.3d at 67 ("A damages theory must be based on 'sound economic and factual predicates.'" (quoting *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002))). "If the patentee fails to tie the theory to the facts of the case, the

testimony must be excluded." *Exmark*, 879 F.3d at 1349 (quoting *Uniloc*, 632 F.3d at 1315).

### 1.    *Ms. Dean's Royalty Base and The Entire Market Value Rule*

Hobie argues that Ms. Dean should be precluded from relying on the entire market value rule in forming her reasonable royalty opinions because Ms. Dean has failed to demonstrate that the entire market value rule has been satisfied in this case. ECF No. 144 at 8-9; ECF No. 150 at 3-4. In response, Pelican argues that Hobie's challenge to Ms. Dean's opinions should be rejected because Ms. Dean's royalty base opinions do not need to satisfy the entire market value. *See* ECF No. 149 at 17-19.

"The entire market value rule is derived from Supreme Court precedent requiring that the patentee 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative.'" *AstraZeneca*, 782 F.3d at 1338 (quoting *LaserDynamics*, 694 F.3d at 67). "Thus, the entire market value rule applies when the accused product consists of both a patented feature and unpatented features; the rule is designed to account for the contribution of the patented feature to the entire product." *Id.*

"The entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 978 (Fed. Cir. 2018) (quoting *Lucent*, 580 F.3d at 1336). Application of "the entire market value rule is appropriate only when the patented feature is the sole driver of customer demand or substantially creates the value of the component parts." *Id.* at 979 (citing *LaserDynamics*, 694 F.3d at 67; then citing *VirnetX*, 767 F.3d at 1326; and then citing *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013)). "In the absence of such a showing, principles of apportionment apply." *VirnetX*, 767 F.3d at 1326.

In her expert report, Ms. Dean references the entire market value rule and states: "The Entire Market Value Rule ('EMVR') has been established to give direction to the

appropriate royalty base." Ex. 1, ECF No. 144-1 ¶ 231. Ms. Dean then opines that because, in this case, a "watercraft" is the "smallest saleable patent practicing unit ('SSPPU')," the hypothetical license agreements between the parties would "use the entire kayak wholesale price as the royalty base for the rates in those agreements." *Id.* ¶ 232; *see id.* ¶ 233 (citing *Exmark*, 879 F.3d at 1348; then citing *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 76 F. Supp. 3d 806, 817 (W.D. Wis. 2014), *aff'd*, 628 F. App'x 767 (Fed. Cir. 2016)).

Hobie argues that Ms. Dean's invocation of the entire market value rule in rendering her royalty base opinion is improper because Ms. Dean has failed to demonstrate that the unpatented kayak features in the accused kayaks — "such as the 360 drive technology, 180 drive technology, Kick-Up Fin technology, price, propulsion type, fishing rod holders, seat, weight, length, brand loyalty, hull rigidity, etc." — do not cause consumer demand for the accused kayaks. ECF No. 144 at 8; ECF No. 150 at 4. In response, Pelican argues that Ms. Dean's royalty base opinions are proper because in circumstances where, as here, the asserted claims recite an entire product and not just a component, an expert may use the overall product — the accused kayaks — as the royalty base. ECF No. 149 at 18-19.

The Court agrees with Pelican, and the Court rejects Hobie's challenge to Ms. Dean's royalty base opinions. Hobie's challenge to Ms. Dean's royalty base opinions is based on a misunderstanding of the interplay between the "smallest salable patent practicing unit principle" and the "entire market value rule."

Regarding the smallest salable patent practicing unit principle (the "SSPPU principle"), the Federal Circuit has explained: "Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics*, 694 F.3d at 67. Thus, "where multi-component products are accused of infringement, the royalty base should not be larger than the smallest salable unit embodying the patented invention." *Power Integrations*, 904 F.3d at 977; *see Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015) ("[T]he smallest salable patent-practicing unit principle provides

that, where a damages model apportions from a royalty base, the model should use the smallest salable patent-practicing unit as the base."); *LaserDynamics*, 694 F.3d at 67 ("[I]t is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'").

Here, Independent Claim 14 of the '189 Patent and all the other asserted claims are directed to a "watercraft" comprising a "rigid body" and "an interface." *See* '189 Patent col. 18 ll. 64 to col. 20 ll. 40, col 20 ll. 43-44. As such, in opining that the reasonable royalty base should utilize the "entire kayak wholesale price," Ms. Dean complied with the SSPPU principle because an entire accused kayak is the smallest salable patent practicing unit in this case. *See, e.g.*, *Exmark*, 879 F.3d at 1348 (holding that it was proper for damages expert to use sales of the accused lawn mowers as the royalty base in a reasonable royalty analysis "because the asserted claim is, in fact, directed to the lawn mower as a whole"); *Rehco LLC v. Spin Master Ltd.*, No. 13-cv-2245, 2020 WL 7025091, at *8-9 (N.D. Ill. Nov. 30, 2020) (citing *Exmark* and affirming damages award where royalty base was based on the sales price of the entire accused vehicles because the accused vehicles "themselves constituted the smallest salable units").[12] As such, the Court rejects Hobie's challenge to Ms. Dean's royalty base opinions, and the Court declines to exclude Ms. Dean's royalty base opinions.

---

[12]    In situations where the accused product is not the smallest salable patent-practicing unit, satisfaction of the entire market value rule can provide "a narrow exception" to the SSPPU principle and allow a patentee to still use sales of the entire accused product as the royalty base in a reasonable royalty analysis. *LaserDynamics*, 694 F.3d at 67; *see Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. SACV2000847, 2021 WL 7285995, at *13 (C.D. Cal. Nov. 16, 2021) ("The so-called 'entire market value rule' ('EMVR') is an exception to this SSPPU requirement."). But, as Pelican correctly notes, that exception is not at issue here because in this case the accused kayaks are the smallest salable patent-practicing unit. *See* ECF No. 149 at 18-19; *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018) (explaining that the entire market value rule exception was not at issue in the case because the royalty base at issue was "based on the 'smallest, identifiable technical component'").

1    Nevertheless, the Court notes that "even where the proposed royalty base is the

2    smallest saleable patent practicing unit or SSPPU," "apportionment is required." *MLC*

3    *Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1373 (Fed. Cir. 2021); *see Omega*

4    *Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377 (Fed. Cir. 2021) ("[E]ven if the LMUs

5    have the same components as those set forth in the asserted claims, [plaintiff] still must

6    'adequately and reliably apportion[] between the improved and conventional features of

7    the accused [product]' when using the LMUs 'as a royalty base.'" (quoting *Exmark*, 879

8    F.3d at 1348)); *Finjan*, 879 F.3d at 1311 ("[I]f the smallest salable unit—or smallest

9    identifiable technical component—contains non-infringing features, additional

10   apportionment is still required."); *see also VirnetX*, 767 F.3d at 1327 ("[T]he requirement

11   that a patentee identify damages associated with the smallest salable patent-practicing unit

12   is simply a step toward meeting the requirement of apportionment."). Pelican argues that

13   Ms. Dean's reasonable royalty analysis properly apportions profits attributable to the

14   patented features from profits attributable to the unpatented features. ECF No. 149 at 17-

15   18, 19-20. The Court addresses Ms. Dean's apportionment opinions in the next section

16   below.

17   ### 2. Apportionment

18   Hobie argues that Ms. Dean's reasonable royalty opinions should be excluded

19   because in rendering her profit improvement opinions, she erroneously failed to apportion

20   out public, non-patented features of the invention. ECF No. 144 at 9-10; ECF No. 150 at

21   4. In response, Pelican argues that Ms. Dean's profit improvement analysis properly

22   apportions profits attributable to the patented features from profits attributable to

23   unpatented features. *See* ECF No. 149 at 17-18.

24   "[T]he patentee must in every case give evidence tending to separate or

25   apportion . . . the patentee's damages between the patented feature and the unpatented

26   features." *Omega*, 13 F.4th at 1376 (quoting *LaserDynamics*, 694 F.3d at 67); *accord Pavo*

27   *Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1380 (Fed. Cir. 2022). "Accordingly,

28   where a royalty is at issue, '[n]o matter what the form of the royalty, a patentee must take

care to seek only those damages attributable to the infringing features.'" *Omega*, 13 F.4th at 1376 (quoting *VirnetX*, 767 F.3d at 1326); *VirnetX*, 767 F.3d at 1327 ("[T]his court has consistently held that 'a reasonable royalty analysis requires a court to . . . carefully tie proof of damages to the claimed invention's footprint in the market place.'" (quoting *ResQNet*, 594 F.3d at 869)). And "where multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). "In other words, '[w]hen the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features.'" *Omega*, 13 F.4th at 1376 (quoting *Ericsson*, 773 F.3d at 1226). "Consequently, to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1123 (Fed. Cir. 2022) (quoting *Commonwealth Sci.*, 809 F.3d at 1301).

In her expert report, when analyzing *Georgia-Pacific* factor thirteen, Ms. Dean performs a profit improvement analysis where she attempts to apportion the profit improvement due to use of the '189 Patent from profit attributable to non-patented components. *See* ECF No. 144-1 ¶¶ 217-29. As part of this analysis, Ms. Dean states: "As further support for these opinions, I note that Hobie's patent on the original MirageDrive expired in 2017 . . . . As a result, no apportionment would be necessary for the technology underlying Hobie's original MirageDrive because it was in the public domain at the time of the hypothetical negotiation." *Id.* ¶ 225.

Hobie argues that the above statement is legally flawed and fails to properly follow well-settled precedent regarding apportionment. ECF No. 144 at 10; ECF No. 150 at 4. The Court agrees with Hobie. Under well-settled Federal Circuit precedent, a patentee must apportion "between the patented feature and the unpatented features." *Omega*, 13 F.4th at 1376 (quoting *LaserDynamics*, 694 F.3d at 67); *accord Pavo*, 35 F.4th at 1380. This means "all of the unpatented features," including features that may be in the public domain. *See*

*Commonwealth Sci.*, 809 F.3d at 1304 ("the patented feature must be apportioned from all of the unpatented features" (quoting *Ericsson*, 773 F.3d at 1232); *see also Power Integrations*, 904 F.3d at 977 ("A patentee is only entitled to a reasonable royalty attributable to the infringing features."). Pelican provides no legal support for Ms. Dean's assertion that because a certain feature is in the public domain, no apportionment is necessary. As such, the Court strikes and excludes the opinion set forth in paragraph 225 of Ms. Dean's opening expert report.[13]

### 3. *Comparable Licenses*

Hobie argues that Ms. Dean should be precluded from relying on certain licenses as part of her reasonable royalty analysis. ECF No. 144 at 2-6. Specifically, Hobie argues that Ms. Dean should be precluded from relying on the Hobie-Iaconelli license and the Confluence-Palm/Gaybo licenses because none of these licenses are sufficiently comparable to the hypothetical license at issue in this case. *See id.* In response, Pelican argues that Hobie's motion should be rejected because Hobie's challenges are factual disputes dressed up as a *Daubert* challenge. ECF No. 149 at 14. Pelican argues that issues of comparability "are factual issues best addressed by cross examination and not by exclusion." *Id.* at 17 (quoting *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012)).

"In determining a reasonable royalty, parties frequently rely on comparable license agreements." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372 (Fed. Cir.

---

[13] Hobie argues that in light of Ms. Dean's incorrect apportionment opinion, Ms. Dean should be precluded from presenting her reasonable royalty calculation. ECF No. 144 at 10. The Court declines to exclude Ms. Dean's reasonable royalty calculation based on this single improper opinion contained in her report. In providing the opinion at issue, Ms. Dean explains that the opinion at issue merely provides "further support" for her profit improvement analysis opinions. ECF No. 144-1 ¶ 225. Thus, the profit improvement analysis is not dependent on the opinion at issue. As such, the Court declines to exclude Ms. Dean's reasonable royalty calculation or her profit improvement analysis on this specific basis.

2020); *see Apple*, 757 F.3d at 1325 ("[W]e have held many times, using sufficiently comparable licenses is a generally reliable method of estimating the value of a patent."). But the licenses relied on by the patentee "[must be] sufficiently comparable to the hypothetical license at issue in suit." *VirnetX*, 767 F.3d at 1330 (alteration in original) (quoting *Lucent*, 580 F.3d at 1325); *see Uniloc*, 632 F.3d at 1317 ("[T]here must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue."). "A patentee [can]not rely on license agreements that [are] 'radically different from the hypothetical agreement under consideration' to determine a reasonable royalty." *Uniloc*, 632 F.3d at 1316 (quoting *Lucent*, 580 F.3d at 1328)). Further, a patentee must "account" for any "distinguishing facts when invoking [the licenses] to value the patented invention." *Omega*, 13 F.4th at 1380 (alteration in original) (quoting *Ericsson*, 773 F.3d at 1227); *see Wordtech Sys., Inc. v. Integrated Networks Sol., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) ("[C]omparisons of past patent licenses to the infringement must account for the technological and economic differences between them."). "Assessing the comparability of licenses requires a consideration of whether the license at issue involves comparable technology, is economically comparable, and arises under comparable circumstances as the hypothetical negotiation." *Bio-Rad*, 967 F.3d at 1372-73.

The Federal Circuit has held "that the issue of comparability is often one of sufficiency of the evidence, not admissibility." *Id.* at 1373 (citing *Ericsson*, 773 F.3d at 1227); *see, e.g.*, *ActiveVideo*, 694 F.3d at 1333. Nevertheless, the Federal Circuit "has often excluded licenses that are technologically or economically non-comparable." *Bio-Rad*, 967 F.3d at 1373; *see, e.g.*, *LaserDynamics*, 694 F.3d at 77; *ResQNet.*, 594 F.3d at 873; *Wordtech*, 609 F.3d at 1320-21; *see also Lucent*, 580 F.3d at 1327-32 (finding *Georgia-Pacific* factor two weighted strongly against the jury's award where jury was presented with "license agreements [that were] radically different from the hypothetical agreement"); *Omega*, 13 F.4th at 1381 (finding patentee failed to "present to the jury 'a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in th[e] case'"). The Federal Circuit has "cautioned that 'district courts performing

reasonable royalty calculations [must] exercise vigilance when considering past licenses to technologies other than the patent in suit,' and 'must account for differences in the technologies and economic circumstances of the contracting parties.'" *VirnetX*, 767 F.3d at 1330. "When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *Id.* (quoting *LaserDynamics*, 694 F.3d at 79); *see Omega*, 13 F.4th at 1379.

"The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded." *DataQuill*, 887 F. Supp. 2d at 1022 (citing *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 690-91 (E.D. Tex. 2010)); *accord Shopify Inc. v. Express Mobile, Inc.*, No. CV 19-cv-439, 2021 WL 4288113, at *27 (D. Del. Sept. 21, 2021); *Multimedia Pat. Tr. v. Apple Inc.*, No. 10-cv-2618-H KSC, 2012 WL 5873711, at *7 (S.D. Cal. Nov. 20, 2012). The patentee bears the burden of proving that the licenses at issue are sufficiently comparable. *Omega*, 13 F.4th at 1377; *Lucent*, 580 F.3d at 1329.

Here, Hobie challenges Ms. Dean's reliance on two sets of licenses: the Hobie-Iaconelli license and the Confluence-Gaybo/Palm licenses. *See* ECF No. 144 at 2-6. The Court addresses each of these licenses in turn below.

### i. The Hobie-Iaconelli License

In her expert report, as part of her analysis of *Georgia-Pacific* factor two, Ms. Dean relies on "a license agreement between Hobie and Professional Edge Fishing, Inc. related to the Hobie Pro Angler 360 Mike Iaconelli Edition-Ike Approved kayaks." Ex. 1, ECF No. 144-1 ¶ 155. "Under the agreement, Hobie agreed to manufacture a Hobie Mirage 'Mike Iaconelli Edition' Pro Angler 360 model that would have a special red and black camo pattern, special graphics molded into it, 'Ike logoed' EVA standing pads and shark face decals." *Id.* Ms. Dean asserts: "This agreement is relevant to the hypothetical negotiation because it demonstrates that Hobie agreed to pay a profit split of 37%/63% to an IP holder (in this instance, Mr. Iaconelli and his brand) related to Hobie's Accused Products." *Id.* ¶ 156; *see id.* ¶ 159.

"The second *Georgia–Pacific* factor is '[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit.'" *Lucent*, 580 F.3d at 1325 (quoting 318 F. Supp. at 1120). On its face, the Hobie-Iaconelli license is not relevant to *Georgia-Pacific* factor two because it is not a licensee "for the use of other patents comparable to the patent in suit." *See id.* Indeed, it is not a license to any patent or any patented technology. Rather, the Hobie-Iaconelli license is a branding license conferring rights to "Mr. Iaconelli and his brand." *See* Ex. 1, ECF No. 144-1 ¶ 156.

Moreover, for a patentee and its expert to rely on a license as part of a reasonable royalty analysis, the license must be sufficiently comparable in terms of technology to the hypothetical license at issue in the case. *See Bio-Rad*, 967 F.3d at 1372-73; *VirnetX*, 767 F.3d at 1330; *Lucent*, 580 F.3d at 1325; *see, e.g.*, *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-cv-452, 2022 WL 2800911, at *6 (D. Del. June 27, 2022) ("The [agreement] must therefore be comparable to the patented technology in order for [plaintiff's expert] Ms. Stamm to rely upon it."); *see also Uniloc*, 632 F.3d at 1317 ("[T]here must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue."). In this case, the hypothetical license at issue is a license to the technology claimed in the '189 Patent (i.e., a watercraft with a rigid body and an interface as claimed in the patent). *See generally* '189 Patent. The Hobie-Iaconelli license is not technologically comparable in any manner to that hypothetical license as the Hobie-Iaconelli license is not a license to any form of technology at all. Rather, as Ms. Dean herself explains, it is a branding license conferring rights to "Mr. Iaconelli and his brand." Ex. 1, ECF No. 144-1 ¶ 156; *see* Dean Depo., Ex. 4, ECF No. 144-3 at 181 ("I would agree that the IP that's being licensed is Mr. Iaconelli's brand and not mechanical improvements to the functioning of the Pro Angler 360."). As such, the Hobie-Iaconelli license is "radically different" from the hypothetical license at issue in the case, and Ms. Dean's

reliance on that license to form her reasonable royalty opinions is improper.[14] *See Uniloc*, 632 F.3d at 1316 ("A patentee [can]not rely on license agreements that [are] 'radically different from the hypothetical agreement under consideration' to determine a reasonable royalty." (quoting *Lucent*, 580 F.3d at 1328)); *DataQuill*, 887 F. Supp. 2d at 1024-25.

In its response, Pelican argues that a license agreement should not be excluded from a reasonable royalty analysis simply because the license does not convey any patent rights. ECF No. 149 at 15 (citing *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1093-94 (Fed. Cir. 2014)). The Court does not find Pelican's reliance on *SSL* persuasive. In *SSL*, although the agreements at issue technically were not patent licenses, the agreements were between the same parties, and the agreements "referenced the [patent-in-suit] as intellectual property that was relevant to the technology underlying the agreements." 769 F.3d at 1093. Pelican does not identify any similar statement in the Hobie-Iaconelli license. Moreover, Pelican has not cited to a single case where a branding license was permitted to be used as part of a reasonable royalty analysis in an action for patent infringement.

In sum, Pelican and Ms. Dean have failed to demonstrate a sufficient "baseline comparability" between the Hobie-Iaconelli license and the hypothetical license at issue in this case. *Cf. Bio-Rad*, 967 F.3d at 1373-74 (affirming district court's admission of expert testimony where the damages expert established "baseline comparability"). On its face and in light of Ms. Dean's own descriptions, the Hobie-Iaconelli license is a radically different

---

[14]    In its opposition, Pelican attempts to draw a distinction between when a damages expert uses licenses to prove an established royalty under *Georgia-Pacific* factors one, two, or twelve and other uses of a license by a damages expert to support a reasonable royalty calculation. *See* ECF No. 149 at 16-17. The Court rejects Pelican's attempt to draw a distinction in these circumstances. The Federal Circuit has made clear that a patentee and its damages expert cannot rely on "radically different" license agreements "to determine a reasonable royalty." *Uniloc*, 632 F.3d at 1316 (quoting *Lucent*, 580 F.3d at 1328)); *accord ResQNet*, 594 F.3d at 869; *see DataQuill*, 887 F. Supp. 2d at 1021; *Multimedia Pat. Tr.*, 2012 WL 5873711, at *7; *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 958 n.49 (N.D. Cal. 2014).

agreement. As such, Ms. Dean's reliance on that license to form her reasonable royalty opinions is improper. *See Uniloc*, 632 F.3d at 1316. Accordingly, the Court excludes Ms. Dean's opinions regarding the Hobie-Iaconelli license and any opinions that rely on that license. *See, e.g.*, *IOENGINE*, 2022 WL 2800911, at *6 (excluding expert testimony that relied on an insufficiently comparable license); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1017 (N.D. Cal. 2013) (same); *DataQuill Ltd. v. High Tech Computer Corp.*, No. 08-cv-543-IEG-BGS, 2012 WL 1284381, at *5 (S.D. Cal. Apr. 16, 2012) (same); *IP Innovation*, 705 F. Supp. 2d at 691 (same).

## ii.    Confluence-Gaybo/Palm Licenses

In her expert report, as part of her analysis of *Georgia-Pacific* factor one, Ms. Dean relies on "trademark licenses and sales agreements" between Confluence Holdings Corp. ("Confluence")[15] and Gaybo Limited ("Gaybo") and Palm Equipment International Limited ("Palm"). Ex. 1, ECF No. 144-1 ¶¶ 153-54. Ms. Dean explains: "Although these licenses are not patent licenses, the scope of the agreements provide the licensees rights to kayak designs (whether or not they are patented or copyrighted) and, therefore, I have considered" the agreements to be "relevant for the practices of the licensor to the hypothetical negotiation." *Id.* ¶ 154.

"The first *Georgia–Pacific* factor requires considering past and present royalties received by the patentee 'for the licensing of the patent in suit, proving or tending to prove an established royalty.'" *ResQNet*, 594 F.3d at 869 (quoting 318 F. Supp. at 1120); *see LaserDynamics*, 694 F.3d at 79 ("Actual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace."). "By its terms, this factor considers only past and present licenses to the actual patent and the actual claims in litigation." *ResQNet*, 594 F.3d at 869. As such, to be

---

[15]    Confluence is a subsidiary of Pelican. ECF No. 149 at 13.

relevant under this factor, the license at issue must have a "discernible link to the claimed technology." *Id.* (rejecting expert's use of licenses under the first *Georgia–Pacific* factor where "none of these licenses even mentioned the patents in suit or showed any other discernible link to the claimed technology"). Nevertheless, the Federal Circuit has explained that the license at issue does not need to specifically be a license to the patent-in-suit as long as the license is sufficiently comparable to the technologies at issue in the case. *See, e.g.*, *Bio-Rad*, 967 F.3d at 1373-74 (affirming district court's conclusion that the damages expert established "baseline comparability" because the "licenses covered patents related to microfluids"); *ActiveVideo*, 694 F.3d at 1333 (rejecting challenge to damages expert's reliance on license that "did not involve the patents-in-suit and did not cover any of the technologies in the case").

Hobie argues that the Court should exclude Ms. Dean's reliance on the Confluence-Gaybo/Palm licenses because they are trademark licenses that are vastly different than a license to a single asserted patent. ECF No. 144 at 6. The hypothetical agreement at issue in this case is a license to the '189 Patent, which claims watercraft/kayak technology (i.e., a watercraft with a rigid body and an interface as claimed in the patent). *See generally* '189 Patent. In her expert report, Ms. Dean acknowledges that the agreements at issue are "trademark licenses" and "not patent licenses." Ex. 1, ECF No. 144-1 ¶¶ 153-54. But Ms. Dean explains the agreements are nevertheless relevant because they confer rights to "kayak designs." *Id.* ¶ 154. Further, in its briefing, Pelican explains that both sides' experts agree that the Confluence-Palm/Gaybo licenses "contain freestanding grants for Gaybo and Palm to use kayak designs, kayak molds, and other technology to make and sell Confluence branded kayaks in Europe—including those covered by any patents or copyrights." ECF No. 149 at 16. Hobie does not dispute this.

In light of these statements, Ms. Dean has provided a sufficient factual basis to opine that the Confluence-Gaybo/Palm licenses are technologically comparable to the hypothetical agreement at issue. *See, e.g.*, *Bio-Rad*, 967 F.3d at 1373-74. Hence, any issue of comparability here is "one of sufficiency of the evidence, not admissibility." *Id.* at 1373.

And the degree of comparability is "best addressed by cross examination and not by exclusion." *ActiveVideo*, 694 F.3d at 1333; *see Bio-Rad*, 967 F.3d at 1373 ("[T]he issue of comparability is often one of sufficiency of the evidence, not admissibility."); *Ericsson*, 773 F.3d at 1227 ("[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility."). Accordingly, the Court declines to exclude Ms. Dean's damages opinions that rely on the Confluence-Gaybo/Palm licenses.

### 4.    *Ms. Dean's Royalty Rates*

Hobie argues that the Court should exclude Ms. Dean's opined royalty rates because the rates are not tethered to the facts of this case or even to her own calculations. ECF No. 144 at 6-8. In response, Pelican argues that Hobie's motion should be denied because Ms. Dean's royalty rates were arrived at through her comprehensive analysis of the *Georgia-Pacific* factors. ECF No. 149 at 11-14.

In her expert report, Ms. Dean opines that the royalty rates for the accused kayaks are: $100 for the Passport kayak; $150 for the Lynx kayak; and $200 for the Pro Angler 360 kayak. Ex. 1, ECF No. 144-1 ¶ 237. Pelican explains that Ms. Dean arrived at these royalty rates via her profit improvement analysis. ECF No. 149 at 14.

Ms. Dean's profit improvement analysis and conclusions are based in part on her analysis of the Hobie-Iaconelli license. *See* Ex. 1, ECF No. 144-1 ¶¶ 224, 235(j)-(k), 236; *see also* ECF No. 149 at 13, 18. Specifically, after determining the purported profit improvement attributable to the claimed invention for the accused kayaks, Ms. Dean uses the Hobie-Iaconelli license to apportion the purported profit increases in the kayaks and opine that "a 37% profit share to Pelican would be a floor in a hypothetical negotiation." *See* Ex. 1, ECF No. 144-1 ¶ 235(k); *see also id.* ¶¶ 224 ("A reasonable basis for apportioning the Pro Angler profit is at least 37% to Pelican based on the 37%/63% profit share in Hobie's IP license with Mr. Iaconelli, . . . ."), 235(j) ("Hobie pays 3% of its kayak wholesale price on the Mike Iaconelli-branded kayaks, which represents a sharing of approximately 37%/63% of the net profit increase on those kayak."). Ms. Dean uses this

purported 37% floor to support her ultimate reasonable royalty rate conclusions. *See id.* ¶¶ 236-37.

The Court has excluded Ms. Dean's opinions regarding the Hobie-Iaconelli license and any opinions that rely on that license. *See supra* Section V(B)(3)(i). As explained in the preceding paragraph, Ms. Dean's profit improvement analysis and, thereby, Ms. Dean's opined royalty rates both rely on the Hobie-Iaconelli license. Without the Hobie-Iaconelli license, Ms. Dean does not have sufficient factual support to render those damages opinions. Specifically, Ms. Dean has no factual support at all for her assertion that "a 37% profit share to Pelican would be a floor in a hypothetical negotiation." *See* Ex. 4, ECF No. 144-3 at 180-81 ("I believe the Iaconelli agreement was the only evidence that I had of Hobie sharing profits in this case. So that is the source of the 37 percent profit share for the IP holder."). As such, the Court excludes Ms. Dean's opined royalty rates. *See DataQuill*, 887 F. Supp. 2d at 1022 ("The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded." (citing *IP Innovation*, 705 F. Supp. 2d at 690-91)); *Shopify*, 2021 WL 4288113, at *27 (same); *see, e.g.*, *LaserDynamics*, 694 F.3d at 79-81 (holding that 6% royalty rate damages theory should be excluded on remand because it was based on insufficiently comparable licenses).

During her deposition in this case, Ms. Dean stated that there is "sufficient information" in her *Georgia-Pacific* analysis to support her proposed royalty rates even without the Hobie-Iaconelli license and the purported 37% profit share. Ex. 4, ECF No. 144-3 at 239-40; *see* ECF No. 149 at 15-16. The Court disagrees. Pelican has failed to provide the Court with any explanation as to how Ms. Dean's proposed royalty rates can stand without the Hobie-Iaconelli license as support for her opinions. Pelican itself asserts that Ms. Dean's royalty rates are based on her profit improvement analysis. *See* ECF No. 149 at 14. The Hobie-Ianconelli license and its purported 37% profit share is an integral part of Ms. Dean's profit improvement analysis. *See* Ex. 1, ECF No. 144-1 ¶¶ 224, 235(j)-(k), 236. As such, without the Ianconelli license, there is simply too great an analytical gap between the remainder of Ms. Dean's profit improvement analysis and her proposed

royalty rates. *See Gen. Elec.*, 522 U.S. at 144 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *see also Exmark*, 879 F.3d at 1350 ("We have held that a 'superficial recitation of the *Georgia–Pacific* factors, followed by conclusory remarks, [cannot] support the jury's verdict.' . . . When performing a *Georgia–Pacific* analysis, damages experts must not only analyze the applicable factors, but also carefully tie those factors to the proposed royalty rate." (quoting *Whitserve*, 694 F.3d at 31)); *LaserDynamics*, 694 F.3d at 67 ("A damages theory must be based on 'sound economic and factual predicates.'").[16] In sum, the Court excludes Ms. Dean's opined royalty rates.[17]

### C.    Ms. Dean's Testimony Regarding Damages Law

Hobie moves to preclude Ms. Dean from testifying about patent damages law. ECF No. 144 at 22. The Court agrees with Hobie that an "expert witness may not explain the law to the jury or tell the jury how to apply the law to the facts of the case." *Focal Point Films*, 2020 WL 5760355, at *6 (citing *Nationwide Transp.*, 523 F.3d at 1058-59); *see Diaz*, 876 F.3d at 1199; *Serco*, 846 F.3d at 337. But experts are permitted "to use legal

---

[16]    The Court acknowledges that in her reasonable royalty analysis, Ms. Dean also relies on the Confluence-Gaybo/Palm licenses, [Ex. 1, ECF No. 144-1 ¶¶ 153-54, 237], and the Court has not excluded Ms. Dean's opinions regarding those licenses. But Pelican asserts that Ms. Dean used the Confluence-Gaybo/Palm licenses "only as a reasonableness check and did not rely on them to determine Pelican's royalties." ECF No. 149 at 13; *accord id.* at 17. As such, by Pelican's own admission, Ms. Dean's opined royalty rates are not based on the Confluence-Gaybo/Palm licenses.

[17]    At various times in its opposition brief, Pelican criticizes Hobie and its damages expert for failing to provide an alternative royalty rate or royalty base and for failing to provide a competing profit improvement analysis. *See* ECF No. 149 at 14, 15, 19. The Court rejects this contention. The Federal Circuit has explained that it is the patentee's burden, not the accused infringer's, "to persuade the court with legally sufficient evidence regarding an appropriate reasonable royalty." *ResQNet*, 594 F.3d at 872. "As a matter of simple procedure," the accused infringer "ha[s] no obligation to rebut" until the patentee meets its burden with reliable and sufficient evidence. *Id.* As such, Hobie is under no obligation to provide its own royalty calculations or profit improvement analysis.

terminology" from the applicable law in expressing their opinions. *Nationwide Transp.*,
523 F.3d at 1059.

As such, the Court will not permit Ms. Dean to explain the law to the jury. But
whether Ms. Dean's actual testimony at trial crosses the line between "using legal
terminology" and "explaining the law" is a matter better addressed through a
contemporaneous objection at trial rather than through preclusion of any specific
testimony. Accordingly, the Court declines to preclude any specific testimony by Ms. Dean
on this basis.

## VI.    CONCLUSION

For the above reasons:

1.    The Court **GRANTS** and **DENIES** in part Plaintiff Pelican's *Daubert* motion
to exclude certain opinions and testimony from Hobie's technical expert Dr. Sanders.
Specifically, the Court **EXCLUDES** Dr. Sanders's invalidity and non-infringement
opinions regarding the "guiding assembly" limitation. The Court **DENIES** the remainder
of the *Daubert* motion without prejudice to raising a contemporaneous objection at trial.

2.    The Court **GRANTS** and **DENIES** in part Defendant Hobie's *Daubert*
motion to exclude certain opinions and testimony from Pelican's technical expert Dr. Maki.
Specifically, as part of his opinions related to willful infringement, the Court
**PRECLUDES** Dr. Maki from offering opinions as to intent, motive, or state of mind and
from engaging in long non-technical restatements of the facts. The Court **DENIES** the
remainder of the *Daubert* motion without prejudice to raising a contemporaneous objection
at trial.

3.    The Court **GRANTS** and **DENIES** in part Defendant Hobie's *Daubert*
motion to exclude certain opinions and testimony from Pelican's damages expert Ms.
Dean. Specifically, the Court: (1) **EXCLUDES** the opinion set forth in paragraph 225 of
Ms. Dean's opening expert report; (2) **EXCLUDES** Ms. Dean's opinions regarding the
Hobie-Iaconelli license and any opinions that rely on that license; and (3) **EXCLUDES**

Ms. Dean's opined royalty rates. The Court **DENIES** the remainder of the *Daubert* motion without prejudice to raising a contemporaneous objection at trial.

4.    The Court **ORDERS** Hobie to file, within fourteen (14) days from the date of this order, a notice identifying the specific prior art references that Dr. Sanders opines anticipate one or more of the asserted claims, and the specific asserted claims Dr. Sanders opines are anticipated by those references.

**SO ORDERED**.

Dated:  February 10, 2023

_____
Hon. Robert S. Huie
United States District Judge