UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PELICAN INTERNATIONAL, INC., | Case No.: 3:20-cv-02390-RSH-MSB |
| Plaintiff, | |
| v. | **ORDER:** |
| HOBIE CAT COMPANY; and HOBIE CAT COMPANY II, LLC, | **(1) GRANTING & DENYING IN PART PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT; AND** |
| Defendants. | [ECF Nos. 99, 100] |
| | **(2) GRANTING & DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| | [ECF No. 89] |

On April 13, 2022, Defendants Hobie Cat Company and Hobie Cat Company II, LLC (collectively "Hobie"), filed an omnibus motion for summary judgment. ECF No. 89. On April 14, 2022, Plaintiff Pelican International, Inc. ("Pelican"), filed: (1) a motion for summary judgment of infringement, ECF No. 99; and (2) a motion for summary judgment that certain references do not qualify as prior art, ECF No. 100. On May 17, 2022, the Parties filed their respective responses in opposition to the above motions. ECF Nos. 108,

111-12, 149-1. On May 24, 2022, the Parties filed their respective replies. ECF Nos. 122, 127-28, 157.

The Court held a hearing on the matter on February 9, 2023. For the reasons below, the Court grants and denies in part Pelican's motions for summary judgment and grants and denies in part Hobie's motion for summary judgment.

## I.    BACKGROUND

Pelican and Hobie are competing designers and manufacturers of watercraft products, such as kayaks. First Am. Compl. (Mar. 3, 2021), ECF No. 16 ¶ 8; Answer & Countercl. (Mar. 17, 2021), ECF No. 17 ¶ 9. Pelican is the owner by assignment of U.S. Patent No. 10,829,189 ("the '189 Patent"). U.S. Patent No. 10,829,189, at [73] (issued Nov. 10, 2020). In this case, Pelican accuses Hobie of infringing at least Independent Claim 14 of the '189 Patent by making, using, importing, selling, and/or offering for sale kayaks, including Hobie's Passport, Lynx, and Pro Angler 360 kayaks. *See* ECF No. 16 ¶ 13; ECF No. 62 at 18.

The '189 Patent is titled "Interface for Mounting a Propulsion Mechanism to a Watercraft," and was issued on November 10, 2020. '189 Patent at [45], [54]. The invention described in the '189 Patent relates to an interface for mounting a propulsion mechanism to a watercraft with a rigid body, and to a watercraft comprising a rigid body and such an interface. *Id.* at col. 1 ll. 7-9, col. 2 ll. 14-18, col. 3 ll. 45-51.

Figure 31 of the '189 Patent (set forth below) depicts an exploded view of an exemplary kayak in accordance with the invention claimed in the '189 Patent.



FIG.31

Independent Claim 14 of the '189 Patent, the only independent claim asserted in this action,[1] recites:

14. A watercraft comprising:

---

[1]    *See* ECF No. 146 at 7 (listing the asserted claims).

rigid body having a deck portion, a hull portion and a well extending between the deck portion and the hull portion,

an interface for mounting a propulsion mechanism to the body of the watercraft, the interface including:

> a first portion including a first plate positionable adjacent to one of the hull portion and the deck portion of the watercraft, about the periphery of the well, and at least one channel extending from the first plate, the channel being positionable in the well, the channel being sized and shaped for receiving therein a portion of the propulsion mechanism and for mounting the propulsion mechanism to the interface; and

> at least one fastening assembly for removably fastening the first portion to the body of the watercraft.

'189 Patent col. 18 ll. 64-67, col. 19 ll. 1-12.

On December 8, 2020, Pelican filed its original complaint against Hobie, alleging infringement of the '189 Patent. *See* Compl. (Dec. 8, 2020), ECF No. 1. On March 3, 2021, Pelican filed a First Amended Complaint (the "FAC," or the "Operative Complaint"). *See* ECF No. 16. On March 17, 2022, Hobie filed an answer to the FAC and counterclaims. ECF No. 17.

On March 26, 2021, the Court issued a scheduling order. ECF No. 20. On June 17, 2021, the Court issued an amended scheduling order. ECF No. 36. On November 17, 2021, the Court issued a second amended scheduling order. ECF No. 61. On February 1, 2022, the Court issued a claim construction order, construing disputed claim terms from the '189 Patent. ECF No. 77.

By the present motions for summary judgment: (1) Pelican moves for summary judgment that the accused Passport and Lynx kayaks infringe Claims 14-26 and 28 of the '189 Patent, ECF No. 146 at 3, 7-18; (2) Hobie moves for summary judgment that the accused Passport and Lynx kayaks do not infringe Claim 14 of the '189 Patent, ECF No. 143 at 1-20; (3) Hobie moves for summary judgment that the accused Pro Angler 360 kayak

does not infringe Claim 14 of the '189 Patent, ECF No. 143 at 20-21; (4) Hobie moves for summary judgment of no willful infringement, ECF No. 143 at 21-25; (5) Pelican moves for summary judgment of Hobie's prior commercial use defense, ECF No. 146 at 3, 19-23; and (6) Pelican moves for summary judgment that certain references do not qualify as prior art to the '189 Patent, ECF No. 146-1 at 2, 17-25.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are facts that, under the governing substantive law, may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex*, 477 U.S. at 323. A moving party without the ultimate burden of proof at trial can satisfy its burden in two ways: (1) by presenting "evidence negating an essential element of the nonmoving party's claim or defense;" or (2) by demonstrating "that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the ultimate burden of proof at trial, the moving party "'must offer evidence sufficient to support a finding upon every element of his [or her] claim' other than elements admitted by the [opposing party]." *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018) (quoting *Watts v. United States*, 703 F.2d 346, 347 (9th Cir. 1983)); *see eOnline Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980, 985 (N.D. Cal. 2019) ("The moving party 'must prove each element essential of the claims upon which it seeks

1    judgment by undisputed facts' in order to succeed.").

2    Once the moving party establishes the absence of a genuine dispute as to any
3    material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as
4    otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for
5    trial.'" *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); *accord*
6    *Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden,
7    the non-moving party "may not rest upon mere allegation or denials of his pleadings."
8    *Anderson*, 477 U.S. at 256; *see Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("On
9    summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the
10   nonmoving party "must present affirmative evidence . . . from which a jury might return a
11   verdict in his favor." *Anderson*, 477 U.S. at 256.

12   When ruling on a summary judgment motion, the court must view the facts and draw
13   all reasonable inferences in the light most favorable to the non-moving party. *Scott v.*
14   *Harris*, 550 U.S. 372, 378 (2007). The court should not weigh the evidence or make
15   credibility determinations. *See Anderson*, 477 U.S. at 255. "The evidence of the non-
16   movant is to be believed." *Id.* Further, the court may consider other materials in the record
17   not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *see*
18   *also Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010) ("[A] district court has
19   no independent duty 'to scour the record in search of a genuine issue of triable fact.'").

20   ## III.    THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT ON
21   INFRINGEMENT

22   ### A.    Legal Standard for Patent Infringement

23   A patent infringement analysis proceeds in two steps. *Niazi Licensing Corp. v. St.*
24   *Jude Med. S.C., Inc.*, 30 F.4th 1339, 1350 (Fed. Cir. 2022); *JVW Enter., Inc. v. Interact*
25   *Accessories, Inc.*, 424 F.3d 1324, 1329 (Fed. Cir. 2005). In the first step, the court construes
26   the asserted claims as a matter of law. *See Niazi*, 30 F.4th at 1351; *JVW*, 424 F.3d at 1329.
27   In the second step, the factfinder compares the properly construed claims to the accused
28   devices. *See id.*

"'The patentee bears the burden of proving infringement by a preponderance of the evidence.'" *Creative Compounds, LLC v. Starmark Lab'y*, 651 F.3d 1303, 1314 (Fed. Cir. 2011). "To prove infringement, the plaintiff bears the burden of proof to show the presence of every element or its equivalent in the accused device." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011); *accord Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1378 (Fed. Cir. 2011). "Under the doctrine of equivalents, "a product or process that does not literally infringe . . . the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997); *accord Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed. Cir. 2020).

The Federal Circuit "applies two articulations of the test for equivalence." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008) (citing *Warner–Jenkinson*, 520 U.S. at 21); *see UCB, Inc. v. Watson Lab'y Inc.*, 927 F.3d 1272, 1284 (Fed. Cir. 2019). Under the insubstantial differences test, "[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial." *UCB*, 927 F.3d at 1284 (quoting *Voda*, 536 F.3d at 1326). "Alternatively, under the function-way-result test, an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'" *Voda*, 536 F.3d at 1326 (quoting *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1209-10 (Fed. Cir. 2001)); *see Ajinomoto Co. v. Int'l Trade Comm'n*, 932 F.3d 1342, 1356 (Fed. Cir. 2019).[2] "Regardless how the equivalence test is articulated, 'the doctrine of equivalents must be applied to individual limitations of the claim, not to the

---

[2]    The Federal Circuit has explained that "[t]he function-way-result test is particularly suitable for analyzing the equivalence of mechanical devices." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009); *see Warner–Jenkinson*, 520 U.S. at 39 (acknowledging that there is "substantial agreement" that the function-way-result test is "suitable for analyzing mechanical devices").

invention as a whole.'" *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1357 (Fed. Cir. 2012) (quoting *Warner–Jenkinson*, 520 U.S. at 29).

"Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317 (Fed. Cir. 2015) (quoting *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129-30 (Fed. Cir. 2011)). "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005); *see EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1201 (Fed. Cir. 2014).

## B.    Legal Standard for Claim Construction

Because the first step in an infringement analysis is for the Court to construe the asserted claims as a matter of law, the Court sets forth the following legal standards governing claim construction. Claim construction is an issue of law for the court to decide. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326 (2015); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Although claim construction is ultimately a question of law, "subsidiary factfinding is sometimes necessary." *Teva*, 574 U.S. at 326.

"It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

Claim terms "are generally given their ordinary and customary meaning[,]" which "is the meaning that the term would have to a person of ordinary skill in the art [("POSITA")] in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "In some cases, the ordinary meaning of claim language as understood by a [POSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little

3:20-cv-02390-RSH-MSB

more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent." *O2 Micro*, 521 F.3d at 1360. If the meaning of the term is not readily apparent, the court must look to "those sources available to the public that show what a [POSITA] would have understood disputed claim language to mean." *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116); *see Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217-18 (Fed. Cir. 2014).

In determining the proper construction of a claim, a court should first look to the language of the claims. *See Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370, 1373 (Fed. Cir. 2019) ("[C]laim construction must begin with the words of the claims themselves."); *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014) ("a claim construction analysis must begin and remain centered on the claim language itself"). The context in which a disputed term is used in the asserted claims may provide substantial guidance as to the meaning of the term. *See Phillips*, 415 F.3d at 1314.

A court must also read claims "in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979; *see* 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."). "Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term." *Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1382 (Fed. Cir. 2014) (quoting *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1272 (Fed. Cir. 2011)). For example, "[a] claim construction that excludes a preferred embodiment is rarely, if ever correct and would require highly persuasive evidentiary support." *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1372 (Fed. Cir. 2022) (quoting *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d

1338, 1347 (Fed. Cir. 2014)).

But "[t]he written description part of the specification does not delimit the right to exclude. That is the function and purpose of claims." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc); *accord Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1256 (Fed. Cir. 2011). Therefore, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1327 (Fed. Cir. 2012); *accord Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 514 (Fed. Cir. 2015).

In addition to the claim language and the specification, the patent's prosecution history may be considered if it is in evidence. *Phillips*, 415 F.3d at 1317. The prosecution history "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id.* "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

In most situations, analysis of the intrinsic evidence will resolve claim construction disputes. *See Teva*, 574 U.S. at 331; *Vitronics*, 90 F.3d at 1583; *see also Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence."). However, "[w]here the intrinsic record is ambiguous, and when necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting *Phillips*, 415 F.3d at 1317). A

court must evaluate all extrinsic evidence in light of the intrinsic evidence. *Phillips*, 415 F.3d at 1319. "[E]xtrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims." *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1373 (Fed. Cir. 2022) (quoting *Markman*, 52 F.3d at 981); *see Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'"). In cases where subsidiary facts contained in the extrinsic evidence "are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." *Teva*, 574 U.S. at 332.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro*, 521 F.3d at 1362; *see Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318-19 (Fed. Cir. 2016) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."). In certain situations, it is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies. *See id.*; *Phillips*, 415 F.3d at 1314. But "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro*, 521 F.3d at 1361. When the parties present a dispute regarding the scope of a claim term, it is the court's duty to resolve the dispute. *Id.* at 1362; *Eon*, 815 F.3d at 1318.

## C.    Pelican's Motion for Summary Judgment of Infringement

Pelican moves for summary judgment that the accused Passport and Lynx kayaks infringe Claims 14-26 and 28 of the '189 Patent as a matter of law. ECF No. 146 at 7-18. In response, Hobie argues that Pelican's Motion for Summary Judgment of Infringement should be denied because Pelican's Motion fails to address every limitation in the asserted claims at issue. ECF No. 108 at 2-5; *see* ECF No. 122 at 1. The Court agrees with Hobie.

To establish infringement of Claims 14-26 and 28 of the '189 Patent, Pelican must show that the accused products "contain[] *each and every limitation* of the asserted claims." *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1380 (Fed. Cir. 2021) (quoting *Ericsson*, 773 F.3d at 1215); *see Uniloc*, 632 F.3d at 1301. Thus, Pelican is entitled to summary judgment of infringement if it can prove by undisputed facts that the accused Passport and Lynx kayaks contain each and every limitation of Claims 14-26 and 28. *See EMD Millipore*, 768 F.3d at 1201 (explaining that summary judgment on the issue of infringement is only proper if no reasonable jury could find that every limitation recited in the properly construed claims is not found in the accused devices); *Connector Sols.*, 406 F.3d at 1364 (same); *see also eOnline Glob.*, 387 F. Supp. 3d at 984-85 ("For motions where the moving party will bear the ultimate burden of proof at trial[,] . . . [t]he moving party 'must prove each element essential of the claims upon which it seeks judgment by undisputed facts' in order to succeed."). However, Pelican's Motion for Summary Judgment addresses only two limitations from the claims at issue: the "fastening assembly" limitation and the "removably fastening" limitation. *See* ECF No. 146 at 7-18. This is insufficient to establish infringement of Claims 14-26 and 28 of the '189 Patent. *See SIMO Holdings*, 983 F.3d at 1380; *EMD Millipore*, 768 F.3d at 1201. All of those claims contain several other claim limitations that Pelican never addresses in its Motion for Summary Judgment.[3] *See generally* ECF No. 146. As such, Pelican is not

---

[3] At the hearing, Pelican noted that it attached an expert report from its technical expert, Dr. Maki, as exhibits to its Motion for Summary Judgment and that the report addresses the other limitations in Claim 14. This is insufficient to satisfy Pelican's burden at the summary judgment. The Ninth Circuit has explained: a "district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001); *see Simmons*, 609 F.3d at 1017 ("[A] district court has no independent duty 'to scour the record . . . .'"). Pelican's Motion for Summary Judgment only specifically referenced the portions of Dr. Maki's expert report analyzing the "at least one fastening assembly for removably fastening the first portion to the body of the

entitled to summary judgment of infringement as to any of the asserted claims.

Pelican contends that "Hobie does not dispute that its Passport and Lynx kayaks meet all limitations of claim 14, except for the limitation reciting 'at least one fastening assembly for removably fastening the first portion to the body of the watercraft.'" ECF No. 157 at 1; *see id.* at 5 (contending that Pelican's Motion for Summary Judgment has "addressed all of the disputed limitations and terms"). Pelican does not support this contention with a citation to anywhere in the record containing such an admission from Hobie. *See id.* Indeed, at the hearing on the Parties' motions for summary judgment, Hobie made clear that it does not concede that the Passport and Lynx kayaks satisfy the other limitations in Claim 14. As such, the Court rejects this argument and denies Pelican's Motion for Summary Judgment of Infringement.

### D. Hobie's Motion for Summary Judgment of Non-Infringement of the Passport and Lynx Kayaks

Hobie moves for summary judgment that the Passport and Lynx kayaks do not infringe Independent Claim 14 of the '189 Patent because they do not satisfy the "fastening assembly" claim limitation. ECF No. 89-1 at 9.

Independent Claim 14 of the '189 Patent recites "[a] watercraft comprising," among other things: "at least one fastening assembly for removably fastening the first portion to the body of the watercraft." '189 Patent col. 19 ll. 11-12. In its Claim Construction Order, the Court adopted Pelican's proposed construction for the term "fastening assembly" and construed the claim term "fastening assembly" as "fastener." ECF No. 77 at 18.[4]

As an initial matter, although the Court previously construed the term "fastening assembly" as "fastener," the Parties appear to further agree as to the scope of this claim

---

watercraft" limitation. *See* ECF No. 146 at 3-18 (citing Ex. 31, Maki App'x D-2, ECF No. 158-16 at 16-32; Ex. 33, Maki App'x D-4, ECF No. 158-18 at 21-38).

[4]    In construing the claim term, the Court rejected Hobie's argument that the term "fastening assembly" is a means-plus-function claim element under 35 U.S.C. § 112(f). ECF No. 77 at 12-18.

term. In its opening claim construction brief, Pelican argued: "the term 'fastening' has a well-understood meaning and, in the field of watercraft, refers to '[t]he screws, bolts, etc., holding a boat together.'" ECF No. 40 at 18 (quoting Ex. E, ECF No. 40-6); *see* ECF No. 62 at 56, 59. Hobie cites to this same definition and relies on it in its Motion for Summary Judgment. ECF No. 143 at 2, 10; *see* ECF No. 108 at 6; ECF No. 122 at 6. As such, to add clarity to this claim term and better resolve the Parties' dispute, the Court amends its prior construction and construes the claim term "fastening assembly" as "fastener(s) (i.e., screw(s), bolt(s), etc.)."[5]

 Hobie's Motion for Summary Judgment of Non-infringement as to the accused Passport and Lynx kayaks has two parts. First, Hobie moves for summary judgment of non-infringement as to the original design Passport and Lynx kayaks. ECF No. 89-1 at 10-15. Second, Hobie moves for summary judgment of non-infringement as to the redesigned Passport and Lynx kayaks. *Id.* at 16-23. The Court addresses these two sets of accused products below.

### 1. *The Original Design Passport and Lynx Kayaks*

 Hobie argues that the original design Passport and Lynx kayaks do not infringe Claim 14 of the '189 Patent as a matter of law because they do not satisfy the "fastening assembly" limitation of Independent Claim 14. ECF No. 143 at 3-8. Independent Claim 14 recites "[a] watercraft comprising," among other things: "at least one fastening assembly for removably fastening the first portion to the body of the watercraft." '189 Patent col. 19 ll. 11-12. The Court has construed the term "fastening assembly" as "fastener(s) (*i.e.,*

---

[5] At the hearing on the parties' motions for summary judgment, the Court presented its amended construction for the claim term "fastening assembly" to the parties, and Hobie agreed with the Court's amended construction. Pelican explained that although it does not object to the Court's amended construction, it contends that the list of examples contained within the amended construction is incomplete. The Court notes that the listed examples of fasteners contained within the Court's amended construction is derived from the technical dictionary that Pelican itself presented to the Court at claim construction. *See* ECF No. 40 at 18.

1  screw(s), bolt(s), etc.)." *See supra* Section III(D).

2      In his report, Pelican's expert Dr. Maki opines that the original design Passport and

3  Lynx kayaks literally satisfy the "fastening assembly" limitation in Claim 14. *See* Maki

4  Opening Expert Report, Ex. 2, App'x D-1, ECF No. 134-3 at 17-26; Maki Opening Expert

5  Report, Ex. 3, App'x D-3, ECF No. 134-4 at 37-38. Specifically, Dr. Maki opines:

> The fastening assembly [of the original design Passport and Lynx kayaks]
> comprises the screws and holes for receiving the screws and corresponding
> holes identified below and also the fastening projections and recesses for
> receiving the fastening projections identified below. The screws identified
> below are inserted into the corresponding holes identified below and the
> fastening projections are inserted into the corresponding recesses identified
> below to fasten the interface to the body of the watercraft at least by forcing
> opposing portions of the interface together to clamp onto or "sandwich" the
> body of the watercraft.

15  Ex. 2, App'x D-1, ECF No. 134-3 at 17; *accord* Ex. 3, App'x D-3, ECF No. 134-4 at 37.

16  This evidence alone suffices to create a genuine dispute of material fact as to whether the

17  original design Passport and Lynx kayaks satisfy the "fastening assembly" claim limitation,

18  and defeats Hobie's Motion for Summary Judgment on this issue as a result. *See Vasudevan*

19  *Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 683 (Fed. Cir. 2015) ("As a general

20  rule, summary judgment is inappropriate where an expert's testimony supports the non-

21  moving party's case." (quoting *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996))).

22      Hobie argues that Dr. Maki's opinions are insufficient to create a genuine dispute of

23  material fact because this evidence fails to show that the identified fasteners fasten the

24  identified interface "to the body" of the kayak as the language of Claim 14 requires. *See*

25  ECF No. 143 at 3-8. Specifically, Hobie argues that Dr. Maki's opinions are insufficient

26  because there is no dispute between the Parties that the fasteners at issue do not ever pass

27  through any portion of the body of the watercraft. *See id.* at 4-5; ECF No. 122 at 4 n.1. In

28  response, Pelican asserts that Hobie's argument is based on an untimely and flawed claim

construction argument for the claim term "to the body of the watercraft." ECF No. 149-1 at 1-4. The Court agrees with Pelican.

Hobie's argument assumes that the claim term "at least one fastening assembly for removably fastening the first portion to the body of the watercraft" includes a limitation requiring that the fastener(s) go into or pass through the body of the watercraft. *See* ECF No. 143 at 4-5, 7 n.5; ECF No. 122 at 4 n.1. This is an incorrect and faulty assumption. The Court's Claim Construction Order contains no such limitation requiring that the fastener(s) at issue pass through or penetrate the body of the watercraft. *See* ECF No. 77 at 12-18. Indeed, in its claim construction briefing, Hobie never requested that the Court include such a limitation in the Court's constructions for the claim term at issue. *See generally* ECF No. 41 at 9-15.[6] As such, Hobie has waived its arguments regarding the scope of the claim term "fastening . . . to the body of the watercraft." *See CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-cv-2479-GPC-DEB, 2022 WL 16985003, at *9 (S.D. Cal. Nov. 15, 2022) ("[G]enerally, a party waives any argument with respect to the construction of a claim term when they fail to raise that issue during the claim construction phase of the case."); *Finalrod IP, LLC v. John Crane, Inc.*, No. 7:15-cv-97, 2019 WL 4061703, at *2 (W.D. Tex. May 30, 2019) ("The Federal Circuit holds that an accused infringer waives

---

[6]    At the hearing on the parties' motions for summary judgment, Hobie asserted that it did present this issue to the Court at claim construction because this issue was encompassed within its proposed construction for the claim term "fastening assembly . . ." under 35 U.S.C. § 112(f).

Hobie's contention is not supported by the record. A review of Hobie's claim construction briefing and charts shows that at claim construction Hobie requested that, in the event that the Court rejected its argument that the term "fastening assembly . . ." should be construed as a means-plus-function limitation under § 112(f), the claim term "fastening assembly . . ." should then be construed as "a group of components used for fastening." ECF No. 39-1 at 18; ECF No. 43 at 5. This alternative proposed construction says nothing about whether the fasteners should go into or pass through the body of the watercraft. Accordingly, Hobie failed to properly present this issue to the Court during the claim construction phase of the case.

any argument with respect to the construction of a claim term when they fail to raise that issue during the claim construction phase of a patent infringement action."); *see, e.g.*, *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) ("The district court found that ACS waived any argument with respect to th[e] term ["maintaining"] by failing to raise it during the claim construction phase. We agree."); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-630, 2014 WL 252045, at *3 (N.D. Cal. Jan. 21, 2014) ("If the parties wanted to tee up summary judgment positions based on particular constructions, they 'could (and should) have sought . . . construction[s] to [those] effect[s].'"). "Sound practical reasons counsel against construing additional terms based on claim construction arguments raised for the first time in summary judgment briefs." *CliniComp*, 2022 WL 16985003, at *9 (quoting *Apple*, 2014 WL 252045, at *4); *see O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (explaining that patent local rules are designed to "prevent the shifting sands approach to claim construction").[7]

---

[7] In its briefing, Hobie acknowledges that untimely proposed claim constructions are waived. ECF No. 143 at 6. Nevertheless, Hobie attempts to blame Pelican for failing to raise this dispute to the Court during the claim construction phase of the case. ECF No. 143 at 6; ECF No. 122 at 4. The Court rejects Hobie's attempt at blame shifting. Hobie is the party asserting that the claim term "fastening the first portion to the body of the watercraft" includes the specific limitation that the fasteners go into or pass through the body of the watercraft. *See* ECF No. 143 at 4-5, 7 n.5; ECF No. 122 at 4 n.1. As the party seeking to impose that specific limitation, Hobie bore the burden of raising that issue at claim construction. *See CliniComp*, 2022 WL 16985003, at *9 (explaining that it is the party whose proposed construction deviates from the plain and ordinary meaning that bears the burden of raising the issue to the Court at claim construction).

At the hearing on the parties' motions for summary judgment, Hobie suggested that it did present this issue to the Court during the claim construction proceedings because this issue was encompassed within their means-plus-function arguments. But there are two problems with this argument. But as Hobie's own demonstratives from the summary judgment hearing show, Hobie's current argument is based on the specific claim term "to

In an effort to advance its untimely claim construction position, Hobie argues that its proposed limitation is required by the plain and ordinary meaning of the phrase "fastening the first portion to the body of the watercraft." ECF No. 122 at 3-4; *see* ECF No. 108 at 5 n.3. The Court disagrees, and had Hobie presented this argument to the Court during claim construction, the Court would have rejected it.

There is no language in Independent Claim 14 of the '189 Patent requiring that the fastener(s) must pass through or penetrate the body of the watercraft. Independent claim 14 recites "[a] watercraft comprising," among other things: "at least one fastening assembly for removably fastening the first portion to the body of the watercraft." '189 Patent col. 19 ll. 11-12. The plain and ordinary meaning of the word "fasten" is "to attach." *See Fasten*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/fasten (last visited Jan. 18, 2023) (defining "fasten" as "to attach especially by pinning, tying, or nailing"); *Fasten*, *The American Heritage College Dictionary* (3d Ed. 1997) (defining "fasten" as "[t]o attach firmly to something else as by pinning or nailing"); *Fasten*, *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/fasten (last visited Feb. 9, 2023) (defining "fasten" as "to fix one thing to another" or "to make or become firmly attached or closed"). And the plain and ordinary meaning of the word "to" in this context is "in contact with; against." *See To*, *The American Heritage College Dictionary* (3d Ed. 1997) (defining "to" as "4. In contact with; against"); *To*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/to (last visited Jan. 18, 2023) (defining "to" as "used as a function word to indicate contact or proximity"). As such, the claim language at issue in Claim 14 merely requires that the fastener(s) be used to attach the first portion (i.e., the interface) so that it is firmly in contact with the body of the watercraft. There is no specific requirement that the fasteners pass through or penetrate

---

the body of the watercraft." Hobie never requested a construction of that specific phrase during the claim construction phase of the case.

the body of the watercraft.

Turning to the specification, the Court acknowledges that Hobie identifies passages in the specification that refer to fasteners that pass through the body of the watercraft. *See* ECF No. 143 at 8 (citing '189 Patent col. 11 ll. 36-54, col. 8 ll. 64 to col. 9 ll. 2, col. 14 ll. 45-50, col. 15 ll. 18-23). But each of these references is to a preferred embodiment of the invention. *See* '189 Patent col. 7 ll. 36-40 ("FIGS. 1 to 7 show an example of a watercraft in accordance with an embodiment of the invention."), col. 6 ll. 40-42 ("FIG. 8 is an enlarged, top front right perspective view of a body of the kayak shown in FIG. 1, in accordance with one embodiment."), col. 7 ll. 9-11 ("FIG. 21 is a rear, top right perspective view of a top portion of the interface shown in FIG. 13, in accordance with one embodiment."), col. 7 ll. 31-32 ("FIG. 31 is a rear, top right, partially exploded view of the kayak shown in FIG. 1."). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Dealertrack*, 674 F.3d at 1327; *accord Openwave*, 808 F.3d at 514. Here, there is no clear indication in the intrinsic record that Claim 14 should be limited to requiring that the fastener(s) penetrate or pass through the body of the watercraft. To the contrary, the specification explains in reference to the preferred embodiment of the invention: "[I]t will be understood that the interface 300 could be mounted to the body 12 of the kayak differently, for instance by using a different number of fasteners, by positioning the fasteners in other locations or by using other types of fasteners (e.g. rivets)." '189 Patent col. 15 ll. 41-46. In sum, the Court rejects Hobie's untimely claim construction position.

With that claim construction issue resolved, it is clear that the evidence Pelican presents is sufficient to raise a genuine dispute of material fact as to whether the original design Passport and Lynx kayaks satisfy the "fastening assembly" limitation in Claim 14 of the '189 Patent. For example, Dr. Maki opines that the screws, holes, fastening projections, and recesses identified in his report "fasten the interface to the body of the watercraft at least by forcing opposing portions of the interface together to clamp onto or

'sandwich' the body of the watercraft." Ex. 2, App'x D-1, ECF No. 134-3 at 17; Ex. 3, App'x D-3, ECF No. 134-4 at 37. Further, Hobie's Vice President of Engineering, Mr. Czarnowski, testified that the well (i.e., the interface) of the Passport and Lynx kayaks is in "physical contact with the body of the kayak" via "an interference fit." Czarnowski Depo., Ex. 19, ECF No. 158-10 at 57-58; *see id.* at 54-56, 246; Sanders Depo., Ex. 8, ECF No. 158-3 at 151 (Hobie's technical expert Dr. Sanders testifying: "The design of the interface sandwiches the watercraft in the case of the Mirage Lynx and the Mirage Passport accused products.").

Hobie might disagree with Dr. Maki's opinions and present contrary evidence from its own expert. But, at best, that merely raises disputes of fact for the jury that may not be resolved at the summary judgment stage. *See Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011) ("Where there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate."). Accordingly, the Court denies Hobie's Motion for Summary Judgment that the original design Passport and Lynx kayaks do not infringe Independent Claim 14 of the '189 Patent.[8]

---

[8]     In its Motion for Summary Judgment, Hobie argues that Pelican's infringement theories under the doctrine of equivalents are insufficient to preclude the Court from granting summary judgment of non-infringement as to Claim 14 of the '189 Patent. ECF No. 143 at 16-20. Because the Court finds that Hobie is not entitled to summary judgment of non-infringement as to the original design Passport and Lynx kayaks under a literal infringement analysis, the Court need not address Hobie's arguments regarding infringement under the doctrine of equivalents. *See, e.g.*, *Skedco, Inc. v. Strategic Operations, Inc.*, 685 F. App'x 956, 962 (Fed. Cir. 2017) (holding that the panel's vacatur of the district court's grant of summary judgment of no literal infringement rendered moot the issue of whether the district court properly granted summary judgment of noninfringement under the doctrine of equivalents).

### 2.    The Redesigned Passport and Lynx kayaks

Hobie argues that the redesigned Passport and Lynx kayaks do not infringe Independent Claim 14 of the '189 Patent as a matter of law because neither satisfies the "fastening assembly" limitation of Claim 14. ECF No. 143 at 9-16. Claim 14 of the '189 Patent recites "[a] watercraft comprising," among other things: "at least one fastening assembly for removably fastening the first portion to the body of the watercraft." '189 Patent col. 19 ll. 11-12. The Court has construed the term "fastening assembly" as "fastener(s) (*i.e.*, screw(s), bolt(s), etc.)." *See supra* Section III(D).

In his report, Pelican's expert Dr. Maki opines that the redesigned Passport and Lynx kayaks literally satisfy the "fastening assembly" limitation in Claim 14. *See* Maki Opening Expert Report, Ex. 7, App'x D-2, ECF No. 134-7 at 16-30; Maki Opening Expert Report, Ex. 33, App'x D-4, ECF No. 158-18 at 21-36. Specifically, Dr. Maki opines:

> The Hobie Interface's fasteners such as fastening projections, recesses, and glue fasten the two portions of the interface together. These fasteners hold the first and second portion of the interface together, sandwiching or clamping the body of the watercraft between the first and second portions and plates of Hobie's interface.

Ex. 7, App'x D-2, ECF No. 134-7 at 17; *accord* Ex. 33, App'x D-4, ECF No. 158-18 at 22; *see* Ex. 19, ECF No. 158-10 at 54-59, 246; Ex. 8, ECF No. 158-3 at 151. Dr. Maki further opines: "Hobie's glued interface is also *removably* fastened such that the interface can be removed and replaced if damaged, without the need to replace the entire kayak body." Ex. 7, App'x D-2, ECF No. 134-7 at 28. This evidence alone is sufficient to create a genuine dispute of material fact as to whether the redesigned Passport and Lynx kayaks satisfy the "fastening assembly" claim limitation, and defeats Hobie's Motion for Summary Judgment on this issue. *See Vasudevan*, 782 F.3d at 683 ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case." (quoting *Provenz*, 102 F.3d at 1490)).

Hobie argues that Dr. Maki's opinions are insufficient to raise a genuine dispute of material fact because the redesigned Passport and Lynx kayaks are secured with a permanent epoxy, and epoxy is an adhesive, not a fastener. ECF No. 143 at 9-11. But the problem with this argument is that even assuming Hobie is correct and an epoxy is not a fastener, Dr. Maki does not simply rely on the accused kayaks' use of epoxy to satisfy the "fastening assembly" claim limitation. Rather, Dr. Maki also identifies physical structures on the first and second portions of the interface that he refers to as "fastening projections" and "fastening recesses." *See, e.g.*, Ex. 7, App'x D-2, ECF No. 134-7 at 16, 20, 23. Hobie states that it does not agree that the structures Dr. Maki has chosen to call "fastening projections" are fasteners. ECF No. 122 at 3; *see* ECF No. 143 at 12. But at the summary judgment stage, the Court must accept the factual assertions of the non-moving party's expert, here Dr. Maki, as true. *See, e.g.*, *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1380 (Fed. Cir. 2013) ("For purposes of summary judgment, we must accept CMW's expert's factual assertions as true."); *see also Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, whether the purported "fastening projections" and "fastening recesses" identified by Dr. Maki satisfy the "fastening assembly" limitation, as construed by the Court, is a question of fact for the jury. *See JVW*, 424 F.3d at 1329 (explaining that it is for the "fact-finder" to determine "whether the claims, as properly construed, read on the accused device").[9]

---

[9] Although the Court finds that there is a triable issue of fact as whether the structures Dr. Maki identified satisfy the "fastening assembly" claim limitation, the Court finds it necessary to address Pelican's assertions regarding the Court's Claim Construction Order to clarify the record. In its briefing, Pelican asserts that the Claim Construction Order specifically identifies "fastening projections" and "recesses" as examples of types of "fasteners." *See* ECF No. 146 at 14 (asserting that Hobie's expert's statement that "'[f]astening projections and recesses are not fasteners' . . . directly contradicts the Court's claim construction order"); ECF No. 149-1 at 5-6 ("[T]his Court's claim construction order

Hobie also argues that Dr. Maki's opinions are insufficient to raise a genuine dispute of material fact because the interface in the redesigned Passport and Lynx kayaks is secured using a permanent epoxy, and, therefore, the interface does not satisfy the "removably fastening" limitation. ECF No. 143 at 12-16. In response, Pelican urges the Court to reject Hobie's argument because it relies on an impermissibly narrow claim construction of the term "removably" that Hobie never sought at claim construction. ECF No. 149-1 at 1-2, 12-17.

At claim construction, Hobie did not request that the Court construe the term "removably" or the term "removably fastening." *See generally* ECF No. 39-1; ECF No. 41. As such, Hobie waived any arguments with respect to the proper construction of the terms "removably" or "removably fastening." *See CliniComp*, 2022 WL 16985003, at *9 ("[G]enerally, a party waives any argument with respect to the construction of a claim term when they fail to raise that issue during the claim construction phase of the case."); *Finalrod IP*, 2019 WL 4061703, at *2; *see, e.g.*, *Cent. Admixture Pharmacy*, 482 F.3d at 1356.[10]

---

makes clear that a 'fastening projection' is a 'fastener.'"). This is a misreading and misunderstanding of the Court's Claim Construction Order.

In addressing Hobie's assertion that the term "fastening assembly" is a means-plus-function claim term, the Claim Construction Order merely identifies "recesses" as being concrete structural components of the claimed "fastening assembly" identified in the specification. *See* ECF No. 77 at 16. The Court never held that a "fastening projection" or a "recess" by itself or when combined constitutes a fastener. Indeed, the Claim Construction Order never even expressly refers to "fastening projections." *See generally* ECF No. 77 at 12-16. Nevertheless, whether the structures Dr. Maki identifies in his report as "fastening projections" and "fastening recesses" constitute fasteners, as the Court's construction of the claim term "fastening assembly" requires, is a triable issue of fact for the jury. *See JVW*, 424 F.3d at 1329.

[10]    In determining that Hobie waived its claim construction arguments as to the terms "removably" and "removably fastening" by failing to request a construction for either of those claim terms, the Court notes that Hobie cannot claim ignorance as to the importance of those claim terms in this action. According to Hobie, it specifically changed the design

1   Nevertheless, the common meaning of the word "removable" in this context is
2   "capable of being removed." *See Removable*, *The American Heritage College Dictionary*
3   (3d Ed. 1997) ("Removable . . . That can be removed."); *Remove*, *Merriam-Webster*
4   *Dictionary*, https://www.merriam-webster.com/dictionary/removable (defining "remove"
5   as "to be capable of being removed"). And this common meaning of the word "removable"
6   is consistent with how the term is used in the specification of the '189 Patent. *See, e.g.*,
7   '189 Patent col. 15 ll. 62-63 ("the interface 300 can be removed from the body 12").
8   Additionally, in its briefing on this issue, Pelican concedes that the words "removeable"
9   and "removably" require that the removal be made without causing damage to the structure
10  at issue, here the body of the watercraft (i.e., the kayak). *See* ECF No. 149-1 at 16-17 ("the
11  act of removing must not cause any damage to that structure" (quoting *Fargo Elecs., Inc.*
12  *v. Iris Ltd., Inc.*, No. 04-cv-1017, 2005 WL 3241851, at *12-13 (D. Minn. Nov. 30, 2005)));
13  *see also Bard Mfg. Co. v. Eubank Mfg. Enter., Inc.*, No. 3:00-cv-7711, 2002 WL 34477144,
14  at *5 (N.D. Ohio Jan. 11, 2002)). And this understanding of the term "removably" is
15  consistent with arguments that Pelican made to the Court during the claim construction
16  hearing. *See* ECF No. 62 at 62-63 ("[T]he reason for removeability is . . . because you want
17  to be able to remove [the interface] if it gets worn out or if it breaks. . . . You don't want it
18  *to damage the kayak*." (emphasis added)).[11] In light of Pelican's concessions, the Court

21  of the accused Passport and Lynx kayaks because "Hobie thought[] a permanent interface
22  having no fasteners[] could not infringe claims that require 'removably fastening' the
    interface to the body of the watercraft with at least one fastening assembly." ECF No. 143
23  at 25 (footnote omitted); *see* ECF No. 122 at 15. Hobie introduced these newly designed
24  kayaks on August 12, 2021, which was prior to the Court's claim construction hearing and
    the Parties' filing of their claim construction briefs in this action. *See* ECF No. 62 at 18-
25  19. Further, as Hobie itself asserts, the case law is "replete" with examples of parties
26  disputing and courts construing the terms "removably" and "removable." *See* ECF No. 143
    at 15 n.7 (collecting cases).

27  [11]   Pelican's understanding of the meaning of the term "removably" is also consistent
28  with the '189 Patent's specification's description of the term.  The specification explains:

construes the term "removably" as "capable of being removed without causing damage to the body of the watercraft."[12]

With that construction for the term "removably," Pelican has raised a genuine dispute of material fact sufficient to defeat Hobie's Motion for Summary Judgment. Pelican has produced evidence that its expert Dr. Maki was able to remove the identified interface from the watercraft. *See* Ex. 7, App'x D-2, ECF No. 134-7 at 29 ("I have personally removed three Hobie glued interfaces from three Hobie products. . . . At no time during the removal of the interface on either the Passport or Lynx was the body of the watercraft

---

> It will also be appreciated that since the interface is secured to the body 12 of the kayak 10 using threaded fasteners and snapfits 324 a-324 d, the interface 300 can be removed from the body 12. This may prove advantageous for instance where the operation of the foot propulsion mechanism 500 over time has created damages or weaknesses to the interface 300. Thus, the interface 300 can be replaced with another interface, thus avoiding the need to replace the entire body of the kayak 10 while ensuring continuous structural integrity of the kayak 10 and the optimum use of the foot propulsion mechanism 500.

'189 Patent col. 15 ll. 60 to col. 16 ll. 3.

[12] Hobie notes that Pelican described the interface of the '189 Patent as being "readily replaceable" during claim construction. ECF 143 at 13, 25 n.8; ECF No. 122 (citing ECF No. 40 at 1-2; Ex. J, ECF No. 108-11 at 12). Pelican responds that it was merely describing a preferred embodiment of the invention in the cited passages. ECF No. 149-1 at 15 n.9; ECF No. 157 at 4 n.8. The Court notes that in the passages at issue, Pelican is describing the invention of the '189 Patent as a whole and not merely a preferred embodiment. *See* ECF No. 40 at 2 ("The '189 patent solved this long-standing problem by inventing a watercraft with a novel interface that is robust, reliable, and readily-replaceable . . . ."); Ex. J, ECF No. 108-11 at 12 ("The '189 patent introduces a watercraft with a robust, reliable, and readily-replaceable interface . . . .").

Nevertheless, as explained above, Hobie has waived any arguments regarding the scope of the claim term "removably." *See supra* Section III(D)(ii). Further, Pelican has consistently explained to the Court that within the context of the '189 Patent, the term "removably" means capable of being removed without causing damage to the body of the watercraft (i.e., the kayak). *See* ECF No. 62 at 62-63; ECF No. 146 at 11; ECF No. 149-1 at 13-17; ECF No. 157 at 4.

damaged."). Hobie notes that Dr. Maki admits he used tools to perform this removal, such as a heatgun and a crow-bar, and that the removal caused some cosmetic damage. ECF No. 143 at 13 (citing Ex. 7, App'x D-2, ECF No. 134-7 at 29); ECF No. 122 at 8-9. But the Court may not weigh the evidence or make credibility determinations at the summary judgment stage. *See Anderson*, 477 U.S. at 255. It is for the factfinder, not the Court, to determine whether Dr. Maki's opinions demonstrate that the redesigned Passport and Lynx kayaks satisfy the "removably" claim limitation as the Court construed it. *See JVW*, 424 F.3d at 1329; *see also Provenz*, 102 F.3d at 1490.

In sum, genuine disputes of material fact remain as to whether the redesigned Passport and Lynx kayaks satisfy the "fastening assembly" and "removably" claim limitations in Independent Claim 14 of the '189 Patent. Accordingly, the Court denies Hobie's Motion for Summary Judgment that the redesigned Passport and Lynx kayaks do not infringe Claim 14 of the '189 Patent.[13]

## E. Hobie's Motion for Summary Judgment of Non-Infringement of the Pro Angler 360

Hobie moves for summary judgment that the accused Pro Angler 360 kayak does not infringe Independent Claim 14 of the '189 Patent because the Pro-Angler 360 does not satisfy the "first plate" and the "about the periphery of the well" claim limitations. ECF No. 143 at 20-21.

---

[13]    In its Motion for Summary Judgment, Hobie asserts that Pelican's arguments regarding the doctrine of equivalents do not preclude the Court from granting summary judgment of non-infringement as to Claim 14 of the '189 Patent. ECF No. 143 at 16-20. Because the Court holds that Hobie is not entitled to summary judgment of non-infringement as to the redesigned Passport and Lynx kayaks under a literal infringement analysis, the Court need not address Hobie's arguments regarding the doctrine of equivalents. *See, e.g.*, *Skedco*, 685 F. App'x at 962 (holding that the panel's vacatur of the district court's grant of summary judgment of no literal infringement rendered moot the issue of whether the district court properly granted summary judgment of noninfringement under the doctrine of equivalents).

With respect to the "first plate" claim limitation, in the Claim Construction Order, the Court construed the claim term "plate" as a "generally flat structure." ECF No. 77 at 11. In his report, Dr. Maki opines that the accused Pro Angler 360 kayak literally satisfies the "first plate" claim limitation. *See* Maki Opening Expert Report, Ex. 11, App'x D-3, ECF No. 89-13 at 12-17. Specifically, Dr. Maki opines: "The Hobie Mirage Pro Angler 360 Products' interface includes a first 'generally flat structure' that is positionable adjacent to the deck portion of the watercraft and around the edge of the well." *Id.* at 12. Dr. Maki supports his opinions with images of the accused Pro Angler 360 kayak and its interface. *See id.* at 13-17. This evidence is sufficient to create a genuine dispute of material fact as to whether the Pro Angler 360 kayak satisfies the "first plate" claim limitation. *See Provenz*, 102 F.3d at 1490.

Hobie argues that the structure Dr. Maki identified as the "first plate" is insufficient to satisfy the "first plate" limitation because the structure has an intentional curve. ECF No. 143 at 20-21. In adopting its construction for the claim term, the Court rejected the contention that the claimed "plate" must be a "perfectly flat" structure. ECF No. 77 at 11. Indeed, as Pelican correctly notes, Figure 19 of the '189 Patent depicts an exemplary "plate" (plate 306) that has a slight curvature. *See* '189 Patent fig. 19, col. 9 ll. 32-36. Thus, whether the structure Dr. Maki identified is a "generally flat structure" under the Court's construction of the claim term "plate" is a question for the factfinder, not for the Court at summary judgment. *See JVW*, 424 F.3d at 1329.

Turning to the "about the periphery" limitation, the Claim Construction Order construed the claim term "about the periphery" as "around the edge." ECF No. 77 at 12. In adopting this construction, the Court rejected Hobie's proposal to construe the term as "completely around the outer recess." *Id.*; *see* ECF No. 62 at 43. In his report, Dr. Maki opines that the accused Pro Angler 360 kayak literally satisfies the "about the periphery of the well" claim limitation. *See* Ex. 11, App'x D-3, ECF No. 89-13 at 12-17. Specifically, Dr. Maki opines: "The plate of the Pro Angler 360's interface is positioned around the edge of the well." *Id.* at 13. Dr. Maki supports his opinions with images of the accused Pro

Angler 360 kayak and its interface. *See id.* at 13-17. Hobie argues that the structure identified by Dr. Maki is insufficient to satisfy the "about the periphery of the well" claim limitation because the alleged plate only goes about 75% around the well. ECF No. 88 at 28. Hobie may disagree with Dr. Maki's opinions, but at the summary judgment stage, the Court must accept Dr. Maki's factual assertions as true. *See Charles Mach. Works*, 723 F.3d at 1380 ("For purposes of summary judgment, we must accept CMW's expert's factual assertions as true."). As such, Dr. Maki's opinions are sufficient to create a genuine dispute of material fact as to whether the Pro Angler 360 kayak satisfies the "about the periphery" claim limitation. *See Provenz*, 102 F.3d at 1490.

In sum, genuine disputes of material fact remain as to whether the Pro Angler 360 kayak satisfies the "first plate" and "about the periphery of the well" claim limitations in Independent Claim 14 of the '189 Patent. Accordingly, the Court denies Hobie's Motion for Summary Judgment that the Pro Angler 360 kayak does not infringe Claim 14 of the '189 Patent.

## IV. HOBIE'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGMENT

Hobie moves for summary judgment that any alleged infringement has not been willful. ECF No. 143 at 21-25. Hobie's Motion for Summary Judgment of no willful infringement has two parts. First, Hobie moves for summary judgment of no willfulness for any conduct pre-dating the issuance of the '189 Patent. ECF No. 122 at 12-14. Second, Hobie moves for summary judgment of no willfulness for conduct following the issuance of the '189 Patent. *Id.* at 14-15.[14]

---

[14] In its original motion for summary judgment, Hobie requested that the issue of willful infringement be analyzed by separating pre-notice conduct from post-notice conduct. *See* ECF No. 143 at 22-25. In its reply brief, Hobie modified and narrowed its request, and instead now asserts that willful infringement should be analyzed by separating pre-issuance conduct from post-issuance conduct. *See* ECF No. 122 at 12-15.

### A.    Legal Standard

Willfulness requires a finding of "deliberate or intentional infringement." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021); *see Eko Brands, LLC v. Adrian Rivera Maynez Enter., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) ("Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement."); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016) ("The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."). The Federal Circuit has explained that subjective willfulness can be shown by "proof that the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known to the accused infringer." *WesternGeco LLC v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 2129 (2018); *accord Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017). Further, "[t]o establish willfulness, a patentee must show that the accused infringer had a specific intent to infringe at the time of the challenged conduct." *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*, 28 F.4th 1247, 1274 (Fed. Cir. 2022) (citing *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021)); *see Halo*, 579 U.S. at 105 (explaining that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct").

"A finding of willful infringement is made after considering the totality of the circumstances." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (citing *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004) (en banc)). Willful infringement is a question of fact. *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1353 (Fed. Cir. 2018); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

### B.    Pre-Issuance Willfulness

Hobie argues that it is entitled to summary judgment that none of its conduct prior to issuance of the '189 Patent on November 10, 2020, constitutes willful infringement. ECF

No. 122 at 12-14. Pelican responds that Hobie's request for summary judgment of no willfulness should be denied because Hobie's pre-issuance conduct is relevant to willfulness. ECF No. 149-1 at 26-33.

However, in this portion of Hobie's Motion for Summary Judgment, the Parties are attempting to combine two separate and distinct legal issues into one. The first issue is whether Hobie can be liable for willful infringement for conduct that occurred prior to the issuance of the '189 Patent. The second issue is whether pre-issuance conduct can be relevant to a finding of post-issuance willfulness. These are two different and distinct issues that must be analyzed separately.

As to whether Hobie can be liable for willful infringement prior to the issuance of the '189 Patent, the Federal Circuit has explained: "It is obvious that a party cannot be held liable for 'infringement', and thus not for 'willful' infringement, of a nonexistent patent, *i.e.*, no damages are payable on products manufactured and sold before the patent issued." *Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990); *see Bioverativ Inc. v. CSL Behring LLC*, No. 17-cv-914, 2020 WL 1332921, at *2 (D. Del. Mar. 23, 2020) ("There can be no willful infringement before a patent is issued."); *see also State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1237 (Fed. Cir. 1985) ("A patent has no retroactive effect."). The '189 Patent was issued on November 10, 2020. '189 Patent at [45]. As such, there can be no willful infringement of the '189 Patent prior to November 10, 2020. *See Gustafson*, 897 F.2d at 510; *Bioverativ*, 2020 WL 1332921, at *2. Indeed, at the hearing, Pelican conceded that Hobie cannot be liable for patent infringement prior to the issuance of the '189 Patent. Therefore, the Court grants Hobie's Motion for Summary Judgment of no willful infringement prior to November 10, 2020.

Nevertheless, the Court's holding that Hobie cannot be liable for willful infringement prior to November 10, 2020, does not resolve the issue of whether pre-issuance conduct can be relevant to a finding of post-issuance willfulness. *See Sonos, Inc. v. D&M Holdings Inc.*, No. CV 14-1330-WCB, 2017 WL 5633204, at *3 (D. Del. Nov. 21, 2017) (Bryson, J.) (explaining that the principle that there can be no willful infringement

before a patent is issued "does not answer the question whether evidence of pre-issuance conduct, such as copying of the plaintiff's products, is admissible to show post-issuance willfulness"). The Court addresses that issue in the section below regarding Hobie's Motion for Summary Judgment of no willful infringement after issuance of the '189 Patent.

## C.    Post-Issuance Willfulness

Hobie argues that it is entitled to summary judgment that its conduct after issuance of the '189 Patent on November 10, 2020, does not constitute willful infringement. ECF No. 122 at 12-14. Pelican responds that Hobie's motion should be denied because there is sufficient evidence in the totality of the circumstances to require that the issue of willful infringement be submitted to the jury. ECF No. 149-1 at 26.

Pelican cites to evidence that purportedly shows that Hobie engaged in copying and then continued to sell the products at issue after being provided with notice of the '189 Patent. *See id.* at 28-30, 34. "[C]opying requires evidence of efforts to replicate a specific product, which may be demonstrated through internal company documents, direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a replica, or access to the patented product combined with substantial similarity to the patented product." *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1375 (Fed. Cir. 2018) (quoting *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010)).

To support its assertion of copying, Pelican cites to evidence that the patent-practicing Pelican Catch130HD was displayed at several trade shows in July and August of 2018, and that personnel from Hobie, including Hobie's CEO and its Vice President of Engineering, attended these trade shows and examined the Pelican Catch130HD, including in one instance taking the kayak out for a test ride and then removing the drive from the kayak. *See, e.g.*, Skidmore Depo., Ex. 37, ECF No. 158-22 at 74-77; Ex. 55, ECF No. 149-6; Czarnowski Depo., Ex. 19, ECF No. 158-10 at 169-76; Ex. 74, ECF No. 158-35. Pelican further cites to evidence showing that after attending one of these trade shows, Hobie's Vice President of Engineering stated that he was "very impressed with the

1 design . . . definitely a serious threat to our Mirage business." Ex. 55, ECF No. 149-6. In

2 addition, Pelican cites to a document from Hobie dated August 31, 2018, referring to a

3 "new design" for a prototype kayak. ECF No. 149-11, Ex. 76; *see* Ex. 101, ECF No. 149-

4 10. Finally, Pelican presents evidence from its expert, Dr. Maki, opining that the design of

5 the well and the interface of that "new design" Hobie prototype kayak closely mimics and

6 is strikingly similar to the geometry of the well and the oval-shaped interface of the Pelican

7 Catch 130HD in July 2018. *See* Maki Opening Expert Report, Ex. 29, ECF No. 158-14

8 ¶¶ 102-03.[15] Further, Pelican notes that after receiving notice of the '189 Patent and

9 Pelican's assertion of infringement on November 20, 2020, Hobie continued to sell the

10 original designed kayaks throughout the summer 2021 season. ECF No. 149-1 at 34. This

11 evidence when viewed in the light most favorable to Pelican is sufficient to raise a genuine

12 dispute of material fact as to whether Hobie's alleged infringement of the '189 Patent was

13 willful. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1028 (N.D. Cal.

14 2017) (finding evidence that defendant engaged in copying and then continued to sell the

15 copied products after it received notice of the patent sufficient to support a finding of

16 willful infringement*); see also, e.g.*, *Polara*, 894 F.3d at 1354 (finding evidence of

17 intentional copying sufficient to support the jury's finding of willful infringement).

18    Hobie argues that Pelican's alleged evidence of copying is insufficient because pre-

19 issuance behavior cannot support a finding of willfulness. ECF No. 122 at 12-14 & n.8;

20 ECF No. 143 at 22. Hobie is wrong. Under Federal Circuit law, "[a] finding of willful

21 infringement is made after considering the totality of the circumstances." *Liquid Dynamics*,

22 449 F.3d at 1225; *Knorr-Bremse*, 383 F.3d at 1342. "In addition, although willfulness is

---

[15]    The Court granted and denied in part Hobie's *Daubert* Motion as to Dr. Maki's willfulness opinions. ECF No. 182. But the opinions in the two paragraphs cited above (paragraphs 102 and 103 in Dr. Maki's opening report) were not at issue and not subject to Hobie's *Daubert* Motion. *See* ECF No. 145 at 4 (explaining that the challenged testimony is highlighted in yellow); Maki Opening Expert Report, Ex. 1, ECF No. 145-1 ¶¶ 102-03 (displaying paragraphs 102 and 103 with no yellow highlighting).

generally based on conduct that occurred after a patent issued, pre-patent conduct may also be used to support a finding of willfulness." *Minn. Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1581 (Fed. Cir. 1992) (citing *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 978-79 (Fed. Cir. 1986)); *see, e.g.*, *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1566 (Fed. Cir. 1988) ("The fact that [an infringer] may have started its infringement before the patents issued (or before [it was] aware of the patents) does not bar an award of increased damages or attorney fees." (quoting *Pac. Furniture Mfg. Co. v. Preview Furniture Corp.*, 800 F.2d 1111, 1115 (Fed. Cir. 1986))), *abrogated on other grounds*, *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008); *Shiley, Inc. v. Bentley Lab'y, Inc.*, 794 F.2d 1561, 1568 (Fed. Cir. 1986). "Pre-patent copying of the invention, for example, is relevant to the defendant's state of mind after issuance." *Bioreativ*, 2020 WL 1332921, at *2 (citing *Milgo Elec. Corp. v. United Bus. Commc'ns, Inc.*, 623 F.2d 645, 665-66 (10th Cir. 1980)); *see, e.g.*, *Kaufman*, 807 F.2d at 978-79; *Apple*, 258 F. Supp. 3d at 1028; *Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 114 (E.D. Tex. 2017) ("A patent need not have issued before the ideas of that inventor can be copied in bad faith.").

Hobie argues that knowledge of the '189 Patent is a prerequisite to a finding of willfulness, and that culpability of behavior should be measured against the knowledge of the actor at the time of the challenged conduct. ECF No. 143 at 22; ECF No. 122 at 12, 14. Although these are accurate statements of Federal Circuit and Supreme Court precedent, Hobie's reliance on these arguments is misplaced.

Knowledge of the asserted patent is necessary for a finding of willfulness. *BASF*, 28 F.4th at 1274; *Bayer*, 989 F.3d at 988; *see WBIP*, 829 F.3d at 1341. But Hobie concedes that it knew of the '189 Patent by at least November 20, 2020. *See* ECF No. 143 at 24 (citing Ex. 20, ECF No. 89-22). As such, knowledge of the asserted patent is established in this case.

Further, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo*, 579 U.S. at 105; *see BASF*, 28 F.4th at 1274 ("To

establish willfulness, a patentee must show that the accused infringer had a specific intent to infringe at the time of the challenged conduct."). Thus, in assessing willfulness, the factfinder must look to Hobie's knowledge and intent at the time it obtained notice of the patent or at a later date. But what Hobie fails to understand is that in doing so, the factfinder may look at pre-issuance conduct — for example, pre-issuance copying of the claimed invention — to determine what the accused infringer's state of mind was after issuance and notice of the patent. *See Minn. Min. & Mfg.*, 976 F.2d at 1581; *Kaufman*, 807 F.2d at 978-79; *Bioverativ*, 2020 WL 1332921, at *2 ("Pre-patent copying of the invention, for example, is relevant to the defendant's state of mind after issuance."); *Barry*, 250 F. Supp. 3d at 114 ("conduct before the patents issued can be . . . probative of copying"). As such, Pelican can rely on evidence of conduct from prior to November 2020 to show what Hobie's state of mind would have been in November 2020 or later.[16]

In sum, Pelican has raised a genuine dispute of material fact as to whether Hobie's alleged infringement of the '189 Patent was willful. Therefore, the Court denies Hobie's Motion for Summary Judgment of no willful infringement after November 10, 2020.

---

[16]    The Court does not find Hobie's reliance on the Federal Circuit's decision in *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019), to be persuasive as *SRI* is easily distinguishable from the present case. In *SRI*, the Federal Circuit explained that "Cisco's allegedly aggressive litigation tactics cannot support a finding of willful infringement going back to 2000, especially when the litigation did not start until 2012." 930 F.3d at 1309. The Federal Circuit explained that a court cannot look at a litigant's conduct during the litigation to determine what the litigant's state of mind would have been many years prior to the litigation. That is not what the Court is doing here. Rather, here, the Court is confronted with the exact opposite scenario. The Court is holding that Hobie's conduct in the past (prior to the litigation) can be relevant to its state of mind during the litigation (after issuance and notice of the '189 Patent).

## V.  PELICAN'S MOTION FOR SUMMARY JUDGMENT OF HOBIE'S PRIOR COMMERICAL USE DEFENSE

Pelican moves for summary judgment of Hobie's prior commercial use defense, because the prototypes Hobie identified fail to satisfy the provisions of 35 U.S.C. § 273(a) as a matter of law. ECF No. 146 at 19-23; ECF No. 157 at 7-10.

Section 273 of the Patent Act provides:

A person shall be entitled to a defense under section 282(b) with respect to subject matter consisting of a process, or consisting of a machine, manufacture, or composition of matter used in a manufacturing or other commercial process, that would otherwise infringe a claimed invention being asserted against the person if--

(1) such person, acting in good faith, commercially used the subject matter in the United States, either in connection with an internal commercial use or an actual arm's length sale or other arm's length commercial transfer of a useful end result of such commercial use; and

(2) such commercial use occurred at least 1 year before the earlier of either--

(A) the effective filing date of the claimed invention; or

(B) the date on which the claimed invention was disclosed to the public in a manner that qualified for the exception from prior art under section 102(b).

35 U.S.C. § 273(a).

Section 273(a) "create[s] a prior-use defense for a defendant that 'commercially used' a claimed 'process' or 'machine, manufacture, or composition of matter used in a manufacturing or other commercial process' 'at least 1 year' before the earlier of the effective filing date of the claimed invention or a previous disclosure thereof." *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 968 (Fed. Cir. 2020). The party asserting a defense under Section 273(a) bears the burden of establishing it by clear and convincing evidence. 35 U.S.C. § 273(b).

Hobie explains that its prior commercial use defense is based on Hobie's development and prototyping of two interfaces prior to the relevant date of July 9, 2017. *See* ECF No. 108 at 22-24, 27. To support this contention, Hobie relies on a declaration from its Vice President of Engineering, Mr. Czarnowski, describing the design and development timeline for these two interfaces. *See* Czarnowski Decl., ECF No. 108-13. In his declaration, Mr. Czarnowski states that as of July 9, 2017, Hobie possessed molds for the interface for Hobie's Mirage Pro Angler 360 kayaks; Hobie had obtained a quotation for the molds for the interface for Hobie's BIC Eclipse; and Hobie had a 3-D printed version of the interface for the BIC Eclipse. *Id.* ¶¶ 3, 9, 11, 24-25.

Pelican responds that this evidence Hobie identified is insufficient as a matter of law to support a prior commercial use defense under Section 273(a) because the interfaces Hobie identified would not infringe any of the asserted claims in this action, which all recite at least a watercraft with a rigid body. *See* ECF No. 157 at 8-10; ECF No. 146 at 20 n.8. The Court agrees with Pelican.

Section 273(a) states that "[a] person shall be entitled to a defense under section 282(b) with respect to subject matter . . . that would otherwise infringe a claimed invention being asserted against the person." 35 U.S.C. § 273(a). The interface prototypes Hobie identified are insufficient as a matter of law to "otherwise infringe" the "claimed invention" in this case. Here, the claims asserted against Hobie are not directed to merely an interface. Rather, the claims asserted against Hobie in this case (Claims 14-26, and 28 of the '189 Patent) specifically claim a "watercraft" comprising a "rigid body" — with a deck portion, a hull portion, and a well — and "an interface." *See* '189 Patent col. 18 ll. 64 to col. 20 ll. 40, col 20 ll. 43-44. As a result, the prototype interfaces that Hobie attempts to rely on to support its commercial prior use defense under Section 273(a) are insufficient as a matter of law because they are only interfaces. They do not satisfy the "watercraft" and "rigid

body" limitations in the asserted claims, meaning those prototypes would not "otherwise infringe" the claimed inventions as Section 273(a) requires.[17]

Hobie argues that there is no requirement under Section 273(a) that the prior commercial use at issue be tied to the specific asserted claims in the action, rather than the general "subject matter" of the claimed invention. ECF No. 108 at 24-25. The Court rejects this argument as a misinterpretation of Section 273(a).

Section 273(a) never refers to the "subject matter" of the claimed invention. When Section 273(a) uses the term "subject matter" it is referring to "the process, or consisting of a machine, manufacture, or composition of matter used in a manufacturing or other commercial process" used by the "person" (i.e., the accused infringer), not the claimed invention. 35 U.S.C. § 273(a) ("A person shall be entitled to a defense under section 282(b) with respect to subject matter consisting of a process, or consisting of a machine,

---

[17] At the summary judgment hearing, Hobie argued for the first time that it is possible for an interface by itself to infringe the asserted claims of the '189 Patent under a theory of contributory infringement. Hobie did not present this contributory infringement argument in its briefing. *See generally* ECF No. 108 at 20-28. As such, the argument is waived. *See, e.g.*, *ABS Glob., Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1027 (Fed. Cir. 2021) (finding argument waived because it was "raised for the first time during oral argument"); *In re LexinFintech Holdings Ltd. Sec. Litig.*, No. 3:20-CV-1562-SI, 2021 WL 5530949, at *15 (D. Or. Nov. 24, 2021) ("Plaintiffs raised these arguments for the first time at oral argument, and thus they are untimely and waived."); *CliniComp*, 2022 WL 16985003, at *21.

Further, even if the Court were to assume this argument was not waived, the argument fails on the merits. There can be no contributory infringement without an underlying act of direct infringement. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012); *see i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010) ("To succeed on a theory of contributory or induced infringement, i4i was required to show direct infringement of the '449 patent."). Hobie has failed to identify any evidence in the record showing that one of the interfaces at issue was ever placed inside a watercraft with a rigid body with a deck, a hull, and a well prior to July 9, 2017 – the relevant date. As such, Hobie has failed to demonstrate any underlying direct infringement of asserted claims that could support a finding of contributory infringement prior to July 9, 2017.

manufacture, or composition of matter used in a manufacturing or other commercial process . . . ."). When Section 273 uses the term "claimed invention," it describes it as the "claimed invention being asserted against the person" that the person "would otherwise infringe." 35 U.S.C. § 273(a). "It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312. As such, an infringement analysis requires a comparison of the properly construed claims to the allegedly infringing device or act. *Niazi*, 30 F.4th at 1350. And an infringement analysis is performed on a claim-by-claim basis. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). Thus, a person can only "otherwise infringe" a particular claimed invention if the person's accused product or act meets each and every limitation in a particular claim or claims asserted against it. *See SIMO*, 983 F.3d at 1380; *Ericsson*, 773 F.3d at 1215. Accordingly, the Court rejects Hobie's argument that a Section 273(a) analysis is not tied to the specific claims asserted in the action. *See, e.g.*, *Allfasteners USA, LLC v. Acme Operations Pty., Ltd.*, No. 18-cv-6929, 2021 WL 4027738, at *15 (C.D. Cal. May 25, 2021) (analyzing a prior use defense under Section 273(a) based on the specific asserted claims in the action); *Pavemetrics Sys., Inc. v. Tetra Tech, Inc.*, No. 2:21-cv-1289, 2021 WL 2548959, at *8 (C.D. Cal. Apr. 15, 2021) (same); *Vaughan Co. v. Glob. Bio-Fuels Tech., LLC*, No. 1:12-cv-1292, 2013 WL 5755389, at *11-12 (N.D.N.Y. Oct. 23, 2013) (same).

The specific claims at issue in this action are Claims 14-26, and 28 of the '189 Patent. *See* ECF No. 146 at 7 (listing the asserted claims). Those claims encompass a "watercraft" comprising a "rigid body" and "an interface." *See* '189 Patent col. 18 ll. 64 to col. 20 ll. 40, col 20 ll. 43-44. As such, Hobie's alleged development of interfaces by themselves is insufficient to "otherwise infringe" the claimed inventions at issue in this case. Therefore, Hobie's prior commercial use defense fails as a matter of law, and the Court grants

Pelican's Motion for Summary Judgment of Hobie's prior commercial use defense under 35 U.S.C. § 273.[18]

## VI.    PELICAN'S MOTION FOR SUMMARY JUDGMENT THAT CERTAIN REFERENCES DO NOT QUALIFY AS PRIOR ART

Pelican moves for summary judgment that certain references Hobie identified do not qualify as prior art to the '189 Patent. ECF No. 146-1 at 17-25. The Court addresses each of these references below.

### A.    The Morton Reference and the Raptor G2 Reference

Pelican moves for summary judgment that the Morton reference and the Raptor G2 reference do not qualify as prior art. ECF No. 146-1 at 18-24. The Court has granted Pelican's Motion to Strike these references and excluded Hobie from relying on the Morton reference and the Raptor G2 reference as prior art in this case. ECF No. 181. As such, the Court denies Pelican's Motion for Summary Judgment that the Morton reference and the Raptor G2 reference do not qualify as prior art to the '189 Patent as moot.

### B.    The BIC Eclipse Reference

Pelican moves for summary judgment that the BIC Eclipse prototype does not qualify as prior art. ECF No. 146-1 at 24-25. In response, Hobie explains that it does not contend, and has never contended, that the BIC Eclipse prototype is prior art to the '189 Patent. ECF No. 108 at 34. Accordingly, the Court grants Pelican's Motion for Summary Judgment that the BIC Eclipse does not qualify as prior art to the '189 Patent.[19]

---

[18]    Pelican also argues that the Court should dismiss Hobie's prior commercial use defense because Hobie waived its defense by not pleading the defense in its answer. ECF 146 at 19; ECF 157 at 7. Because the Court grants summary judgment on Hobie's prior commercial use defense, the Court need not address this additional argument.

[19]    Pelican also argues that Hobie may not rely on the BIC Eclipse prototype as evidence of what a POSITA would have known. ECF No. 146-1 at 25. However, this matter is better addressed through a motion in limine, not a motion for summary judgment. As such, the Court declines to address this issue at this stage in the proceedings. *Cf. Meyer Intell. Prop.*

## VII.  CONCLUSION

For the above reasons, the Court **GRANTS AND DENIES IN PART** Plaintiff Pelican's motions for summary judgment and Defendant Hobie's motion for summary judgment. Specifically, the Court:

1.  **GRANTS** summary judgment of no willful infringement by Hobie prior to November 10, 2022;

2.  **GRANTS** summary judgment of Hobie's prior commercial use defense under 35 U.S.C. § 273;

3.  **GRANTS** summary judgment that the BIC Eclipse does not qualify as prior art to the '189 Patent; and

4.  **DENIES** the remainder of the Parties' motions for summary judgment.

**SO ORDERED**.

Dated: February 10, 2023

_Robert S. Huie_
_____
Hon. Robert S. Huie
United States District Judge

---

*Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012) (finding a district court erred by essentially transforming a motion in limine into a motion for summary judgment).